**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
CAROL McNEELY, SCOTT D. VLK, SHILPA   :
VLK, GEORGE K. BERNHARD, and DEBORAH :
JOYCE, and HARRY M. TUBER,              :
                                    :
on behalf of themselves and all others       :
similarly situated,                     :
                                    :
and                                :
                                    :
DAVID T. RUDZIEWICZ, FREDERICK      :
DEMAIO, DONNA R. KOBIELSKI, and     :
DONNA MOLTA,                 :
                                    :
              Plaintiffs,     :     **1:18-CV-00885-PAC**
                                  :
          -against-         :     *Electronically Filed*
                                  :
METROPOLITAN LIFE INSURANCE      :
COMPANY, METROPOLITAN LIFE       :
RETIREMENT PLAN FOR UNITED STATES  :
EMPLOYEES, SAVINGS AND INVESTMENT  :
PLAN FOR EMPLOYEES OF METROPOLITAN :
LIFE AND PARTICIPATING AFFILIATES,   :
METLIFE OPTIONS & CHOICES PLAN, and  :
WELFARE BENEFITS PLAN FOR EMPLOYEES :
OF METROPOLITAN LIFE AND         :
PARTICIPATING AFFILIATES,        :
                                  :
              Defendants.    :
------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL DISMISSAL OF**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................................2

    A.     PLAINTIFFS CONTRACTED AS INDEPENDENT CONTRACTORS ............2

    B.     THE PLANS ................................................................................................2

III. ARGUMENT ...................................................................................................5

    A.     LEGAL STANDARD .................................................................................5

    B.     PLAINTIFFS' ERISA CLAIMS ARE BARRED BY THE APPLICABLE
          STATUTES OF LIMITATION ....................................................................5

         1.     Plaintiffs' Claims for Benefits Accrued Over Six Years Ago and
              are Time- Barred ................................................................................5

         2.     Plaintiffs' Claims for Breach of Fiduciary Duty Accrued Over
              Three Years Ago   and are Time-Barred ..................................................9

    C.     PLAINTIFFS HAVE FAILED TO EXHAUST THEIR
          ADMINISTRATIVE  REMEDIES ................................................................10

    D.     PLAINTIFFS FAIL TO ASSERT A PLAUSIBLE CLAIM FOR RELIEF
          UNDER ERISA ......................................................................................13

         1.     Plaintiffs Have Not Pled Any Facts To Show They Are Eligible To
              Participate In   Any of the Plans ..........................................................13

         2.     Plaintiffs Have No Viable Breach of Fiduciary Duty Claim....................15

    E.     Plaintiffs' "Unjust Enrichment" Claims Should Be Dismissed .........................16

    F.     Plaintiffs Are Exempt From Overtime Requirements .........................................19

    III. CONCLUSION ..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambris v. Bank of New York*,
    No. 96 Civ. 0061, 1998 WL 702289 (S.D.N.Y. Oct. 7, 1998) ...................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................5

*Barnett v. Int'l Bus. Machs. Corp.*,
    885 F. Supp. 581 (S.D.N.Y. 1995) .....................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................5

*Brennan v. Southwest Airlines Co.*,
    134 F.3d 1405 (9th Cir. 1998) .........................................................................................16

*Brown v. Suncoast Skin Sols., Inc.*,
    No. 6:17-civ-515, 2017 WL 2361649 (M.D. Fla. Apr. 26, 2017) .........................................18

*Cooper v. Green Pond Animal Care Ctr.*,
    No. 12-7903, 2015 WL 3385541 (D.N.J. May 22, 2015) .....................................................19

*Davenport v. Harry N. Abrams, Inc.*,
    249 F.3d 130 (2d Cir. 2001) ....................................................................................10, 11, 12

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) ...............................................................................................3

*Downes v. JP Morgan Chase & Co.*,
    No. 03 Civ. 8991, 2004 WL 1277991 (S.D.N.Y. June 8, 2004) .................................7, 8, 9, 13

*Downes v. JP Morgan Chase & Co.*,
    No. 03 CIV. 8991, 2006 WL 785278 (S.D.N.Y. Mar. 21, 2006) ..........................................14

*Egan v. Marsh & McLennan Cos., Inc.*,
    No. 07-7134, 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) ...................................................11

*Ferro v. Metro. Ctr. for Mental Health*,
    No. 13-civ-2347, 2014 WL 1265919 (S.D.N.Y. Mar. 27, 2014) ..........................................17

*Galasso v. City of N.Y.*,
    No. 101534/01, 2001 WL 1117480 (N.Y. Sup. Ct. Sept. 4, 2001) .......................................18

*Glanville v. Dupar, Inc.*,
    727 F. Supp. 2d 596 (S.D. Tex. 2010) ...........................................................................17, 18

*Greifenberger v. Hartford Life Ins. Co.*,
    No. 03 Civ. 3238, 2003 WL 22990093 (S.D.N.Y. Dec. 18, 2003), *aff'd* 131
    Fed. Appx. 756 (2d Cir. 2005) ................................................................................... 10

*Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*,
    151 F. Supp. 3d 460, 470-71 (S.D.N.Y. 2015) ................................................... 19, 21

*Illinois v. U.S. Dental Institute, Inc.*,
    373 N.E.2d 635 (Ill. Ct. App. 1978) ........................................................................ 20

*Impossible Entm't, Inc. v. Wulf*,
    No. 06509422011, 2011 WL 11415351 (N.Y. Sup. Ct. Oct. 6, 2011) ..................... 18

*Irvins v. Metro. Museum of Art*,
    No. 15-cv-5180, 2016 WL 4508364 (S.D.N.Y. Aug. 26, 2016) ............................. 15

*Kennedy v. Empire Blue Cross & Blue Shield*,
    989 F.2d 588 (2d Cir. 1993) .............................................................................. 10, 11

*Klecher v. Metro. Life Ins. Co.*,
    331 F. Supp. 2d 279 (S.D.N.Y. 2004) ................................................................ 15, 16

*Lehman v. USAIR Grp., Inc.*,
    930 F. Supp. 912 (S.D.N.Y. 1996) .......................................................................... 18

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ................................................................................................. 13

*Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*,
    620 Fed. Appx. 37 (2d Cir. 2015) ............................................................................ 19

*Matthew v. RCN Corp.*,
    No. 12-civ-0185, 2012 WL 5834917 (S.D.N.Y. Nov. 14, 2012) ............................ 17

*Mead v. Andersen*,
    309 F. Supp. 2d 596 (S.D.N.Y. 2004) ..................................................................... 16

*Montesano v. Xerox Corp. Ret. Income Guarantee Plan*,
    117 F. Supp. 2d 147 (D. Conn. 2000), *aff'd in relevant part*, 256 F.3d 86 (2d
    Cir. 2001) ........................................................................................................... 13, 14

*Morrison v. Ocean State Jobbers, Inc.*,
    No. 3:09-cv-1285, 2015 WL 5684021 (D. Conn. Sept. 28, 2015) .......................... 19

*Murphy v. Bd. Of Med. Examiners of State of Ariz.*,
    949 P.2d 530 (Ariz. Ct. App. 1997) ........................................................................ 20

