UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CAROL McNEELY, SCOTT D. VLK, SHILPA :
VLK, GEORGE K. BERNHARD, and DEBORAH :
JOYCE, and HARRY M. TUBER, :
 :
on behalf of themselves and all others :
similarly situated, :
 :
and :
 :
DAVID T. RUDZIEWICZ, FREDERICK :
DEMAIO, DONNA R. KOBIELSKI, and :
DONNA MOLTA, :
 :
       Plaintiffs, : **1:18-CV-00885-PAC**
 :
   -against- : *Electronically Filed*
 :
METROPOLITAN LIFE INSURANCE :
COMPANY, METROPOLITAN LIFE :
RETIREMENT PLAN FOR UNITED STATES :
EMPLOYEES, SAVINGS AND INVESTMENT :
PLAN FOR EMPLOYEES OF METROPOLITAN :
LIFE AND PARTICIPATING AFFILIATES, :
METLIFE OPTIONS & CHOICES PLAN, and :
WELFARE BENEFITS PLAN FOR EMPLOYEES :
OF METROPOLITAN LIFE AND :
PARTICIPATING AFFILIATES, :
 :
       Defendants. :
---------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL DISMISSAL OF
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---:|
| A. | Plaintiffs' ERISA Claims Are Time-Barred | 1 |
| B. | Plaintiffs Have Failed to Plead Exhaustion | 5 |
| C. | Plaintiffs Do Not Plausibly Allege Eligibility Under Any Of The Plans | 5 |
| D. | Plaintiffs' Breach of Fiduciary Duty Claim Fails As It Is No More Than A Repackaged Claim For Benefits | 6 |
| E. | The Dentist Plaintiffs Are Exempt From Overtime Requirements | 7 |
| F. | Plaintiffs' "Unjust Enrichment" Claims Should Be Dismissed | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chalfin v. St. Joseph's Healthcare Sys.*,
   629 Fed. App'x 367 (3d Cir. 2015) ...................................................................................... 10

*Childers v. New York & Presbyterian Hospital*,
   36 F. Supp. 3d 292, 303 (S.D.N.Y. 2014) ........................................................................ 3, 10

*Downes v. JP Morgan Chase & Co.*,
   No. 03 Civ. 8991, 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ..................................... 1, 3, 4

*Dziennik v. Sealift, Inc.*,
   2018 WL 1725623 (E.D.N.Y. Mar. 30, 2018) ...................................................................... 10

*Egan v. Marsh & McLennan Cos., Inc.*,
   2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) ............................................................................ 5

*Encino Motorcars, LLC v. Navarro*,
   138 S. Ct. 1134 (2018) ............................................................................................................ 8

*Glanville v. Dupar, Inc.*,
   727 F. Supp. 2d 596 (S.D. Tex. 2010) .................................................................................... 9

*Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*,
   151 F. Supp. 3d 460, 470-71 (S.D.N.Y. 2015) ....................................................................... 9

*Irvins v. Metro. Museum of Art*,
   2016 WL 4508364 (S.D.N.Y. Aug. 26, 2016) ........................................................................ 7

*Jakway v. Unum Provident Corp.*,
   2002 WL 31996043 (C.D. Cal. May 6, 2002) ........................................................................ 8

*Kane ex re. U.S. v. Healthfirst, Inc.*,
   120 F. Supp. 3d 370, 385 ......................................................................................................... 9

*Kennedy v. Empire Blue Cross & Blue Shield*,
   989 F.2d 588 (2d Cir. 1993) .................................................................................................... 6

*Kesselman v. The Rawlings Co., LLC*,
   668 F. Supp. 2d 604 (S.D.N.Y. 2009) ..................................................................................... 5

*Klecher v. Metro. Life Ins. Co.*,
   331 F. Supp. 2d 279 (S.D.N.Y. 2004) ..................................................................................... 7

*Montesano v. Xerox Corp. Ret. Income Guarantee Plan*,
   117 F. Supp. 2d 147 (D. Conn. 2000), *aff'd in relevant part*, 256 F.3d 86 (2d
   Cir. 2001) ................................................................................................................. 5

*Morillo v. 1199 SEIU Benefit & Pension Funds*,
   783 F. Supp. 2d 487 (S.D.N.Y. 2011) ................................................................................ 5

*Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*,
   2018 WL 4471522 (2d Cir. Sept. 19, 2018) ....................................................................... 9

*N.Y. & Presbyterian Hosp.*,
   881 F.3d 877 (Fed. Cir. Jan. 31, 2018) ............................................................................ 10

*Paese v. Hartford Life & Accident Ins. Co.*,
   449 F.3d 435 (2d Cir. 2006) ............................................................................................... 5

*Pfluger v. Sundstrand Corp.*,
   405 N.E.2d 12 (Ill. Ct. App. 1980) .................................................................................... 8

*Pippins v. KPMG, LLP*,
   759 F.3d 235 (2d Cir. 2014) ............................................................................................... 9

*Reches v. Morgan Stanley & Co.*,
   2016 WL 4530460 (E.D.N.Y. Aug. 29, 2016), *aff'd*, 687 F. App'x 49 (2d Cir.
   2017) ............................................................................................................................. 1, 4

*Reches v. Morgan Stanley & Co. LLC*,
   736 Fed. App'x 306 (2d Cir. 2018) ................................................................................... 4

*Reid v. SuperShuttle Int'l, Inc.*,
   2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) .................................................................. 5

*Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*,
   2013 WL 4860119 (S.D.N.Y. Sept. 11, 2013) ...................................................... 1, 2, 3, 4

*Schultz v. Texaco, Inc.*,
   127 F. Supp. 2d 443 (S.D.N.Y. 2000) ............................................................................ 2, 3

*Scruggs v. ExxonMobil Pension Plan*,
   585 F.3d 1356 (10th Cir. 2009) ......................................................................................... 6

*Sikiyan v. Morris*,
   2016 WL 3131022 (C.D. Cal. May 31, 2016) .................................................................. 8

*Silvas v. E*Trade Mort. Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ......................................................................................... 10

*Xie v. JPMorgan Chase Short-Term Disability Plan*,
   2017 WL 2462675 (S.D.N.Y. Jun. 7, 2017) ...................................................................... 7

*Zupa v. Gen. Elec. Co.*,
 2016 WL 3976544 (D. Conn. July 22, 2016) ........................................................................... 5

**Statutes**

26 U.S.C. § 7422(a) .................................................................................................................. 9, 10

29 U.S.C. § 213(a)(1) ...................................................................................................................... 8

29 U.S.C. § 1113(2) (West 2018) ..................................................................................................... 1

CMWA ............................................................................................................................................ 8

CONN. GEN. STAT. § 31-58(f) ........................................................................................................... 8

ERISA ................................................................................................................................... *passim*

FICA ...................................................................................................................................... 4, 9, 10

FLSA ........................................................................................................................................ 7, 8, 9

**Other Authorities**

29 C.F.R. §§ 541.300-301, 304(a) .................................................................................................... 8

CONN. AGENCIES REGS. § 31-60-16(a)(5) ........................................................................................ 8

Fed.R.Civ.P. 12(b)(6) ....................................................................................................................... 5

A.      **Plaintiffs' ERISA Claims Are Time-Barred**[1]

Defendants have demonstrated that Plaintiffs' ERISA claims are time-barred because they did not bring those claims within six years of learning that they were not receiving benefits. *See* Def. Br. at 5-10.[2]  In response, Plaintiffs have pointed to no allegations in the Complaint (or in the amended complaint they created and then promptly withdrew) that change that conclusion.[3]  Nor have they cited any source in their Memorandum in Opposition ("Opp.") to contradict the overwhelming authority in this Circuit requiring the dismissal of those claims.

As to the law, a claim for benefits accrues when a claim is denied *or* when an individual is made aware that he or she is not eligible for or going to receive the benefits.  It is as simple as that. *See, e.g.*, *Downes*, 2004 WL 1277991, at *3-4 (claims for allegedly misclassified independent contractor accrued when she realized she wasn't receiving benefits).  For claims premised on misclassification as an independent contractor, this occurs when an individual learns that he or she is classified as an independent contractor and, therefore, not eligible for benefits.  *Reches v. Morgan Stanley & Co.*, 2016 WL 4530460, at *3 (E.D.N.Y. Aug. 29, 2016) ("[plaintiff's] claims began to run *when he first became aware that he was classified as an 'independent contractor'*") (emphasis added), *aff'd*, 687 F. App'x 49 (2d Cir. 2017); *Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*, 2013 WL 4860119, at *4 (S.D.N.Y. Sept. 11, 2013) (plaintiff's claim for benefits accrued when he learned he had been classified as an independent contractor).