*Muto v. CBS Corp.*,
    668 F.3d 53 (2d Cir. 2012) ................................................................................... 5, 6

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ......................................................................................5

*Obal v. Deutsche Bank Nat'l Trust Co.*,
   No. 14 CIV. 2463, 2015 WL 631404 (S.D.N.Y. Feb. 13, 2015)..........................17

*Peck v. Aetna Life Ins. Co.*,
   464 F. Supp. 2d 122 (D. Conn. 2006) ................................................................11

*Ramos v. Baldor Specialty Foods, Inc.*,
   687 F.3d 554 (2d Cir. 2012) ..............................................................................19

*Reches v. Morgan Stanley & Co.*,
   No. 16 Civ. 1663, 2016 WL 4530460 (E.D.N.Y. Aug. 29, 2016).....................6, 8

*Reid v. SuperShuttle Int'l, Inc.*,
   No. 08-CV-4854, 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ..........................12

*Reiseck v. Univ. Commc'ns of Miami, Inc.*,
   591 F.3d 101 (2d Cir. 2010) ...............................................................................19

*Reynolds v. de Silva*,
   No. 09 CIV. 9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010), *abrogated on
   other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)..................17

*Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*,
   No. 10 Civ. 9613, 2013 WL 4860119 (S.D.N.Y. Sept. 11, 2013)...................*passim*

*Scruggs v. ExxonMobil Pension Plan*,
   585 F.3d 1356 (10th Cir. 2009) ..........................................................................15

*Spilky v. Helphand*,
   No. 91 CIV. 3045, 1993 WL 159944 (S.D.N.Y. May 11, 1993) ..........................17

*Tessler v. Paterson*,
   451 Fed. Appx. 30 (2d Cir. 2011)..........................................................................3

*Thomas v. Verizon*,
   No. 04-5232, 2005 WL 3116752 (2d Cir. Nov. 22, 2005) ...................................11

*Umland v. PLANCO Fin. Servs., Inc.*,
   542 F.3d 59 (3d Cir. 2008) ...........................................................................17, 18

*United States v. Clintwood Elkhorn Min. Co.*,
   553 U.S. 1 (2008) ..............................................................................................17

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ....................................................................................15, 16

*Weiner v. Cataldo, Waters & Griffith Architects P.C.*,
   200 A.D. 2d 942 (N.Y. App. Div. 3d Dep't 1994) ................................................................. 18

*Williams v. Am. Int'l Group, Inc.*,
   No. 01-civ-9673, 2002 WL 31115184 (S.D.N.Y. Sept. 23, 2002) ........................................ 13

*Zupa v. Gen. Elec. Co.*,
   No. 3:16-cv-00217, 2016 WL 3976544 (D. Conn. July 22, 2016) .................................... 3, 12

**Statutes**

26 U.S.C. § 7422(a) ................................................................................................................ 17

29 U.S.C. § 213(a)(1) .............................................................................................................. 19

29 U.S.C. § 1002(7) ................................................................................................................ 13

29 U.S.C. § 1102(a)(2) ............................................................................................................ 13

29 U.S.C. § 1104 ..................................................................................................................... 15

29 U.S.C. § 1104(a)(1) ............................................................................................................ 13

29 U.S.C. § 1113 ....................................................................................................................... 8

29 U.S.C. § 1113(1) .................................................................................................................. 9

29 U.S.C. § 1131 *et seq.* .......................................................................................................... 5

29 U.S.C. § 1132(a)(1)(B) Section 502(a)(1)(B) ........................................................ 5, 10, 12, 16

29 U.S.C. § 1132(a)(3) ....................................................................................................... 13, 15

29 U.S.C. § 1134(a)(1) ............................................................................................................ 13

CONN. GEN. STAT. § 20-123(a)-(b) ......................................................................................... 20

ERISA ............................................................................................................................. *passim*

FICA ............................................................................................................................... *passim*

FLSA ....................................................................................................................................... 19

FUTA ...................................................................................................................................... 18

ILL. COMP. STAT. ANN. 23/37 ................................................................................................ 20

Ill. Comp. Stat. § 5/13-206 ....................................................................................................... 6

N.J. REV. STAT. § 45:6-19 ...................................................................................................... 20

N.J. Stat. § 2A:14-1 ............................................................................................ 6

N.Y. Educ. Law § 6601 ...................................................................................... 20

R.I. Gen. Laws § 5-31.1-1(6) ............................................................................. 20

**Other Authorities**

Conn. Agencies Regs. § 31-60-16(a) ................................................................. 19

29 C.F.R. § 541.304(a) ...................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 3, 5

General Dentistry, ADA.org, https://www.ada.org/en/education-careers/careers-
      in-dentistry/general-dentistry (last visited August 22, 2018) .................................. 20

N.Y. C.P.L.R. § 202 ............................................................................................. 6

N.Y. C.P.L.R. § 213 ............................................................................................. 6

*Professional*, Black's Law Dictionary (10th ed. 2014) ........................................ 19

# I.  PRELIMINARY STATEMENT

Pursuant to FED. R. CIV. P. 12(b)(6), Metropolitan Life Insurance Company ("MetLife") and the employee benefit plans[1] named in the Second Amended Complaint ("Complaint" or "Compl.") (together the "Defendants"), move this Court for an Order dismissing: (1) Plaintiffs' claims arising under the Employee Retirement Income Security Act ("ERISA"); (2) Plaintiffs' claims of unjust enrichment; and (3) the overtime claims of the Plaintiffs who were/are dentists.

Plaintiffs, current and former Dental Consultants that contracted with MetLife, allege that they were improperly classified as independent contractors and that, as a result, they were improperly denied various benefits provided to MetLife employees under ERISA-governed employee benefit plans.  They allege further that the misclassification and denial of benefits constituted a breach of ERISA's fiduciary duties.  However, Plaintiffs' ERISA claims, which accrued years ago, are barred by the applicable statute of limitations.  In addition, even if they were not time-barred, Plaintiffs failed to exhaust their administrative remedies, which they were required under ERISA and the Plans to pursue before bringing this action.  Furthermore, their claims fail as they have not pled facts establishing that they were eligible to participate in the Plans, and their claim for breach of fiduciary duty is merely a repackaging of their claim for benefits that is, itself, not actionable.