As to the facts, Plaintiffs *concede* that they have not received benefits of any kind since the inception of their relationships with MetLife.  Compl. ¶ 6.  They cannot plausibly claim now that

---

[1] All terms and abbreviations herein are ascribed the same meaning as in Defendants' moving brief ("Def. Br.").
[2] Plaintiffs' claims for breach of fiduciary duty are subject to ERISA's three-year statute of limitations.  However, regardless of whether the statute of limitations is three years or six years, Plaintiffs' claims are barred because they knew they were not getting benefits.  *See* pp. 1-4, *infra*; *Downes v. JP Morgan Chase & Co.*, No. 03 Civ. 8991, 2004 WL 1277991, at *3-4 (S.D.N.Y. June 8, 2004) (finding that plaintiff had "actual knowledge" that she was classified as an independent contractor and applying 3-year statute of limitations); 29 U.S.C. § 1113(2) (West 2018).
[3] On September 17, 2018, mere days after filing their Opposition, Plaintiffs requested leave to again amend their Complaint, with revisions that were supposed to respond to Defendants' Motion.  *See* Dkt. No. 57.  However, after Defendants consented to the amendment, Plaintiffs withdrew their request to amend, apparently realizing that their proposed amendments could not and did not cure the deficiencies in their Complaint. *See* Dkt. Nos. 58-62.

-1-

they were somehow unaware of this fact for all of these years.  More specifically, Plaintiffs point to no allegation in the Complaint that they thought they had been getting any benefits from MetLife.  Indeed, to the contrary, *they admit they knew they were not getting any benefits* and knew it every month starting as early as 2002.  *See* Compl. ¶¶ 1, 12, 15, 17, 20, 21.  The Complaint also confirms that *they knew they were independent contractors,* conceding that they were each classified and treated as independent contractors by MetLife *from the time they began performing services for MetLife*.  *See* Def. Br. at 6-8.  These are the facts, and Plaintiffs could not even change them with their short-lived attempt at amending the complaint.

Ignoring the facts and law, Plaintiffs erect three strawmen arguments that they then proceed to knock down.  First, Plaintiffs contend their claims only accrued when Defendants submitted their May 29, 2018 letter to the Court seeking leave to file a motion to dismiss.  Opp. at 18.  Plaintiffs cite no authority for this theory—because none exists.  Indeed, it invites the nonsensical conclusion that Plaintiffs filed suit nearly four months *before* their claims accrued.

Plaintiffs' second theory—that their claims accrued when MetLife offered Plaintiffs a new contract in November of 2017 (Opp. at 18) —fails for the simple reasons that: (1) the contract did not change their status; and (2) they remained independent contractors who continued to *not* receive benefits.  Plaintiffs' reliance on *Schultz v. Texaco, Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2000), is curious as the case fully supports Defendants' position.  There, the Court dismissed ERISA claims as time-barred because the plaintiffs were on notice of their ineligibility for benefits when they were reclassified and removed from the employer's payroll.  *Id.*  The court rejected the plaintiffs' argument (also made here at Opp. 17) that they did not understand that the reclassification would result in the denial of benefits, and found that *the reclassification itself* was the "repudiation" which caused plaintiffs' claims to accrue.  *Id.* at 448.  *See also Schulman,* 2013 WL 4860119, at *4 ("for individuals who claim they were misclassified, this repudiation occurs when the beneficiary first learns that she is considered an independent contractor and is therefore

2

not entitled to benefits"). Here, there was no change in circumstances (as in *Schultz*) upon which Plaintiffs could rely *as the first time* they knew they were not receiving benefits. Plaintiffs admit they were at all times classified by MetLife as independent contractors and at all times did not receive (and knew they were not receiving) any benefits.[4]

Plaintiffs' third theory, again lacking any legal support, posits that their ERISA claims may have instead accrued for the first time two months after MetLife enacted Amendment No. 5 to the Retirement Plan in December 2011 (conveniently bringing Plaintiffs' claims just inside the six-year statute of limitations period). Opp. at 19. But that amendment, much like the alleged "updated" contract, did nothing to alter Plaintiffs status or give rise to some *new* knowledge. There was no change in status to which they can point as a trigger. They had not previously been receiving benefits which the amendment ended. They did not begin to receive benefits for the first time. The Amendment brought about no new change or situation for the Plaintiffs that, *for the first time*, triggered an accrual of claims.[5]