Plaintiffs' claim that MetLife was unjustly enriched by not making withholdings from their compensation for FICA tax contributions should also be dismissed because: (1) there is no private right of action for recovery of tax payments; and (2) such a claim is preempted.  Finally,

---

[1] Metropolitan Life Retirement Plan for United States Employees ("Retirement Plan"), Savings And Investment Plan For Employees of Metropolitan Life And Participating Affiliates ("SIP"), MetLife Options & Choices Plan ("Options & Choices Plan"), and Welfare Benefits Plan For Employees of Metropolitan Life And Participating Affiliates ("Welfare Plan") (collectively, the "Plans" or "Plan Defendants").

the overtime claims of the Plaintiffs who are/were dentists fail because they are/were exempt learned professionals.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  PLAINTIFFS CONTRACTED AS INDEPENDENT CONTRACTORS

Plaintiffs are independent contractors who have contracted with MetLife to provide consulting services evaluating and making determinations on claims for benefits.  Compl. ¶¶ 1, 12-21; *see also* Compl. Ex. A.  Plaintiffs were compensated as independent contractors.  Compl. ¶ 1.  Specifically, Plaintiffs allege that they did not receive overtime pay, that FICA taxes were not withheld from their pay, and that MetLife issued them a Form 1099 (and not a Form W-2) for tax purposes.  *Id.* ¶¶ 1, 4, 7, 33, 115-117, 132-134.  Notably, Plaintiffs also concede that they did not, at any point, receive employee benefits from MetLife while performing their services (*id.* ¶ 6), and they have not alleged that they ever requested any such benefits (or a determination of eligibility for such benefits) from the Plans.  *See generally* Compl.

Plaintiffs do not dispute that MetLife did, in fact, classify them as independent contractors.  *See generally* Compl.  Further, Plaintiffs do not allege that the Defendants ever represented that they were eligible to participate in the Plans, that Defendants promised them future eligibility, or that Defendants misrepresented in any way Plaintiffs' eligibility under the Plans or their classification by MetLife as independent contractors.  *Id.*

### B.  THE PLANS

Plaintiffs purport to seek benefits under four different MetLife employee benefit plans: (1) the Retirement Plan, (2) SIP, (3) the Options & Choices Plan, and (4) the Welfare Plan.  Compl. ¶¶ 22-27.  Each of the Plans expressly delineates who is eligible to participate in and receive benefits under each respective Plan, and each specifically excludes participation by certain individuals, such as individuals who are not on certain payrolls or who were classified by

MetLife as independent contractors.  *See, e.g.,* the Retirement Plan, SIP, the Options & Choice

Plan, and the Welfare Plan, attached in relevant part to the Declaration of Hanna E. Martin

("Martin Decl.") at Exs. A-G.[2]

For example, the Retirement Plan defines an "Employee" as an individual who is

"employed and compensated for services by the Employer [MetLife]" and who is on MetLife's

payroll, subject to certain service requirements.  *Id.,* Exs. A and C § 1.21.  Section 1.20 of the

2010 Retirement Plan further provides, in relevant part, that an Employee, as defined, is eligible

for participation in the Retirement Plan, *except*:

> [A]ny individual who is classified by the Employer as an
> independent contractor notwithstanding that such person is later
> determined by a court of competent jurisdiction or the Internal
> Revenue Service to be a common law employee for tax purposes.

Martin Decl., Ex. A, § 1.20(viii).  The Retirement Plan was amended in December 2011 to

further clarify that Employees eligible for participation in the Retirement Plan expressly *exclude*:

> Any individual who has entered into an oral or written agreement
> with the Employer whereby such individual acknowledges his or
> her status as an independent contractor . . . notwithstanding that
> such person is later determined by a court of competent
> jurisdiction, a regulatory body or administrative agency to be a
> common law employee.

Martin Decl., Ex. B, at § 1.20(viii).  The 2015 Restatement of the Retirement Plan adopts the

amended definition.  Martin Decl., Ex. C at § 1.20.

---

[2] "In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect . . ."  *Tessler v. Paterson,* 451 Fed. Appx. 30, 32 (2d Cir. 2011) (citing *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010)).  Where a pleading "relies heavily upon the terms and effect" of a document, it is properly considered on a motion to dismiss.  *Zupa v. Gen. Elec. Co.,* No. 3:16-cv-00217, 2016 WL 3976544, at n.2 (D. Conn. July 22, 2016) (considering ERISA plan attached to defendants' motion to dismiss where plaintiff relied on the terms of those documents in his complaint).  Here, although not attached to the Complaint, the Plans are referenced in the Complaint and, therefore, properly considered in connection with Defendants' motion.

Fatally, the Complaint includes no allegations whatsoever to establish that any of the Plaintiffs could meet the specific eligibility requirements of the Retirement Plan or any of the other Plans under which they purport to seek benefits.

All of the Plans also contain language granting the Plan Administrator (in each circumstance MetLife), full discretion and authority to administer the respective Plan.   For example, the Welfare Plan provides that the Plan Administrator (1) "will have full power to administer the Plan . . . [including] [t]o decide all questions concerning the Plan and the eligibility of any person to participate in the Plan"; and (2) has "full and final power and discretion to resolve all issues concerning eligibility . . . and entitlement to coverage and benefits . . . ." *See, e.g.,* Martin Decl., Ex. G § 5.1(c)*, see also* Exs. A and C §§ 10.02(a), 10.09; Ex. D § 2.2; Ex. E § 10.2; Ex. F § 5.1(c). The Plans also explicitly state that benefits will be paid "only if the Administrator . . . determines in its discretion that the applicant is entitled to them."  *Id.* Exs. A and C § 10.09; *see also Id.,* Ex. D § 9.6; Ex. E § 10.10; Ex. F. § 5.5; Ex. G at § 5.1(c) (emphasis added).  The Plans also incorporate by reference the respective Summary Plan Descriptions ("SPDs") which, in turn, each set forth the required procedures for asserting a claim for benefits under a Plan or disputing an adverse benefit determination.  *See, e.g., Id.* Exs. A and C § 10.09(a); Ex. D. § 9.6(a); Ex. E § 10.10(a); Ex. F, § 5.5(a); Ex. G at § 5.5(a).  Plaintiffs do not allege any compliance, or attempts to comply, with these claims procedures.  *See generally* Compl.

Each Plan also contains express temporal limitations by which time any claims for benefits thereunder must be made, effectively barring claims "submitted more than six months following the close of the Plan Year in which it arose."  *Id.* Exs. A and C § 10.09(b); Ex. D § 9.6(b); Ex. E § 10.10(b); Ex. F § 5.5(b); Ex. G § 5.5(b).  Plaintiffs make no allegations that they

made a timely administrative claim for benefits, or indeed, any administrative claim for benefits at all.  *See generally* Compl.

## III.  ARGUMENT

### A.  LEGAL STANDARD

FED. R. CIV. P. 12(b)(6) is designed to allow courts to "streamline litigation by dispensing with needless discovery and fact-finding" by eliminating baseless claims.  *Neitzke v. Williams*, 490 U.S. 319 (1989).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted).  If it appears from the face of the complaint that the plaintiff cannot prove a set of facts that would entitle him or her to the relief sought, the court should dismiss the plaintiff's claims.  *Id.*  In deciding a Rule 12(b)(6) motion, while the Court must accept a plaintiff's well-pled allegations as true, it need not credit conclusory allegations or legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Measured against this standard, Plaintiffs' claims should be dismissed.

### B.  PLAINTIFFS' ERISA CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION

1.  Plaintiffs' Claims for Benefits Accrued Over Six Years Ago and are Time-Barred

The Court need not address the merits of Plaintiffs' ERISA claims because these claims should be dismissed on statute of limitations grounds.  Specifically, Plaintiffs were aware for years (in fact, over a decade for many of the Plaintiffs) of both Defendants' classification of them as independent contractors and the fact that they were not receiving benefits.  As a result, their benefits claims accrued long ago, and long ago expired.