Moreover, contrary to Plaintiffs' suggestion, the Court need not interpret the language of the Plans to dismiss on statute of limitations grounds. *See, e.g.*, *Downes*, *supra* (dismissing on statute of limitations grounds without analyzing plan language); *Schulman*, *supra* (same). For

---

[4] Plaintiffs claim to have alleged that they did not know whether they were *eligible* for benefits. Opp. at 17. What they do not allege, however, is that they did not know whether they were *receiving* benefits – indeed they allege the opposite. Compl. ¶¶ 1, 12, 15, 17, 20, 21. Plaintiffs' contention that the "clear repudiation" must come from an affirmative statement by MetLife is incorrect as a matter of law. *See, e.g.*, *Schulman*, *supra*; *Downes*, *supra*. Moreover, it proves Defendant's next point (p. 5, *infra*) that Plaintiffs' claims must be dismissed for failure to exhaust. As Plaintiffs did not even make and attempt to obtain any benefits, there was no request to respond to with a written "repudiation."

[5] The internal inconsistency and implausibility of Plaintiffs' amendment theory of accrual is further highlighted by their insistence that the claims accrued not *on the date of the amendment* (in which case they would be plainly time barred), but, instead, an arbitrary *two months later*. Moreover, for every other Plan (SIP, Options & Choices, Welfare), the amendment on which they rely (i.e. Amendment No. 5) occurred *before* 2011. Plaintiffs appear to have recognized this since, in their short-lived Proposed Third Amended Complaint (which was not formally filed), Plaintiffs allege, incorrectly, that "upon information and belief" every Plan was amended the same way as the Retirement Plan in December 2011. But this is not accurate. The other Plans had that language well before 2011. Perhaps recognizing this was not true, Plaintiffs withdrew the proposed amendment. Accordingly, should the court adopt Plaintiffs' theory (it should not), that holding would lead to two necessary additional conclusions: (1) that Plaintiffs are not eligible for benefits under the Retirement Plan prior to the amendment on December 21, 2011; and (2) Plaintiffs' claims are time-barred under any Plan that included the same eligibility language as Amendment No. 5 prior to December 2011.

3

accrual purposes, the key inquiry is *not* whether the individual is or is not *in fact* eligible under the terms of the Plans; the key inquiry is whether, and when, the individual was aware that they were not getting benefits.  *Reches,* 687 Fed. App'x 49, 51 (2d Cir. 2017) ("Because we affirm the district court's dismissal of the matter on the basis of the statute of limitations . . . we need not address the underlying substantive questions of whether the Plaintiff was in fact eligible for benefits under the plan when he was a leased employee or independent contractor."); *accord. Reches v. Morgan Stanley & Co. LLC*, 736 Fed. App'x 306, 307 (2d Cir. 2018) ("[B]ecause the statute of limitations issue was dispositive, [plaintiff's] arguments about the underlying merits, e.g., [eligibility under the plan], were not and need not have been decided.").  Plaintiffs cite no applicable law to the contrary.  Opp. at 19-20.

      Finally, contrary to Plaintiffs' assertion, this standard does not require any discovery. Where, as here, Plaintiffs have themselves made factual allegations confirming both that they were not receiving benefits, and that they were being treated as independent contractors (*see, e.g.,* Compl. at ¶¶ 1, 4, 6-7, 33, 115-117, 132-134 (Plaintiffs received Form 1099s, were responsible for cost of FICA taxes, did not receive overtime, and did not receive employee benefits)), that is the end of the inquiry.  *Downes*, 2004 WL 1277991, at *4 (rejecting plaintiff's argument that "it would be premature to infer that she knew" that she was treated as ineligible for benefits, as it was "implausible" that plaintiff failed to realize she wasn't receiving benefits for ten years; "Surely, each time [Plaintiff] visited a doctor, she did not fail to notice that she did not have health insurance subsidized or provided by [Defendant], and each time she took a leave of absence for illness or vacation, she did not fail to notice that she received no compensation"); *Reches*, 2016 WL 4530460, at *3 (finding discovery unnecessary where allegations of the Complaint established that plaintiff knew of his classification as an independent contractor); *Schulman*, 2013 WL 4860119, at *4 (plaintiff's claim for benefits accrued at least by the time he filed tax returns including income from defendant as business income and identifying himself as self-employed).