ERISA does not include an explicit statute of limitations for claims for wrongful denials of benefits or benefit eligibility.  *See generally* 29 U.S.C. § 1131 *et seq.*  Therefore, federal courts, including the Second Circuit, have uniformly applied the forum state's breach of contract statute of limitations to claims for recovery of benefits pursuant to Section 502(a)(1)(B), 29

U.S.C. § 1132(a)(1)(B), of ERISA. *Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012);

*Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan,* No. 10 Civ. 9613, 2013 WL 4860119, at

*3 (S.D.N.Y. Sept. 11, 2013).[3]  Under New York Law, claims for breach of contract are subject

to a six-year statute of limitations.  *Muto,* 668 F.3d at 57; *see* N.Y. C.P.L.R. § 213.  Plaintiffs'

claims for denial of ERISA benefits are therefore also subject to a six-year statute of limitations.

*Id.*[4]

    In determining when an ERISA claim accrues, federal courts apply federal common law.

*Barnett,* 885 F. Supp. at 591 ("[t]he accrual of a claim under ERISA is determined by federal

law").  A claim for denial of benefits under ERISA accrues when a plan repudiates the plaintiff's

claim for benefits and/or participation in the Plan and that repudiation is known, or should be

known, to the plaintiff.  *Schulman,* 2013 WL 4860119, at *4; *Ambris v. Bank of New York,* No.

96 Civ. 0061, 1998 WL 702289, at *3 (S.D.N.Y. Oct. 7, 1998).  This applies even when no

formal application for benefits has been filed.  *Schulman,* 2013 WL 4860119, at *4.

    In cases alleging misclassification, courts have held that the claim for benefits starts to

accrue when it is clear to the individual that he or she was classified as an independent contractor

and was not receiving benefits.  *Schulman,* 2013 WL 4860119, at *4 (plaintiff's claim for

---

[3] While a statute of limitations defense is normally required to be pleaded and proved by the Defendant, the Court may consider a statute of limitations defense on a motion to dismiss where that determination can be made from the face of the Complaint. *Reches v. Morgan Stanley & Co.*, No. 16 Civ. 1663, 2016 WL 4530460, at *2 (E.D.N.Y. Aug. 29, 2016).  Such is the case here.  Plaintiffs plead the approximate dates that they began services for MetLife, and facts that show that they were aware of their treatment as independent contractors and that they were not in receipt of benefits and/or participating in the Plans.  *See infra* at Section III(A).

[4] With respect to the claims of the Plaintiffs who are not New York residents, federal courts sitting in New York must also rely on New York's borrowing statute, which provides that claims accruing out of state by non-New York residents are subject to the shorter of the statute of limitations of New York or the state of residence.  *Muto,* 668 F.3d at 57-59; *Barnett v. Int'l Bus. Machs. Corp.*, 885 F. Supp. 581, 590 (S.D.N.Y. 1995).  As New York, Connecticut, and New Jersey all apply six-year statutes of limitations to claims for breach of contract, no distinction need be drawn with respect to Connecticut or New Jersey.  *See* C.G.S.A. § 52-576; N.J. Stat. § 2A:14-1.  However, Illinois and Rhode Island both apply a 10-year statute of limitations to claims for breach of contract; therefore, as New York law provides for a shorter period of time, and claims accruing in Illinois and Rhode Island are also subject to a six-year limitation.  N.Y. C.P.L.R. § 202; 735 Ill. Comp. Stat. § 5/13-206; R.I.G.L. § 9-1-13.  In short, all Plaintiffs are subject to a six-year statute of limitations for their claim for denial of benefits.  *See generally Muto,* 668 F.3d at 59 (applying New York's borrowing statute to ERISA benefits claim).

benefits accrued when he learned he was classified as an independent contractor and not entitled to benefits); *Ambris*, 1998 WL 702289, at *6 ("Once a plaintiff is on clear notice that she is not entitled to benefits, the cause of action accrues."). This is true even in the absence of an express agreement or contract stating that a person was classified as such and/or was not eligible for benefits. *Schulman,* 2013 WL 4860119, at *4 ("a plaintiff [may] be aware of his or her misclassification and exclusion from an employee benefit plan in the absence of an explicit agreement or notification of the specific details of the plan").

As the Complaint makes clear, each of the Plaintiffs has been performing services for MetLife for over six years, and some for almost two decades. *See* Compl. ¶ 12 (McNeely, began in 2002); ¶ 13 (Scott Vlk, began in 2011); ¶ 14 (Shilpa Vlk, began in 2008); ¶ 15 (Bernhard, began in 2003); ¶ 16 (Joyce, began in 2003); ¶ 17 (Tuber, began in 2002); ¶ 18 (Rudziewicz, began in 2006); ¶ 19 (DeMaio, began in 1996); ¶ 20 (Kobielski, began in 2002); ¶ 21 (Molta, began in 2001). The Complaint concedes that the alleged "misclassification" of these individuals as independent contractors began "some time before 2002." Compl. ¶ 1. Plaintiffs specifically allege, *inter alia,* that MetLife did not withhold FICA taxes from their pay; that they did not receive overtime pay; and that MetLife issued a Form 1099 annually, instead of a Form W-2. *Id.* at ¶¶ 1, 4, 7, 33, 115-117, 132-134. Plaintiffs also allege that they did not receive any benefits. *Id.* at ¶ 6. All of these undisputed facts are recognized indicia of independent contractor status.

Accordingly, Plaintiffs' claims for ERISA-governed benefits accrued when they each started performing services for MetLife, or, at most, shortly thereafter. *Schulman,* 2013 WL 4860119, at *4 ("it blinks reality to assert that the plaintiff remained unaware of the alleged breach, for its consequences – that she did not receive employee benefits – would have soon if not immediately been, apparent") (citing *Downes v. JP Morgan Chase & Co.,* No. 03 Civ. 8991, 2004 WL 1277991 (S.D.N.Y. June 8, 2004)). Moreover, even if Plaintiffs claim they were not

aware they would be compensated as independent contractors and would not receive benefits

from the date of their original contract with MetLife (a claim they do not make here), then they

certainly would have become aware once they received their first payment from MetLife without

any employee payroll deductions; or received a Form 1099 instead of a Form W-2; or paid for

medical services or benefits without relying on, or being reimbursed under, a MetLife-sponsored

insurance plan.  *Reches,* 2016 WL 4530460, at *3 ("Plaintiff was . . . on notice that defendant did

not classify plaintiff as its employee and that he had been deemed ineligible for employee

benefits at the time he received his first paycheck as an independent contractor."); *Schulman,*

2013 WL 4860119, at *4 (plaintiff's claim for benefits accrued at least by the time he filed tax

returns including income from defendant as business income and identifying himself as self-

employed); *Downes,* 2004 WL 1277991, at *4 ("Surely, each time [Plaintiff] visited a doctor, she

did not fail to notice that she did not have health insurance subsidized or provided by

[Defendant], and each time she took a leave of absence for illness or vacation, she did not fail to

notice that she received no compensation.").