Plaintiffs' ERISA claims are time-barred and should be dismissed.

## B.     Plaintiffs Have Failed to Plead Exhaustion

Plaintiffs do not dispute that exhaustion is required before asserting a claim for benefits under an ERISA plan, and they readily concede that they have not pled that they did so. Opp. at 10-11. Instead, they wrongly assert that they did not have to plead that they exhausted available remedies. But that is not the law. The law in the Second Circuit is clear—even after the holding in *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006), and regardless of whether exhaustion is an affirmative defense—that a plaintiff *must* plead exhaustion in the Complaint.[6] Plaintiffs cite no ERISA authority to the contrary. As such, having failed to plead that they exhausted their administrative remedies, Plaintiffs' ERISA claims must be dismissed.

## C.     Plaintiffs Do Not Plausibly Allege Eligibility Under Any Of The Plans

Plaintiffs' devote three pages of their Opposition to explaining why, under the Plan documents, they should not be deemed ineligible for benefits. Opp. at 11-13. But what they continue to fail to do is identify any *factual allegations in the Complaint* that establish a plausible claim to eligibility under the plans.

Plaintiffs do not deny that it is *their* burden to show that they have alleged facts demonstrating their plausible eligibility under the Plans. *See, e.g.*, *Montesano v. Xerox Corp. Ret. Income Guarantee Plan*, 117 F. Supp. 2d 147 (D. Conn. 2000), *aff'd in relevant part*, 256 F.3d 86 (2d Cir. 2001) (to state a claim for benefits under ERISA, a plaintiff must plead facts sufficient to show that, taking the allegations in a complaint as true, they would be eligible to participate under

---

[6] *See Morillo v. 1199 SEIU Benefit & Pension Funds*, 783 F. Supp. 2d 487, 489 n.3 (S.D.N.Y. 2011) ("Although the Second Circuit, in *Paese*, announced that failure to exhaust administrative remedies is an affirmative defense in an ERISA action, rather than a bar to federal jurisdiction . . . courts in this Circuit have continued to grant motions to dismiss ERISA claims under Fed.R.Civ.P. 12(b)(6) where a plaintiff has failed to allege exhaustion of administrative remedies") (collecting cases); *Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009) ("ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion"); *Egan v. Marsh & McLennan Cos., Inc.,* 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) (noting that "*Paese* does not remove the requirement that the plaintiff exhaust his administrative remedies" and dismissing Complaint under 12(b)(6) for failure to allege exhaustion); *see also Reid v. SuperShuttle Int'l, Inc.*, 2010 WL 1049613, at *8 (E.D.N.Y. Mar. 22, 2010) (dismissing ERISA claims on a Rule 12(b)(6) motion for failure to exhaust); *Zupa v. Gen. Elec. Co.*, 2016 WL 3976544, at *3-4 (D. Conn. July 22, 2016) (same).

the terms of the plans). However, as set forth in Defendants' moving papers (Def. Br. at 14-16), Plaintiffs do not plead any *facts* that would indicate that they are eligible to participate under the terms of any of the Plans.[7] Instead, Plaintiffs' Opposition is premised on the (incorrect) assumption that merely being reclassified as a "common-law employee" would be sufficient to establish their eligibility (an assumption that is not even alleged in the Complaint). *See* Opp. at 11-14; *see generally* Compl. The Retirement Plan (which Defendants attached *by way of example only*, as it is *Plaintiffs' burden* to plead eligibility under the Plans), is only one example of how this flawed assumption fails.[8] Specifically, under that Plan an individual had to be on MetLife's payroll and not subject to any of the exclusions in the Plan, and Plaintiffs plead neither. Martin Decl., Ex. A §§ 1.21, 1.20(viii); Ex. B, §§ 1.21, 1.20(viii). Being a common-law employee is *not* enough. Nor do Plaintiffs plead in the Complaint, or argue in Opposition, that they would be eligible for any of the other constituent Plans (for instance, that they were ever eligible for temporary or long-term disability benefits, or that they engaged in international business travel). Plaintiffs are not entitled to rely on an implausible inference that if they are found to be employees they are therefore eligible under each of the Plans—particularly when they have not alleged that being an "employee" is the only eligibility criteria under any Plan.