       Plaintiffs' admissions clearly demonstrate that, from the start, they were aware that they

were classified as independent contractors and were not participants in the Plans or receiving

Plan benefits.  As in *Schulman* and *Downes,* it would "blink reality" for Plaintiffs to now claim

otherwise.  *See Reches,* 2016 WL 4530460, at *3; *see also Schulman,* 2013 WL 4860119, at *4;

*Downes,* 2004 WL 1277991, at *4.  Accordingly, any claims they have for denial of benefits (as

well as the claims of any other individual arising before February 1, 2012 (six years prior to the

filing of the Complaint)) are time-barred, and the Court need look no further into the merits of

Plaintiffs' claims.

2.     Plaintiffs' Claims for Breach of Fiduciary Duty Accrued Over Three Years Ago
and are Time-Barred

Plaintiffs' vaguely-asserted claims for breach of fiduciary duty are also barred by the

applicable statute of limitations.  Unlike claims for denial of benefits, ERISA sets forth an

explicit statute of limitations for fiduciary duty breach claims.  29 U.S.C. § 1113.  Such claims

must be brought within three years of Plaintiffs having "actual knowledge" of the alleged breach.

(*Id.* at § 1113(2)) and, in no event, more than six years after the breach occurred, 29 U.S.C. §

1113(1).

When a plaintiff purports to allege a breach of fiduciary duty claim arising from a denial

of benefits due to alleged misclassification as an independent contractor, courts have presumed

that the relevant act that causes the claim to accrue for statute of limitations purposes is the

alleged misclassification.  *Schulman,* 2013 WL 4860119, at *6 ("The Court thus considers the

misclassification . . . as the relevant breach of fiduciary duty.") (citing *Downes,* 2004 WL

127791, at *3) (plaintiff has *actual knowledge* of claim based on alleged misclassification "when

[the plaintiff] first learns that she is considered an independent contractor and is therefore not

entitled to benefits").

Using the facts pleaded by Plaintiffs, it is clear that each Plaintiff has been performing

services for MetLife for over three years, and that MetLife classified each of the Plaintiffs as

independent contractors from the time of their contracting, starting sometime prior to 2002.  *See*

Section III(B)(1)(a), *supra.*  As explained above, each Plaintiff clearly was aware of his or her

classification as an independent contractor, if not immediately upon signing the agreement, then

very shortly thereafter, and undoubtedly more than three years ago.  *Id.*  Moreover, even if the

Court somehow finds that Plaintiffs did not have actual knowledge of the alleged breach (which

they did), Plaintiffs claims are also time-barred because the act that Plaintiffs claim to be a

breach of fiduciary duty (that is, the alleged misclassification) occurred well over six years ago.

-9-

Accordingly, Plaintiffs' breach of fiduciary duty claims are time-barred, and the Court need look no further into the merits of Plaintiffs' claims. [5]

## C.   PLAINTIFFS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

Should the Court decide that Plaintiffs' claims are not time-barred, the Court should dismiss the claims for failure to exhaust administrative remedies.  Plaintiffs' claims to recover ERISA benefits are governed by Section 502(a)(1)(B) of ERISA, which permits a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see also* Compl. ¶¶ 118-129.  An ERISA plan participant's claim under Section 502(a)(1)(B) must be dismissed, however, if, as here, "plaintiff fails to allege that he or she has exhausted administrative remedies" under the applicable plan. *Greifenberger v. Hartford Life Ins. Co.*, No. 03 Civ. 3238, 2003 WL 22990093, at *4 (S.D.N.Y. Dec. 18, 2003), *aff'd* 131 Fed. Appx. 756 (2d Cir. 2005); *see also Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133-34 (2d Cir. 2001) (affirming dismissal for failure to exhaust); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 595 (2d Cir. 1993) (same).

As the Second Circuit has made clear, the "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases" serves several primary purposes, including to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action

---

[5] Furthermore, each Plan contains its own internal claims period requiring that individuals seeking benefits under the Plan assert those claims with the Plan Administrator within six months following the close of the Plan Year in which it arose. *See, e.g.,* Martin Decl., Exs. A and C § 10.09(b); Ex. D § 9.6(b); Ex. E § 10.10(b); Ex. F § 5.5(b); Ex. G § 5.5(b).  Plaintiffs do not allege (nor could they in good faith) that any of them ever sought any benefits or made any claim to the Administrator under any one of the Plans under which they now seek benefits, let alone that they did so within the time period set forth under the Plans' express terms.  Plaintiffs' failure to do so – or to even allege that they did – provides a separate and independent reason for the Court to dismiss Plaintiffs' ERISA claims as untimely.

> if litigation should ensue; and (3) assure that any judicial review of fiduciary action
> (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

*Kennedy*, 989 F.2d at 594.  In addition, the exhaustion requirement helps to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  *Peck v. Aetna Life Ins. Co.*, 464 F. Supp. 2d 122, 125 (D. Conn. 2006) (citing *Kennedy*, 989 F.2d at 594).  Courts recognize only a very narrow futility exception to the exhaustion requirement "where claimants make *a clear and positive showing* that pursuing available administrative remedies would be futile."  *Davenport*, 249 F.3d at 133-34 (emphasis in original).

Accordingly, even if they could show that their claims are not time barred (they can't), to avoid dismissal Plaintiffs must also allege facts that show exhaustion of the procedures required by the terms of the applicable Plans.  *See, e.g., Thomas v. Verizon*, No. 04-5232, 2005 WL 3116752, at *1 (2d Cir. Nov. 22, 2005) (affirming dismissal of ERISA claims where plaintiff did not utilize remedies available under the Plan) (citing *Kennedy*, 989 F.2d at 594); *Egan v. Marsh & McLennan Cos., Inc.,* No. 07-7134, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) (dismissing ERISA claims for failure to exhaust because, "[u]nder Second Circuit case law, courts look to whether plaintiffs have utilized and exhausted administrative remedies provided for under the plan at issue").

Each Plan here clearly states that the relevant plan administrator has the discretion to make all eligibility and claims determinations that may arise in connection with that respective Plan.  *See* Section II.A, *supra.*  Furthermore, each of the Plans specifically incorporates by reference a SPD outlining the statutorily required procedure for asserting claims for benefits or disputing an adverse benefit determination.  *Id.*  Absent any allegations that Plaintiffs complied, or even attempted to comply, with those procedures, Plaintiffs' claims must be dismissed.

Plaintiffs do not allege that they made an attempt to seek benefits, or contest ineligibility, under any of the Plans before filing this case, let alone that they followed the requisite claims procedures and received a determination.  *See* Compl.