**D.     Plaintiffs' Breach of Fiduciary Duty Claim Fails As It Is No More Than A Repackaged Claim For Benefits**

Conceding that their "misclassification" and failure to pay benefits allegations cannot support a breach of fiduciary duty claim, Plaintiffs assert that such a claim nevertheless exists

---

[7] Plaintiffs' claim, that their failure to plead factual allegations is excused because they do not have the Plan documents (Opp. at p. 11), is not accurate as a matter of law and emphasizes the importance of ERISA's exhaustion requirement (and Plaintiffs' failure to comply with same). *See, e.g.*, *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 595 (2d Cir. 1993) (ERISA's exhaustion requirement is intended to, *inter alia,* "provide a sufficiently clear record . . . if litigation should ensue"). If Plaintiffs had exhausted their administrative remedies they would not need to rely on purely conclusory allegations and could, if applicable, plead eligibility.

[8] Notably, Plaintiffs distinguish *Scruggs v. ExxonMobil Pension Plan,* 585 F.3d 1356 (10th Cir. 2009), which upheld a plan administrator's determination that the relevant plan only included individuals on a certain payroll, by pointing out that the Court granted summary judgment based on an administrator's interpretation of the plan. Of course, had Plaintiffs exhausted their administrative remedies as required, the Court here would also be reviewing an administrator's determination under an "arbitrary and capricious" standard, not *de novo,* which is one of the primary purposes of ERISA's exhaustion requirement. *Kennedy*, 989 F.2d at 594.

because they have alleged that they were not provided with Plan documents. Opp. at 14-15. However, Plaintiffs do not allege that any individual ever requested the Plans or SPDs prior to filing this lawsuit, or that they availed themselves of (or exhausted) any administrative process through which they might have obtained access to those documents. *See* Compl.[9] On those grounds alone their claim fails. *See, e.g.*, *Xie v. JPMorgan Chase Short-Term Disability Plan,* 2017 WL 2462675 at *5-6 (S.D.N.Y. Jun. 7, 2017) (dismissing breach of fiduciary duty claim where plaintiff did not allege she properly requested the documents).

Moreover, as Defendants have demonstrated (*see* Def. Br. at 15-16), Plaintiffs may not recover benefits under ERISA merely by "repackaging" a benefits claim as a claim for breach of fiduciary duty. *Irvins v. Metro. Museum of Art*, 2016 WL 4508364, at *5 (S.D.N.Y. Aug. 26, 2016) (ERISA "simply does not permit [a breach of fiduciary duty] claim" in which a plaintiff seeks monetary damages). It is undisputed that Plaintiffs seek the payment of benefits. *See* Compl., ¶ 129, 262-264, "Prayer for Relief" §§ F-G. Plaintiffs' Opposition does not add any new damages demand. *See generally* Opp. The allegation that Plaintiffs were not provided with Plan documents cannot change those facts, and, thus, Plaintiffs' breach of fiduciary duty claim remains nothing more than an impermissible "repackaging" of their claim for benefits, and must be dismissed. *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 286-87 (S.D.N.Y. 2004) (dismissing breach of fiduciary duty claim where plaintiff did not seek any relief other than payment of benefits); *Xie*, 2017 WL 2462675 at *5 (same).

### E.    The Dentist Plaintiffs Are Exempt From Overtime Requirements

Plaintiff's narrow and untenable reading of the term "practice of dentistry" as requiring direct patient treatment is based on their incorrect premise that FLSA exemptions are to be

---

[9] Separately, Plaintiffs have not cited a single case holding that a Company has a duty to provide Plan documents to individuals who are not covered by, and who are expressly excluded from, a Plan. And, even assuming MetLife did have a duty to provide Plan documents, such a claim would have accrued well over six years ago and would be time-barred, as explained above. Moreover, Plaintiffs' allegations (outside the scope of the Complaint) about being denied Plan language/documents after this lawsuit was filed are inaccurate (Plaintiffs were provided with certain excerpts of Plan language and documents). Those allegations are also irrelevant for the reasons noted herein.