Nor can Plaintiffs excuse their failure to exhaust by claiming (which they do not) that they were unaware of the claim procedures under the Plans.  In *Davenport,* the Second Circuit considered a district court's dismissal of a claim by a plaintiff who alleged she was misclassified as an independent contractor and, therefore, was entitled to benefits under certain ERISA plans. *Id.* 249 F.3d at 132.  The Second Circuit affirmed the district court's dismissal, despite the plaintiff's assertion that she "lacked access to the claims procedures," finding that even if the plaintiff had only become aware of the procedures after filing suit, she was obligated to follow the proper administrative process once she became aware.  *Id.* at 134.  The Court wrote that this would "enabl[e] the plan committee to perform the function that Congress contemplated that it would perform."  *Id.* ("[Plaintiff] was required to exhaust even if she was ignorant of the proper claims procedures"); *see also Reid v. SuperShuttle Int'l, Inc.*, No. 08-CV-4854, 2010 WL 1049613, at *8 (E.D.N.Y. Mar. 22, 2010) ("plaintiff's lack of knowledge and access to claim procedures d[oes] not support [a] claim for a waiver of the exhaustion requirement"); *Zupa v. Gen. Elec. Co.*, No. 3:16-cv-00217, 2016 WL 3976544, at *3-4 (D. Conn. July 22, 2016) (discussing *Davenport* and dismissing for failure to exhaust).

Because Plaintiffs have not alleged any facts to show that they exhausted their claims through any of the Plans' express claims procedures, nor made any allegations to support application of the narrow futility exception to exhaustion, the Court need look no further into the merits of Plaintiffs' claim for benefits under ERISA Section 502(a)(1)(B), and those claims should be dismissed.

-12-

**D.     PLAINTIFFS FAIL TO ASSERT A PLAUSIBLE CLAIM FOR RELIEF UNDER ERISA**

     1.     Plaintiffs Have Not Pled Any Facts To Show They Are Eligible To Participate In Any of the Plans

Even if the statute of limitations has not expired (it has), and even if Plaintiffs had properly exhausted their administrative remedies under the Plans before filing this lawsuit (they did not), Plaintiffs' claims for benefits should still be dismissed because they have failed to plead any facts to demonstrate their eligibility to participate in the Plans.

An individual can only succeed in an action for benefits under an ERISA plan if they are a participant in or a beneficiary of an ERISA plan.[6]  29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1104(a)(1).  However, "[n]othing in ERISA requires employers to establish employee benefit plans."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  Accordingly, there is no ERISA violation where an employer's plan excludes certain types of workers, including independent contractors.  *See, e.g., Downes,* 2004 WL 1277991, at *1 (no ERISA violation where employer classified employee as independent contractor and relevant Plan excluded independent contractors); *Williams v. Am. Int'l Group, Inc.*, No. 01-civ-9673, 2002 WL 31115184, at *1 (S.D.N.Y. Sept. 23, 2002) (no ERISA violation where Plan excluded temporary employees).

    ERISA defines "participant" in relevant part as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type."  29 U.S.C. § 1002(7).  Thus, in order to state a claim for benefits under ERISA, a plaintiff <u>must plead facts</u> sufficient to show that, taking the allegations in a complaint as true, they would be eligible to participate under the terms of the plans.  *See, e.g., Montesano v. Xerox Corp. Ret. Income*

---

[6] ERISA section 502(a)(1) provides that "[a] civil action may only be brought by a participant or beneficiary" and ERISA section 502(a)(3) provides that "[a] civil action may be brought by a participant, beneficiary or fiduciary." 29 U.S.C. § 1134(a)(1); 29 U.S.C. § 1132(a)(3).

*Guarantee Plan*, 117 F. Supp. 2d 147 (D. Conn. 2000), *aff'd in relevant part*, 256 F.3d 86 (2d Cir. 2001).  Plaintiffs have not done so here.

Plaintiffs do not plead any <u>facts</u> that would indicate that they are eligible to participate under the terms of any of the Plans.  Other than general, conclusory allegations stating that Plaintiffs should have been classified as common-law employees, they do not allege that they would be eligible under the terms of the Plans to receive the specific benefits provided by any of the Plans (or Constituent Plans), as required to plausibly state a claim.  *See generally* Compl. For instance, Plaintiffs do not even name or describe any Constituent Plan in the Metlife Options & Choices Plan under which they claim to be eligible for benefits, nor do they allege, for instance, that they were ever eligible for temporary or long-term disability benefits, or that they engaged in international business travel.  *Id.*  Indeed, they do not even allege that if they were found now by this Court to be common law employees they would be eligible (and, as described below, they would not).  *Downes v. JP Morgan Chase & Co.,* No. 03 CIV. 8991, 2006 WL 785278, at *15 (S.D.N.Y. Mar. 21, 2006) (granting summary judgment for employer on ERISA claim where Plaintiff, even if properly classified as a common law employee, did not meet the eligibility definitions under the relevant plans).

Tellingly, Plaintiffs do not allege any facts regarding the Plan terms under which they would be deemed eligible – instead, they make a vague, conclusory allegation that "upon information and belief," the Plans contain exclusions that would not apply to Plaintiffs.  Compl. ¶ 6.  But Plaintiffs are incorrect.  By way of example only, the 2010 Retirement Plan provides that participation is limited to Employees on the "payroll," and excludes individuals classified by MetLife as independent contractors, "notwithstanding that such person is later determined by a court of competent jurisdiction . . . to be a common law employee."  Martin Decl., Ex. A at §§ 1.20(viii), 1.21.  The post-2011 Plan further excludes individuals who enter into an agreement

-14-

with MetLife that acknowledges his or her independent contractor status and that he or she is not entitled to benefits.  *Id.*, Exs. B and C at § 1.20(viii).  Plaintiffs do not plead that they were classified as employees by MetLife (indeed, they concede they were not); nor do they dispute that they were parties to agreements with MetLife under which they were treated as independent contractors; nor do they plead that they were ever on MetLife's "active payroll."  *See, e.g., Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356 (10th Cir. 2009) (where plan administrator determined that plan eligible individuals only included those on ExxonMobil's payroll, determination was not arbitrary or capricious).  This example emphasizes that Plaintiffs fail to plead any facts regarding any of the Plans' eligibility requirements as well as any facts that would support a plausible inference that they would personally be eligible under any of the Plans.  Plaintiffs have, therefore, failed to state a plausible claim for relief, and their benefits claim must be dismissed.

       2.    <u>Plaintiffs Have No Viable Breach of Fiduciary Duty Claim.</u>

Plaintiffs' claim for breach of fiduciary duty must also be dismissed, as the only breach identified by Plaintiffs is the denial of benefits under ERISA Section 502(a), and that claim fails for the reasons discussed above.

29 U.S.C. § 1104 sets forth the duties owed by ERISA fiduciaries to plan participants.  ERISA also provides plan participants (in 29 U.S.C. § 1132(a)(3)) with a private right of action to seek "appropriate equitable relief" for damages resulting from a breach of fiduciary duty.  However, a claim for breach of fiduciary duty cannot lie where plaintiff "merely disputes the determination that she is not entitled to . . . benefits."  *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 286-287 (S.D.N.Y. 2004) (discussing *Varity Corp. v. Howe*, 516 U.S. 489 (1996) and its progeny).