"narrowly construed." Opp. at 4-5. But the Supreme Court has rejected this very argument. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("We reject this principle as a useful guidepost for interpreting the FLSA."). Instead, recognizing that the FLSA *expressly includes exemptions*, courts *must* give them a "fair" reading. *Id.* A fair reading of the learned professional exemption makes clear that all[10] of the Dentist Plaintiffs are exempt.

Indeed, the Dentist Plaintiffs admit that they engaged in a series of tasks, including "diagnosing or evaluating … diseases, pains, or conditions" (Opp. at 4-5), which required them to apply the extensive schooling, training, years of practice and dental knowledge that only a professional dentist possesses.[11] *See* Def. Br. at 21-22 (Plaintiffs' allegations claim that the Dentist Plaintiffs did essentially everything but physically touch a patient). Understanding that only a licensed dentist, who has completed dental school and treated patients, could perform the tasks that the Dentist Plaintiffs allege they performed, Plaintiffs must claim that the FLSA requires a direct treating relationship in order for a dentist to be practicing dentistry. But neither the FLSA nor its implementing regulations say that, and the words do not mean that. Nor do Plaintiffs cite any case or other source requiring a patient-treating-dentist relationship—much less a requirement that a dentist be "responsible for all treatment decisions" of any patient. Opp. at 7. A *fair* reading of the exemption means that individuals performing complex tasks that only an experienced dentist could perform are performing dentistry.

---

[10] Contrary to Plaintiffs' suggestion (Opp. at 3), Plaintiff Bernard's claim under the Connecticut Minimum Wage Act ("CMWA") also fails as the CMWA learned professional exemption mirrors that of the FLSA, and expressly carves-out individuals engaged in the practice of dentistry. *Compare* 29 U.S.C. § 213(a)(1), *and* 29 C.F.R. §§ 541.300-301, 304(a), *with* CONN. GEN. STAT. § 31-58(f), *and* CONN. AGENCIES REGS. § 31-60-16(a)(5).

[11] The cases on which Plaintiffs rely—none of which are binding, or involved the FLSA or an individual's exemption status—are inapplicable. In *Pfluger v. Sundstrand Corp.*, 405 N.E.2d 12, 16 (Ill. Ct. App. 1980), the plaintiff alleged that the dentists only confirmed whether a mandatory X-ray requirement was satisfied prior to payment—something any lay person could do. Further, in *Sikiyan v. Morris*, 2016 WL 3131022, at *4 (C.D. Cal. May 31, 2016), and *Jakway v. Unum Provident Corp.*, 2002 WL 31996043, *6 (C.D. Cal. May 6, 2002), the issue was whether a sufficient "physician-patient relationship" existed to impose a legal duty on the doctor for purposes of *negligence or "unlicensed practice" claims*. However, the learned professional exemption does not require a patient-treating-dentist relationship to apply, and Defendants do not contend one exists here.

Finding that the learned professional exemption applies to the Dentist Plaintiffs also would not produce "absurd consequences" as Plaintiffs claim. Opp. at 7-9. The FLSA is clear that the overtime rules were not meant to apply to professionals being paid as much as the Plaintiffs.[12] Moreover, to fill in statutory gaps, courts routinely "assess how Congress and other courts and legislatures have used the same language." *Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 2018 WL 4471522, at *3-8 (2d Cir. Sept. 19, 2018). Courts have regularly allowed the "practice of law" to include attorney document reviewers *who have absolutely no contact with clients*. *See Henig v. Quinn Emanuel Urquhart & Sullivan, LLP,* 151 F. Supp. 3d 460, 470-71 (S.D.N.Y. 2015). The absence of a direct attorney-client/dentist-patient relationship has not barred the professional exemption or resulted in the crimes or other statutory problems Plaintiffs portend. *See id.* Plaintiffs' alleged fears are an obvious red herring.[13]

### F. Plaintiffs' "Unjust Enrichment" Claims Should Be Dismissed

While Plaintiffs now claim that they "do not assert a claim under FICA" (Opp. at 23 n.9), they fail to explain why the relief they seek is anything different than a FICA tax refund suit, which is preempted by 26 U.S.C. § 7422(a). Plaintiffs argue that "Defendants extend the statute beyond its meaning," and that "*most* of the decisions cited by Defendants in support of preemption involve claims against a defendant that acted as a tax collector for the IRS." Opp. at 21-22 (emphasis added). But § 7422(a) is intentionally broad and does *not* require defendant-employers to have acted as tax collectors. *See Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 603 (S.D. Tex. 2010). Plaintiffs similarly provide no authority for their assertion that "preemption would waste

---

[12] *See, e.g.*, *Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014) ("'[T]he FLSA is properly considered a shield to protect unwary workers; it is not a sword by which [professionals] at the pinnacle of accomplishment and prestige in [their profession] may obtain a benefit from their employer for which they did not bargain . . . .'" (citation omitted; alternations in *Pippins*)).