As a result, courts have repeatedly held that Plaintiffs may not recover under ERISA merely by "repackaging [their] claim for wrongful denial of benefits . . . as claims for breaches of fiduciary duties."  *Irvins v. Metro. Museum of Art*, No. 15-cv-5180, 2016 WL 4508364, at *5 (S.D.N.Y. Aug. 26, 2016) ("As courts have repeatedly held, Section 502(a)(3) simply does not permit such a claim in which an individual plaintiff seeks monetary damages from a plan administrator payable to the claimant"); *Klecher,* 331 F. Supp. 2d at 288 (ERISA does not permit "lawyers [to] complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing") (citing *Varity,* 516 U.S. at 514); *Mead v. Andersen,* 309 F. Supp. 2d 596 (S.D.N.Y. 2004) (dismissing plaintiff's claim for breach of fiduciary duty premised on an "ordinary" denial of benefits).

Here, the only factual allegations that Plaintiffs plead related to their breach of fiduciary duty claim are that MetLife failed to provide them with the benefits they seek.  Compl. ¶¶ 127-128, 257, 259, 261.  And though Plaintiffs try to disguise their supposed "equitable relief" as an "accounting" of benefits owed, what they really seek is payment of those benefits – which is the exact same remedy they seek under Section 502(a)(1)(B).  Compl. ¶ 263.  It is therefore plain that Plaintiffs' claim for "breach of fiduciary duty" is really a mere repackaging of their claim for denial of benefits – a claim for which ERISA already provides relief under Section 502(a)(1)(B).  As Plaintiffs plead no additional facts which could independently sustain a breach of fiduciary duty claim, that claim must be dismissed.

**E.    PLAINTIFFS' "UNJUST ENRICHMENT" CLAIMS SHOULD BE DISMISSED**

Plaintiffs allege that MetLife was "unjustly enriched" under various state laws because Plaintiffs, and not MetLife, allegedly paid both the employee and employer share of taxes under the FICA provisions of the Internal Revenue Code ("IRC"), 26 U.S.C. § 3111.  Dkt. No. 47 ¶¶134-35, 275-82.  Although camouflaged as claims for unjust enrichment, Plaintiffs appear to

be trying to recover the value of what they paid directly to the IRS. *Id.* In other words, Plaintiffs' claims are really just a backdoor attempt to seek a tax refund. *Cf. Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409-14 (9th Cir. 1998) (dismissing state law claims under 26 U.S.C. § 7422(a) because they were, in essence, "tax refund suits"). Plaintiffs' artful pleading cannot withstand dismissal for two principal reasons.

First, there is no "private cause of action whereby [a purported] employee may sue [a purported] employer for a failure to make a required contribution" to the tax authorities. *Ferro v. Metro. Ctr. for Mental Health*, No. 13-civ-2347, 2014 WL 1265919, at *5-6 (S.D.N.Y. Mar. 27, 2014) (dismissing independent contractor plaintiffs' claims that defendant failed to pay FICA); *Reynolds v. de Silva,* No. 09 CIV. 9218, 2010 WL 743510, at *7-8 (S.D.N.Y. Feb. 24, 2010) (same), *abrogated on other grounds by Katz v. Cellco P'ship,* 794 F.3d 341 (2d Cir. 2015); *Spilky v. Helphand*, No. 91 CIV. 3045, 1993 WL 159944, at *2-4 (S.D.N.Y. May 11, 1993) (same). Without a private right of action, Plaintiffs cannot sue MetLife for an alleged FICA violation.[7]

 Second, Plaintiffs' unjust enrichment claims are effectively "preempted," as their only available recourse is with the IRS. 26 U.S.C. §7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary ….

Accordingly, the only permissible mechanism to seek disputed federal tax payments is a "claim for refund or credit" filed with the IRS. *See, e.g.*, *United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 7 (2008) (noting that "Congress meant the statute to have expansive reach");

---

[7] *See also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66-67 (3d Cir. 2008) (collecting cases); *Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14 CIV. 2463, 2015 WL 631404, at *4 (S.D.N.Y. Feb. 13, 2015) ("it is for the IRS, and not private citizens, to enforce the [IRC]"); *Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 604 (S.D. Tex. 2010) ("there is no private right of action under FICA").

*Matthew v. RCN Corp.*, No. 12-civ-0185, 2012 WL 5834917, at *4 (S.D.N.Y. Nov. 14, 2012) (collecting cases and explaining that "courts interpreting Section 7422 have construed its language broadly").  In addition, proceeding through the IRS is the only available mechanism, regardless of who allegedly "erroneously or illegally assessed or collected," or "wrongfully collected" the tax. *See, e.g.*, *Glanville*, 727 F. Supp. 2d at 603-04 (Section 7422 applies to an individual's suit against his employer even where (as here) the individual is seeking to recover taxes he directly paid to the IRS).

Courts routinely dismiss state law claims based on alleged FICA violations.  *See, e.g., Umland*, 542 F.3d at 66-67 (holding that §7422 preempts state law unjust enrichment claims arising out of alleged FICA violations); *Glanville*, 727 F. Supp. 2d at 603-04 (state law claim for breach of fiduciary duty arising out of employer's alleged violation of FICA and FUTA is preempted); *Lehman v. USAIR Grp., Inc.,* 930 F. Supp. 912, 916 (S.D.N.Y. 1996) ("The state law claims ... are expressly pre-empted by §7422 which prohibits such suits for disguised refunds of taxes"); *Galasso v. City of N.Y.*, No. 101534/01, 2001 WL 1117480 (N.Y. Sup. Ct. Sept. 4, 2001) (extending IRS preemption to FICA cases because "[j]urisdiction over federal tax liability […] lies exclusively in the appropriate federal courts, upon compliance with the federal regulatory scheme, including exhaustion of available federal administrative remedies").[8]  The same result should attach here.

---

[8] While Plaintiffs concede that "[m]ost courts outside New York have held that the IRS administrative process preempts state law" (Dkt. 51 at 3), they nevertheless believe a different result should attach here.  However, the two cases on which Plaintiffs rely—*Impossible Entm't, Inc. v. Wulf*, No. 06509422011, 2011 WL 11415351 (N.Y. Sup. Ct. Oct. 6, 2011), and *Weiner v. Cataldo, Waters & Griffith Architects P.C.*, 200 A.D. 2d 942 (N.Y. App. Div. 3d Dep't 1994)—cannot save even their New York claims.  First, neither case contains any discussion on (1) whether there is a private right of action for tax-collection premised on failure to pay FICA or (2) preemption under §7422. Further, *Weiner* merely says the "defendant was liable for the employer's share of FICA taxes," but does not specify liable *to plaintiff*.  200 A.D. 2d at 943. Instead, an employer that fails to pay FICA taxes is "liable" to the IRS.