[13] Only Plaintiffs' constrained definition of practicing dentistry could cause problems under other statutes. For example, while Plaintiffs absurdly claim that MetLife has an issue because *it* is practicing dentistry as a corporation, it is precisely because MetLife contracts with licensed professional dentists, such as the Dentist Plaintiffs, that MetLife is not *itself* practicing dentistry. Moreover, if as this Court and many others have made clear, "[i]t is not unusual for the same word to be used with different meanings in *the same act*," then certainly a term like practicing dentistry can have one meaning under one statute and a completely different one under *another* statute. *See, e.g.*, *Kane ex re. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 385 n.17 (S.D.N.Y. 2015) (emphasis added) (citation omitted).

resources and raise the possibility of inconsistent determinations." Opp. at 23; s*ee, e.g.*, *Dziennik v. Sealift, Inc.*, 2018 WL 1725623, at \*7 (E.D.N.Y. Mar. 30, 2018) ("it is never [the Court's] job to rewrite a constitutionally valid statutory text under the banner of speculation") (citations omitted).

Plaintiffs' reliance on *Childers v. New York & Presbyterian Hospital*, 36 F. Supp. 3d 292, 303 (S.D.N.Y. 2014) is inapposite: the court in *Childers* allowed the unjust enrichment claim because of alleged *superseding conduct* that "d[id] not arise out of the [employer's] collection of taxes." *Id.* ("The Hospital's alleged liability here stems not from its collection of FICA taxes but from later, independent actions and omissions… ."); *cf. Chalfin v. St. Joseph's Healthcare Sys.*, 629 Fed. App'x 367, 369 (3d Cir. 2015) (distinguishing *Childers* and affirming dismissal of state law claim under § 7422). Plaintiffs do not allege—nor could they—any such conduct or facts because, as the Complaint makes clear, there was no superseding conduct here. But even if Plaintiffs were to allege such untenable facts, subsequent authority shows that *Childers* should not be followed.[14]

Lastly, § 7422(a) preempts the *entire* scope of Plaintiffs' unjust enrichment claims. *See, e.g.*, *Umland*, 542 F.3d at 65. Permitting Plaintiffs to bring claims in a different forum and beyond the prescribed statute of limitations period would interfere with Congress's comprehensive legislative scheme, as well as thwart its attempt to limit how and when tax-related disputes are brought. *See, e.g.*, *id.*; *see also Silvas v. E\*Trade Mort. Corp.*, 514 F.3d 1001, 1007 n.3 (9th Cir. 2008). The cases Plaintiffs cite (*see* Opp. at 24-25), which analyze different federal and state statutory schemes with different goals and objectives, do not alter that result.

For the foregoing reasons, as well as those set forth in Defendant's opening papers, Defendants' Motion to Dismiss should be granted.

---

[14] In a recent offshoot of the *Childers* case, the U.S. Government conceded that the *Childers* plaintiffs' unjust enrichment claims should have been dismissed under § 7422. *See N.Y. & Presbyterian Hosp.*, 881 F.3d 877, 878 (Fed. Cir. Jan. 31, 2018) ("As the Government conceded, the District Court should have interpreted § 7422 so that the Hospital was immunized from the District Court Plaintiffs' Complaint and dismissed their claims.") (internal citations and parentheticals omitted). Plaintiffs' Opposition is tellingly silent as to this subsequent, persuasive authority.

Dated: October 12, 2018  
New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Christopher A. Parlo*_____
Christopher A. Parlo
chris.parlo@morganlewis.com
Melissa C. Rodriguez
melissa.rodriguez@morganlewis.com
Melissa D. Hill
melissa.hill@morganlewis.com

101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendants*

11