F.       **PLAINTIFFS ARE EXEMPT FROM OVERTIME REQUIREMENTS**

Even if they were not independent contractors (and they are), Plaintiffs' overtime claims

fail also because they are exempt.[9]  *See, e.g.*, *Brown v. Suncoast Skin Sols., Inc.*, No. 6:17-civ-

515, 2017 WL 2361649, at *2-3 (M.D. Fla. Apr. 26, 2017) (dismissing FLSA claim for unpaid

overtime because the plaintiff, a medical doctor, "pled facts which conclusively establish[ed] that

she [was] exempt from FLSA coverage"), *adopted by,* 2017 WL 2364323 (M.D. Fla. May 30,

2017).  The FLSA provides exemptions from its overtime requirements for "any employee

employed in a bona fide . . . professional capacity."  29 U.S.C. § 213(a)(1).  Plaintiffs allege that

they cannot be exempt because they were not paid on a salary basis, but it is black-letter law that

any "employee who is the holder of a valid license or certificate permitting the practice of law or

medicine or any of their branches and is actually engaged in the practice thereof" is exempt

under the learned professional exemption, *even if not paid on a salary basis*.  29 C.F.R. §

541.304(a); *see id.* § 541.304(b) (extending the exemption to dentists); *see also generally*

*Professional*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Someone who belongs to a learned

profession or whose occupation requires a high level of training and proficiency.").[10]  Here, by

their own allegations, the Dentist Plaintiffs "held all necessary licenses and certifications to

---

[9] Defendants are only moving to dismiss the overtime claims brought by Plaintiffs who were/are dentists (McNeely, Scott Vlk, Shilpa Vilk, Bernhard, Tuber, Rudziewicz, and DeMaio) (the "Dentist Plaintiffs") on learned professional exemption grounds.  Defendants expressly reserve, and do not waive, any other arguments or defenses based on this or any other exemptions and/or wage and hour defenses that may apply to these or any other Plaintiffs.
[10] Connecticut, New Jersey, and New York effectively adopt or mirror the FLSA's exemption requirements.  *See Reiseck v. Univ. Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010); *Morrison v. Ocean State Jobbers, Inc.*, No. 3:09-cv-1285, 2015 WL 5684021, at *4 (D. Conn. Sept. 28, 2015); *Cooper v. Green Pond Animal Care Ctr.*, No. 12-7903, 2015 WL 3385541, at *2 (D.N.J. May 22, 2015); *see also* Conn. Agencies Regs. § 31-60-16(a) (professional exemption mirrors 29 C.F.R. § 541.304(a)); *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012).  The Illinois and Rhode Island state law overtime claims are not at issue in this motion.

practice as a dentist" (*e.g.*, Dkt. 47 ¶12) and, *inter alia*, in reviewing dental records and making determinations regarding dental necessity were clearly practicing as such.[11]

Neither the FLSA nor its implementing regulations define what constitutes the "practice of [dentistry]" for purposes of the learned professional exemption.  However, courts in this Circuit have looked to state law definitions of the "practice of law" in analyzing the scope of the learned professional exemption.  *See Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, 620 Fed. Appx. 37, 43-45 (2d Cir. 2015); *Henig v. Quinn Emanuel Urquhart & Sullivan, LLP,* 151 F. Supp. 3d 460, 470-71 (S.D.N.Y. 2015).  The state jurisdictions in which the current Dentist Plaintiffs allegedly worked each separately and *broadly* define what it means to practice "dentistry."  Conn. Gen. Stat. § 20-123(a)-(b); 225 Ill. Comp. Stat. Ann. 23/37; N.J. Rev. Stat. § 45:6-19; N.Y. Educ. Law § 6601; R.I. Gen. Laws § 5-31.1-1(6).  The common element in each state's definition is that an individual practices dentistry when he (1) holds himself out as being able to render a professional dental opinion, or (2) offers (or attempts to offer) a professional opinion regarding dental treatment, *regardless of whether the individual directly treats a patient or attempts to implement the opinion.*[12]  *See Murphy v. Bd. Of Med. Examiners of State of Ariz.*, 949 P.2d 530, 536 (Ariz. Ct. App. 1997) (decisions as to whether "surgeries or other non-experimental procedures are medically necessary … are not insurance decisions but rather medical decisions"); *see also Illinois v. U.S. Dental Institute, Inc.*, 373 N.E.2d 635, 637-38 (Ill. Ct. App. 1978) (a person practices dentistry when he represents himself as being able to

---

[11] MetLife asks the Court to determine that the Dentist Plaintiffs engaged in the practice of dentistry for purposes of exemption from overtime *only*; any determination related to the "practice of dentistry" should be limited to that context because nothing further is needed to dismiss the overtime claims here.

[12] The American Dental Association agrees, defining "dentistry" as "the *evaluation, diagnosis, prevention and/or treatment . . . of diseases, disorders and/or conditions …*; *provided by a dentist, within the scope of his/her education, training and experience, in accordance with the ethics of the profession and applicable law*."  General Dentistry, ADA.ORG, https://www.ada.org/en/education-careers/careers-in-dentistry/general-dentistry (last visited August 22, 2018) (emphasis added).

"diagnose" dental conditions and "prescribe the remedy," regardless of whether the person actually treats a patient).

Here, the Complaint is rife with allegations that the Dentist Plaintiffs were "engaged in the practice of dentistry" for purposes of federal and state wage and hour laws.  For example, the Dentist Plaintiffs allege to have "review[ed] the clinical information submitted by treating dentists" and "evaluat[ed] claims for benefits" related to the treatment of the oral cavity and other conditions. Compl.  ¶¶1, 55, 72.  In doing so, the Dentist Plaintiffs were clearly required to apply their "professional" medical judgment to each of their tasks, and no lay person could have done what they did.  *Id.*  Without possessing the knowledge and skills gleaned from their dental education, training, and experience, MetLife would never have contracted with the Dentist Plaintiffs as they could not have (1) rendered a dental-related "professional opinion;" (2) determined whether a dental treatment was "dentally necessary;" (3) identified medically acceptable, albeit less expensive, treatment "alternatives;" or (4) opined as a licensed dentist whether, given the particular circumstances of a patient, an alternative service or procedure "could have produced a professionally acceptable result." *Id.*  Plaintiffs' own allegations confirm that the Dentist Plaintiffs' work encompassed a series of judgments that each required them to draw upon their knowledge as dental professionals.  No lay person could have done that.  *See Henig*, 151 F. Supp. 3d at 470-71 (contract attorney plaintiffs were exempt because they "exercised legal judgment" in completing their tasks).[13]

Moreover, the Dentist Plaintiffs allege to have "communicat[ed] … with submitting dentists to explain and clarify dental claims" in order to determine whether the specific treatment provided to an individual was "medically necessary."   Dkt. 47 ¶¶1, 46, 55, 72.  In other words,

---

[13] Plaintiffs claim that they cannot be found to be exempt because they were not treating patients sitting in a dentist chair, and in their (incorrect) definition of what it means to practice dentistry individuals must provide such treatment.  However, as set forth above (at pp. 20-21, *supra*), numerous other activities of a learned professional may fit within the different definitions of the practice of dentistry.

the Dentist Plaintiffs independently evaluated the dental records of claimants, including professional to professional communications with treating dentists, determined the dental necessity of the services or procedures performed by the treating dentists, and then conveyed their learned professional opinions to MetLife.  *Id.*   The Court should thus find that the learned professional exemption applies to the Dentist Plaintiffs.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: August 24, 2018                            Respectfully submitted,
New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ Melissa C. Rodriguez*_____
          Melissa C. Rodriguez
          Christopher A. Parlo
          Melissa D. Hill

*Attorneys for Defendants*