**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| CAROL McNEELY, SHILPA VLK, GEORGE K. BERNHARD, and DEBORAH JOYCE, | : |
| | : |
| on behalf of themselves and all others similarly situated, | : |
| | : |
| and | : |
| | : |
| DAVID T. RUDZIEWICZ, FREDERICK DEMAIO, DONNA R. KOBIELSKI, DONNA MOLTA, NADINE JOY, SAMUEL PENTA, and ROLAND HOGG, | : |

Opt-In Plaintiffs,                    :        **1:18-CV-00885-PAC**

-against-                               :        *Electronically Filed*

METROPOLITAN LIFE INSURANCE
COMPANY, METROPOLITAN LIFE          :
RETIREMENT PLAN FOR UNITED STATES
EMPLOYEES, SAVINGS AND INVESTMENT   :
PLAN FOR EMPLOYEES OF METROPOLITAN :
LIFE AND PARTICIPATING AFFILIATES,  :
METLIFE OPTIONS & CHOICES PLAN, and :
WELFARE BENEFITS PLAN FOR EMPLOYEES :
OF METROPOLITAN LIFE AND
PARTICIPATING AFFILIATES,           :

Defendants.           :

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL
CERTIFICATION OF THE SETTLEMENT CLASS AND SETTLEMENT
COLLECTIVE FOR SETTLEMENT PURPOSES ONLY, APPOINTMENT OF
PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS'
<u>PROPOSED NOTICES OF SETTLEMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

       A.    Alleged Factual Background ......................................................................... 2

       B.    Litigation Proceedings ................................................................................. 4

       C.    Settlement Negotiations................................................................................ 6

II.    SUMMARY OF THE SETTLEMENT TERMS ....................................................... 7

       A.    The Settlement Fund..................................................................................... 7

       B.    Eligible Class and Collective Action Members and Types of Claims................ 7

       C.    Releases ........................................................................................................ 8

       D.    Allocation Formula....................................................................................... 9

       E.    Attorneys' Fees and Litigation Costs........................................................... 11

III.   STANDARD OF REVIEW ..................................................................................... 12

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE......... 14

       A.    The Settlement Is Fair, Reasonable, and Adequate ......................................... 14

             1.    Litigation Through Trial Would Be Complex, Costly, and Long
                   (*Grinnell* Factor 1)……………………………………………………14

             2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)........... 16

             3.    Discovery has Advanced Far Enough to Allow the Parties to Resolve the
                   Case Responsibility (*Grinell* Factor 3)…………………………..……16

             4.    Plaintiffs Would Face Substantial RisksIf the Case Proceeded
                   (*Grinnell* Factors 4 and 5)…………………………………………..…17

             5.    Maintaining the Class Through Trial Would Not Be Simple
                   (*Grinnell* Factor 6)…………………………………………………..…..18

             6.    MetLife's Ability to Withstand a Greater Judgment Is Not Determinative
                   (*Grinnell* Factor7)…………………………………………………………19

7.   The Settlement Fund Is Substantial in Light of the Best Possible Recovery and the Risk of Litigation (*Grinnell* Factors 8 and 9)……………..…19

V.   PROVISIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE……………………………………………………...………21

    A.   Rule 23(a)(1): Numerosity ............................................................... 22

    B.   Rule 23(a)(2): Commonality.............................................................. 22

    C.   Rule 23(a)(3): Typicality ................................................................... 23

    D.   Rule 23(a)(4): Adequacy ................................................................... 24

    E.   Rule 23(b)(3): Predominance and Superiority .................................. 25

VI.   CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE ACTION  FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE…………………………25

    A.   Standard of Review ........................................................................... 26

    B.   Dental Consultants Are Similarly Situated....................................... 27

VII.   CONDITIONAL APPOINTMENT OF PLAINTIFFS' LAWYERS AS CLASS COUNSEL FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE……….28

VIII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE……………………………………………………….………29

CONCLUSION............................................................................................. 30

Certificate of Service ................................................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*Ashkenazi v. S. Broward Hosp. Dist.,*
  607 Fed. Appx. 958 (11th Cir. 2015) ................................................................. 17

*Beach v. JP Morgan Chase Bank, N.A.,*
  2019 U.S. Dist. LEXIS 97946 (S.D.N.Y. June 11, 2019) ................................... 24

*Braunstein v. E. Photo Labs, Inc.,*
  600 F.2d 335 (2d Cir. 1975) ............................................................................... 26

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ............................................................................... 14

*Clark v. Ecolab Inc.,*
  Nos. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ....... 12

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ................................................................................. 22

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ................................................................................. 15

*DeLeon v. Wells Fargo Bank, N.A.,*
  No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ........... 16

*Diaz v. E. Locating Servs. Inc.,*
  No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 74333 (S.D.N.Y. July 22, 2010) ........... 20

*Dodona I, LLC v. Goldman, Sachs & Co.,*
  296 F.R.D. 261 (S.D.N.Y. 2014) .................................................................. 24, 25

*Duchene v. Michael L. Cetta, Inc.,*
  244 F.R.D. 202 (S.D.N.Y. 2007) ........................................................................ 22

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................. 19, 20, 21

*Glatt v. Fox Searchlight Pictures, Inc.,*
  811 F.3d 528 (2d Cir. 2015) ............................................................................... 26

*Goldberg v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) ................................................................................. 14

*Grant v. Warner Music Grp.,*
  No. 13 Civ. 4449 (PGG), 2014 U.S. Dist. LEXIS 65664 (S.D.N.Y. May 13, 2014) ...... 27

*Hernandez v. City of New York,*
  No. 16-CV-3445 (RA), 2017 U.S. Dist. LEXIS 102285 (S.D.N.Y. June 29, 2017) ........ 29

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)..................................................................................................... 26

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................. 15, 17, 18, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007).......................... 13

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969)............................................................................. 17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 23

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. Feb. 12, 2010) ......................................................... 19

*In re Penthouse Exec. Club Comp. Litig.*,
  No. 10-1145(NRB), 2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. Oct. 27, 2010) ...................... 27

*In re Traffic Executive Asso.--Eastern Railroads.*,
  627 F.2d 631 (2d Cir. 1980).................................................................................... 13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3rd Cir. 2004) .................................................................................... 16

*Johnson v. MetLife, Inc.*,
  No. SACV 13-128-JLS (RNBx), 2014 U.S. Dist. LEXIS 200722 (C.D. Cal. Nov. 6, 2014) ... 19

*Julian v. MetLife, Inc.*,
  298 F. Supp. 3d 699 (S.D.N.Y. 2018).................................................................... 27

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015)) .......................................................................... 23

*Marshall v. Hyundai Motor Am.*,
  No. 12 Civ. 3072, 2019 U.S. Dist. LEXIS 103764 (S.D.N.Y. June 14, 2019)...................... 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072, (2d Cir. 1995)................................................................................. 12

*Myers v Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)............................................................................ 19, 26

*Northland Ins. Co. v. Corr. Med. Servs.*,
  No. CV-04-347-PHX-FJM, 2005 U.S. Dist. LEXIS 28237 (D. Ariz. Nov. 15, 2005).............. 17

*Salomon v. Adderley Indus.*,
  847 F. Supp. 2d 561 (S.D.N.Y. 2012).................................................................. 27

*Schaefer v. M&T Bank Corp.*,
  122 F. Supp. 3d 189 (S.D.N.Y. 2015)......................................................................... 27

*Silver v. 31 Great Jones Rest.*,
  No. 11 CV 7442 (KMW) (DCF), 2013 U.S. Dist. LEXIS 7821 (S.D.N.Y. Jan. 3, 2013)......... 28

*Trawinski v. KPMG LLP,* No. 11-2978(PAC),
  2012 U.S. Dist. LEXIS 183366 (S.D.N.Y. Dec. 21, 2012) ....................................... 27

*Trinidad v. Breakaway Courier Sys., Inc.*,
  No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)........................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................ 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................................... 22

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ............... 23, 24, 25

*Zivali v. AT&T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011).................................................................... 19

**Statutes**

29 U.S.C. § 1001 .................................................................................................. 2

29 U.S.C. § 201 .............................................................................................. .1, 5, 25

29 U.S.C. § 216(b) ............................................................................................... 26

29 U.S.C. § 255(a) ................................................................................................ 7

820 ILCS 105/12(a) ......................................................................................... 15, 18

**Other Authorities**

William B. Rubenstein*, 4 Newberg on Class Actions (2019 Supp.)*............................................. 13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 21

Fed. R. Civ. P. 23(a)(4).......................................................................................... 24

Fed. R. Civ. P. 23(b)(3)...................................................................................... 22, 25

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 29

Fed. R. Civ. P. 23(e) ................................................................................................................ 13

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ........................................................................................... 28

Fed. R. Civ. P. 23(b)(3) and 23(e) ........................................................................................... 21

Fed. R. Civ. P. 23(g)(1) ........................................................................................................... 28

## INTRODUCTION

Subject to Court approval, Plaintiffs Carol McNeely, Shilpa Vlk, George K. Bernhard, and Deborah Joyce, and Opt-In Plaintiffs David T. Rudziewicz, Frederick Demaio, Donna R. Kobielski, Donna Molta, Nadine Joy, Samuel Penta, and Roland Hogg (collectively, "Plaintiffs") and Defendants Metropolitan Life Insurance Company, MetLife Retirement Plan, MetLife 401(K) Plan, MetLife Options and Choices Plan, and MetLife Welfare Benefits Plan (collectively, "MetLife" or "Defendants"),[1] have settled this class and collective action for $3,390,000 on behalf of approximately 120 individuals.

The proposed settlement satisfies the criteria for preliminary approval under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs request that this Court (1) preliminarily approve the Settlement Agreement, attached as Exhibit A; (2) certify the proposed class and collective for settlement purposes only; (3) appoint Mehri & Skalet, PLLC and Stacey Gray P.C. as Class Counsel; and (4) approve the proposed Notice and Reminder Notice, attached as Exhibits B and C, and direct the dissemination of the Notices to Class Members.  Although MetLife denies Plaintiffs' allegations, the parties have decided that a settlement is in their best interests and MetLife supports preliminary approval of the settlement.

---

[1] The entities were incorrectly named in the Complaint as Metropolitan Life Retirement Plan for United States Employees, Savings and Investment Plan for Employees of Metropolitan Life and Participating Affiliates, MetLife Options & Choices Plan, and Welfare Benefits Plan for Employees of Metropolitan Life and Participating Affiliates.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Alleged Factual Background[2]

MetLife contracts with licensed dentists and dental hygienists (collectively "Dental Consultants") to perform services, including reviewing dental claims submitted by insureds and dental providers.  Declaration of Carol McNeely ("McNeely Decl.") ¶¶ 4–5, 7–10, ECF No. 99-6 at 2–3; Declaration of George K. Bernhard Jr. ("Bernhard Decl.") ¶¶ 4–5, 7–9, ECF No. 99-8 at 2–3; Declaration of Frederick DeMaio ("DeMaio Decl.") ¶¶ 4–5, 7–9, ECF No. 99-9 at 2–3; Declaration of Harry Tuber ("Tuber Decl.") ¶¶ 4–5, 7–10, ECF No. 99-15 at 2–3.  MetLife treated all Dental Consultants in MetLife's five panels—located in Illinois, New Jersey, New York, Rhode Island, and Texas—as independent contractors.  McNeely Decl. ¶ 66, ECF No. 99-6 at 16–17, Bernhard Decl. ¶ 66, ECF No. 99-8 at 15; DeMaio Decl. ¶ 65, ECF No. 99-9 at 16; Tuber Decl. ¶ 64, ECF No. 99-15 at 15; Donna Kobielski Form 1099-MISC (2016), ECF No. 99-21 at 1.  Because MetLife classified the Dental Consultants as independent contractors, MetLife did not treat them as participants in any of its employee benefit plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA").  Letter from Danielle Hodorowski, Assistant Vice President of Global Benefits at MetLife, to Plaintiffs' Counsel (Jan. 4, 2019) ("Hodorowski Letter"), ECF No. 99-22 at 1.  MetLife also did not pay them 50% more than their normal hourly rates for hours when they claimed to have worked more than forty hours in a week, paid them less frequently than the laws in several states require for certain employees, and did not pay the employer share of employment taxes.  McNeely Decl. ¶¶ 58–60, ECF No. 99-6 at 14–15; Bernhard Decl. ¶¶ 57–59, ECF No. 99-8 at 13–14; DeMaio Decl. ¶¶ 56–58, ECF

---

[2] Plaintiffs support the factual propositions in this Memorandum by the accompanying declarations of Michael Lieder and Stacey Gray, *see* Exhibits G and H, and by the declarations and evidence submitted with Plaintiffs' Memorandum in Support of Motion for Conditional Certification of FLSA Collective Action, *see* ECF No. 99-1 (July 2, 2019).  The latter documents are cited with a short description of the document and the docket number and page of the prior filing at which they appear.  In that memorandum, Plaintiffs cited to declarations from each Plaintiff to support many factual propositions, whereas in this filing Plaintiffs generally cite to only one declaration from a Plaintiff in each State.

No. 99-9 at 14–15; Tuber Decl. ¶¶ 55–57, ECF No. 99-15 at 13–14.  A principal issue underlying the claims of all Plaintiffs and Dental Consultants is whether that independent contractor classification was correct.

Until November 1, 2017, Dental Consultants signed a new contract (the "Original Contract") each year during the relevant period, but the terms of the Contracts remained substantially the same.  McNeely Decl. ¶ 8, ECF No. 99-6 at 3, Bernhard Decl. ¶ 8, ECF No. 99-8 at 3; DeMaio Decl. ¶ 8, ECF No. 99-9 at 3; Tuber Decl. ¶ 8, ECF No. 99-15 at 3.  The Original Contract did not expressly address whether Dental Consultants were employees or independent contractors, as reflected in a sample pre-November 2017 contract.   Original Contract, ECF No. 99-18 at 2–6.  On and after November 1, 2017, all Dental Consultants who opted to continue to perform services as independent contractors entered into a new form of contract that stated that they were independent contractors and that they did not participate in MetLife's employee benefit plans (the "Revised Contract").  ECF No. 99-19 at 2–9.

Dental Consultants submitted invoices each month that listed the number of hours that they claimed to have worked each day during that month.  McNeely Decl. ¶ 58, ECF No. 99-6 at 14–15; Bernhard Decl. ¶ 57, ECF No. 99-8 at 13–14; DeMaio Decl. ¶ 56, ECF No. 99-9 at 14; Tuber Decl. ¶ 55, ECF No. 99-15 at 13; Debra Joyce Invoice (Jan. 2016), ECF No. 99-23 at 2; Shilpa Vlk Invoice (Mar. 2016), ECF No. 99-24 at 2.  MetLife reviewed and paid the approved invoices by multiplying the number of invoiced hours by the Dental Consultants' contractual hourly rate.  McNeely Decl. ¶¶ 60–61, ECF No. 99-6 at 15; Bernhard Decl. ¶¶ 59–60, ECF No. 99-8 at 14; DeMaio Decl. ¶¶ 58–59, ECF No. 99-9 at 15; Tuber Decl. ¶¶ 57–58, ECF No. 99-15 at 13–14.  Plaintiffs allege that MetLife provided Dental Consultants with equipment, technical support, and supplies that they used to perform their duties.  McNeely Decl. ¶¶ 28–31, ECF No. 99-6 at 8–9; Bernhard Decl. ¶¶ 27–30, ECF No. 99-8 at 7–8; DeMaio Decl. ¶¶ 26–29, ECF No.

99-9 at 7–8; Tuber Decl. ¶¶ 27–30, ECF No. 99-15 at 7–8.

Plaintiffs assert that Dental Consultants did not diagnose the patients' dental needs for the purpose of providing services to them and did not assist or advise the treating dentist. McNeely Decl. ¶ 16, ECF No. 99-6 at 5; Bernhard Decl. ¶ 15, ECF No. 99-8 at 5; DeMaio Decl. ¶ 15, ECF No. 99-9 at 5; Tuber Decl. ¶ 16, ECF No. 99-15 at 5. Plaintiffs also assert that MetLife oversaw Dental Consultants' claims review work in various ways, such as by installing software that they used in performing services under their Contracts on computers that MetLife issued to them and by issuing "Dental Consultant Guidelines" or "Manuals" that contained codes, forms, and processes that Dental Consultants were allegedly required to apply in evaluating claims. McNeely Decl. ¶¶ 32–34, ECF No. 99-6 at 9–10; Bernhard Decl. ¶¶ 31–33, ECF No. 99-8 at 8–9; DeMaio Decl. ¶¶ 30–32, ECF No. 99-9 at 8–9; Tuber Decl. ¶¶ 31–33, ECF No. 99-15 at 8–9. Further, MetLife allegedly monitored Dental Consultants' productivity and compliance with company policies, gave quality assurance quizzes to Dental Consultants who were dentists to take using sample claims, and audited their performance on actual claims. McNeely Decl. ¶¶ 40–46, ECF No. 99-6 at 11–13; Bernhard Decl. ¶¶ 39–45, ECF No. 99-8 at 10–11; DeMaio Decl. ¶¶ 38–44, ECF No. 99-9 at 10–12; Tuber Decl. ¶¶ 39–43, ECF No. 99-15 at 10–11. MetLife has disagreed with, and continues to disagree with, Plaintiffs' contentions and maintains that it has complied with the law.

## B. Litigation Proceedings

On February 1, 2018, Plaintiffs filed a class and collective action complaint on behalf of all Dental Consultants performing services for MetLife. Compl., ECF No. 1 (Feb. 1, 2018). Plaintiffs thereafter filed two amended complaints. Am. Compl., ECF No. 31 (Mar. 30, 2018); Second Amended Complaint ("SAC"), ECF No. 49 (May 10, 2018). The Second Amended Complaint alleged that MetLife misclassified and compensated Dental Consultants as

independent contractors rather than employees, SAC ¶¶ 1–3, and claimed the misclassification

gave rise to claims that MetLife: (1) violated ERISA by failing to offer Dental Consultants

employee benefits such as employer-paid insurance plans and a defined benefit pension plan, *id.*

¶ 6; (2) violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and state labor

laws (except in Texas) by failing to pay Dental Consultants overtime pay when they worked

more than forty hours in a week, *id. ¶* 4; (3) violated state laws by paying Dental Consultants

less frequently than required by those laws, *id.* ¶ 5; and (4) violated state unjust enrichment

common law by failing to pay the employer share of employment taxes, *id. ¶* 7.

MetLife filed a motion to dismiss.  ECF No. 53 (Aug. 24, 2018).  The Court denied

MetLife's motion to dismiss the overtime claims, granted MetLife's motion to dismiss the unjust

enrichment claims, and granted the parties' request to stay the ERISA claims.  *See* Opinion &

Order, ECF No. 80 (Mar. 26, 2019); Order, ECF No. 69 (Nov. 15, 2018).

The parties exchanged initial disclosures and engaged in discovery on the claims that

were not subject to the motion to dismiss.  Ex. G, Declaration of Michael Lieder, Esq. ("Lieder

Decl.") ¶ 2.  In total, the parties produced over 11,000 pages of documents.  *Id.*  Each side

prepared many pages of written initial disclosures and interrogatory responses.  *Id.*  Finally, as

part of the mediation process, MetLife provided Plaintiffs with a spreadsheet showing the

number of hours of work for which each Dental Consultant invoiced MetLife each day for

approximately 11 years and the Consultants' hourly rates of pay (except for seven Dental

Consultants for whom MetLife could not locate some months of invoices).  *Id.* ¶ 4.  Other

discovery requests were pending when the parties agreed to the Settlement.  *Id.* ¶ 2.

Based on the information that they had gathered, Plaintiffs on July 2, 2019 filed a motion

for conditional certification of an FLSA collective action.  Pls' Mot. for Conditional Certification

of FLSA Collective Action, Production of Names and Contact Information, and Approval of

Sending Notice, ECF No. 99 (July 2, 2019).  That motion was pending when the Court extended the briefing schedule because of the ongoing settlement negotiations.  *See, e.g.*, Order, ECF No. 105 (Aug. 19, 2019).

### C.    Settlement Negotiations

In March 2019, the parties agreed to engage in settlement discussions.  Ex. G (Lieder Decl.) ¶ 3.  MetLife gave Class Counsel on June 6, 2019, a spreadsheet of all hours worked and hourly wage rates received by Dental Consultants between January 2007 and early November 2017.  *Id.* ¶ 4.  MetLife supplemented this information with underlying invoices for a sample of Dental Consultants on June 21, 2019.  *Id.*  On July 11, 2019, Plaintiffs sent MetLife a letter in which they summarized MetLife's exposure.  *Id.* ¶ 6.  The letter also presented Plaintiffs' initial settlement demand on behalf of the Class.  These calculations were prepared with the help of a labor economist engaged by Class Counsel.  *Id.* ¶¶ 5, 6.

After MetLife's counsel asked questions of Class Counsel and their expert during a telephone conference on July 16, 2019, the parties' counsel met in person to discuss settlement at MetLife's counsel's office on July 24, 2019 and attended a mediation session in Atlanta, Georgia, on July 31, 2019, with Hunter Hughes, Esq., a well-known and experienced mediator in complex labor and employment litigation.  *Id.* ¶¶ 7–8.  The parties reached agreement at the end of the day on the settlement amount and several other key terms.  *Id.* ¶ 9.  They executed a Memorandum of Understanding by August 30, and the full Settlement Agreement about a month later.  *Id.*; Ex. H (Gray Decl.) ¶¶ 14-15.

The settlement negotiations were conducted on an arms'-length basis.  Ex. G (Lieder Decl.) ¶ 9; Ex. H (Gray Decl.) ¶¶ 14-15.  Indeed, the parties were dangerously close to reaching impasse during the mediation on July 31 and were able to reach settlement only with the help of Mr. Hughes.  *Id.*

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

The Settlement Agreement creates a settlement fund of $3,390,000 to be administered by a claims administrator.  Ex. A (Settlement Agreement) §§ 1.24, 2.1, 3.1(A).  The fund will cover the awards of the about 120 class and collective action members, Plaintiffs' service awards, and the fees and costs of the attorneys and the claims administrator.  *Id.* §§ 1.16, 3.1(D).

### B.    Eligible Class and Collective Action Members and Types of Claims

The Settlement Class is composed of:

> All persons, including Service Award Plaintiffs and all other individuals, who (a) contracted or otherwise arranged with Defendant Metropolitan Life Insurance Company or any related or affiliated entity to perform services as a Dental Consultant (which shall include dentists and hygienists) (b) in Illinois at any time between February 1, 2008 and July 31, 2019 or (c) anywhere else in the United States at any time between February 1, 2012 and July 31, 2019.

*Id.* § 1.4.

Instead of proceeding in a class action, "similarly situated" persons alleging violations of the FLSA may proceed collectively.  In this case, collective action members are:

> all persons who contracted or otherwise arranged with Defendant Metropolitan Life Insurance Company or any related or affiliated entity to perform services as a Dental Consultant (which shall include dentists and hygienists) between the dates set forth below and July 31, 2019.  The initial dates of their FLSA claims are:

| Dental Consultants | Date |
|---|---|
| Carol McNeely | 2/1/15 |
| George Bernhard, Deborah Joyce, David Rudziewicz, Scott Vlk, Shilpa Vlk | 4/1/15 |
| Harry Tuber, Frederick DeMaio, Nadine Joy, Donna Kobielski, Donna Molta | 5/1/15 |
| Samuel Penta | 12/1/15 |
| All other Dental Consultants | 1/1/16 |

*Id.* § 1.6.[3]

---

[3]       The initial dates for the first 11 Plaintiffs in the table above are three years prior to their joining the case, the maximum limitations period under the FLSA.  29 U.S.C. § 255(a).  For purposes of this Settlement only, Dental

All class members who do not opt out will receive a check covering their claims under ERISA, their alleged unpaid overtime claims under the FLSA and state laws unless they did not work more than 40 hours in any week or worked in Texas (which does not provide a private right of action for employees working overtime) or Connecticut or New Jersey (which provide rights of action for employees working overtime but that relief is less generous than under the FLSA), and their claims that MetLife violated state laws specifying the frequency of payment of wages to employees in all states but Texas.  Ex. G (Lieder Decl.) ¶ 13.  Because the Court dismissed the unjust enrichment claims, none of the Dental Consultants will receive compensation for such claims under the Settlement Agreement.  *Id.*

## C.  Releases

All Class Members who do not opt out shall release all claims other than any FLSA claims that were asserted or could have been asserted in this case arising out of the claims and allegations set forth in the Plaintiffs' complaints.  Ex. A (Settlement Agreement) § 3.6(A).  The ERISA claims shall be released from the date the Class Member began performing services for MetLife through the Preliminary Approval date. Other non-FLSA claims of Class Members who worked outside Illinois shall be released for the period beginning on February 1, 2012 and running through the Preliminary Approval date, while non-FLSA claims of Illinois Class Members will be released going back to February 1, 2008.  *Id.* §§ 1.7, 3.6(A).

Class Members who negotiate a settlement check also shall release their FLSA claims. *Id.* § 3.6(B).  These claims will be released for the period from the first date of the applicable period set forth in subsection B above through the Preliminary Approval date.  *Id.*.

In addition, all Plaintiffs and any individuals who receive any service award will sign a general release of all claims against Defendants.  The release encompasses claims related to the

---

Consultants who had not joined the case by May 2018 also benefit from tolling of up to seven months.  Ex. E (Lieder Decl., ¶ 14.)  All initial dates have been rounded to the nearest first of the month for settlement purposes.

services they performed under their Contracts, their relationship with MetLife and the end of that relationship if applicable, and their compensation from MetLife. *Id.* § 3.6(C).

With limited exceptions set forth in the Settlement Agreement, all of the above claims will be released against Defendants, their present and former parent companies, subsidiaries, related or affiliated companies, and each of their shareholders, officers, directors, employees, members, managers, co-joint venturers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them ("Releasees"). *Id.* § 3.6(A)-(D).

## D.    Allocation Formula

For purposes of allocating the Settlement Fund among Plaintiffs and Class Members the Settlement distinguishes between persons who worked as dental consultants for MetLife before November 1, 2017 (regardless whether they also worked for MetLife after that date) ("Original Contract Consultants") and persons who worked for MetLife only after October 31, 2017 ("Revised Contract Consultants"). The formula is more generous to Original Contract Consultants because the Revised Contract gives MetLife additional defenses to contentions that Plaintiffs and Class Members were common law employees. Ex. G (Lieder Decl.), ¶ 12.

The awards before any adjustments described below ("Base Awards") to Original Contract Consultants will be determined in two parts. The first part is attributable to work performed before November 1, 2017, and will be determined pursuant to four components:

1.    $70 times the number of months worked as a Dental Consultant during the limitations period (February 1, 2012—October 31, 2017);

2.    115% of the amount of unpaid overtime[4] and liquidated damages during the period from three years prior to their joinder of the case (or from August 1, 2016 for Class Members)) until October  31, 2017 to which Plaintiffs and

---

[4]    This amount has been extrapolated for dental consultants for whom MetLife has been unable to find all invoices.

9

Class Members may have been entitled if they were non-exempt employees (the "FLSA Component");

3.    32.5% of any amount of additional unpaid overtime, liquidated damages, and/or interest for services performed through October 31, 2017 to which Plaintiffs or Class Members may have been entitled if they were non-exempt employees under the laws of the states in which they worked; and

4.    32.5% of any amount of interest or other amounts to which Plaintiffs and Class Members would have been entitled if they were wage-earning employees for delays in payments through October 31, 2017 under the laws of the state in which they provided services.

*See* Ex. E (Allocation Formula). $170,000 of the Settlement Fund is attributable to claims of Original Contract Consultants for the period after October 2017; that money will be distributed in proportion to their awards for the earlier period. Ex. G (Lieder Decl., ¶ 12); Ex. E (Allocation Formula).

Base Awards for Revised Contract Consultants are determined using the first three of these components, except that they are reduced by about __%. Ex. G (Lieder Decl., ¶ 12); Ex. E (Allocation Formula).

Except for anyone who opts out, no Class Member will receive less than $1,000, even if the sum of the components applicable to them is less than $1,000. Ex. A (Settlement Agreement) § 3.4(B); Ex. E (Allocation Formula).

In addition, Plaintiffs intend to file a motion under which they and two Class Members who formerly were Plaintiffs would receive service awards ranging in amount from $5,000 to $18,000, depending on when each person joined the litigation. *Id.* § 3.3. MetLife reserves the right to object to this motion. *Id.*

The Base Awards allocated to any Class Members or Plaintiffs who do not opt out but fail to negotiate a settlement check by the prescribed deadline will be divided between the settlement fund and MetLife. *Id.* § 3.4(G). All amounts allocated to FLSA claims will be returned to MetLife by the claims administrator as a credit against any potential FLSA claim that

any person who does not negotiate a settlement check may subsequently file. *Id.* If the amount allocated to claims other than FLSA claims is $5,000 or more, the claims administrator will redistribute that amount, less any claims administrator fees and costs associated with the redistribution, among the Class Members in proportion to their Base Awards, but to the extent that the redistributed amounts bring the payments to Class Members above 120% of their Base Awards, the excess will be returned to MetLife as a credit against potential claims that any person who does not negotiate a settlement check may subsequently file. *Id.* § 3.4(G)(2). However, if the amount allocated to all claims other than FLSA claims in all non-negotiated checks, together with any unused monies held by the claims administrator to finish any settlement administration duties, is less than $5,000, the amount will become a *cy pres* award to be distributed to a 501(c)(3) organization that protects the rights of workers. *Id.* § 3.4(G)(1).

In addition to non-negotiated checks as described above, Class Members may receive more than their Base Awards under two additional circumstances. First, any interest earned by the Settlement Fund and, second, any amounts sought for attorneys' fees and costs or for Service Awards that are not approved by the Court will be distributed to Class Members in proportion to their original allocated amounts. *Id.* § 3.4(B)(1), (2).

### E.   Attorneys' Fees and Litigation Costs

Class Counsel will move for an award of attorneys' fees and expenses no later than 20 days after the mailing of notice to Plaintiffs and class members, which will be at least 25 days before the deadline for them to opt out, object or otherwise comment. *Id.* § 3.2(A). The filing will be posted promptly on a website dedicated to the Settlement so that class members may review it in time to decide whether to opt out, object, or otherwise comment. Under the Settlement Agreement, MetLife will not oppose any request that does not exceed $1,260,000. *Id.*

11

To date, Class Counsel has not received any compensation from Plaintiffs or Class Members for their work on this case or any reimbursement for expenses they have incurred.  Ex. G (Lieder Decl.) ¶ 17; Ex. F (Gray Decl.) ¶ 16.  They have not yet completed their exercise of billing judgment to determine their lodestar fees and their reasonable expenses in the case.  Ex. G (Lieder Decl.) ¶ 18; Ex. F (Gray Decl.) ¶ 16.  Class Counsel anticipates, however, that expenses will be approximately $50,000.  Ex. G (Lieder Decl.) ¶ 18.   If expenses are as estimated and if Class Counsel seek the maximum, then they would seek fees of about $1,210,000.   A fee award of $1,210,000 would be about 35.7% of the $3,390,000 settlement fund and would be virtually equal to the 35% of any award to which the Plaintiffs agreed in their retainer agreements.  Ex. G (Lieder Decl.) ¶ 17.  Class Counsel anticipates that their lodestar fees to date, and certainly their lodestar fees by the time of final approval, will substantially exceed $1,210,000.  *Id.* ¶ 18; Ex. F (Gray Decl.) ¶ 16.

In addition, the Settlement Agreement contemplates that the fees and expenses of the claims administrator will be paid out of the Settlement Fund.  Plaintiffs anticipate that those fees and expenses will not exceed $15,000.  Ex. G (Lieder Decl.) ¶ 20.  As a result, Plaintiffs anticipate that the total fees and expenses will not exceed $1,275,000, leaving about $2,115,000 for distribution to Plaintiffs and Class Members.

## III.     STANDARD OF REVIEW

The trial court has discretion to approve a proposed class action settlement.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1995).  There is a "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005).  [C]ourts should defer "to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark v. Ecolab Inc*.,

12

Nos. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009) (Crotty, J.) (internal quotation marks and citations omitted).  Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global resolution, ensuring that all class members are notified of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See id.*  Courts may certify a class for settlement purposes only.  Fed. R. Civ. P. 23(e).

Preliminary approval is the first step in the settlement process.  It allows notice to issue and for Class Members to object to or opt out of the settlement.  After the notice period, the Court can evaluate the settlement with the benefit of Class Members' input.  The Court should preliminary approve a proposed settlement if "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e).  Relatively little case law interprets this standard, which Congress adopted in late 2018.  4 *Newberg on Class Actions* § 13.13 (2019 Supp.).  But the similarity between "likely to be able" and the prior standard in this Circuit – that the Court find "'probable cause' to submit the [settlement] to class members and hold a fullscale hearing as to its fairness," *In re Traffic Exec. Ass'n-E R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980) (citation omitted) – suggests that the standard is unchanged.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) (noting that if the settlement was achieved through experienced counsels' arm's-length negotiations, courts "should be hesitant to substitute [their] judgment for that of the parties").

13

With this motion, Plaintiffs request that the Court take the first step by: granting preliminary approval of the Settlement Agreement; conditionally certifying the settlement class and collective; conditionally appointing Cyrus Mehri, Michael Lieder, and Lauren Nussbaum of Mehri & Skalet, PLLC and Stacey Gray of Stacey Gray PC as Class Counsel; and approving Plaintiffs' proposed notices and notice plan.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The Settlement Is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds, Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  Seven of the nine *Grinnell* factors weigh in favor of approval of the Settlement Agreement, the eighth cannot yet be assessed, and the final factor has little importance.  This analysis strongly favors final approval, and easily meets the lower standard associated with preliminary approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement before completing all discovery and fully litigating motions for class certification and for summary judgment, Plaintiffs seek to avoid significant

14

expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 120 Class Members and claims under ERISA, the FLSA, and the labor laws of seven different states.  *See generally* SAC.[5]

Litigation would cause additional expense and perhaps years of delay.  Extensive discovery, including depositions and production of ESI, would be required.  Ex. G (Lieder Decl.) ¶ 16.  Plaintiffs probably would need to engage an expert to calculate damages.  *Id.*

Legal wrangling would magnify the expense and delay in the absence of a settlement. MetLife almost certainly would renew its motion to dismiss the ERISA claims and, if the motion was not granted in full, move for summary judgment on that claim once discovery was completed.  The parties would need to complete briefing on Plaintiffs' motion for conditional certification under the FLSA, and once discovery was completed, MetLife might move to decertify.  Plaintiffs would need to file their motion for class certification under Rule 23.  The parties likely would have filed cross-motions for summary judgment on MetLife's defense that the Dental Consultants were exempt under the professional or other exemptions.  There would have been several difficult damages issues, including whether an Illinois statute adopted in 2019 that substantially increased the remedies for overtime violations in that state applied retroactively.  *See* 820 ILCS 105/12(a).  If the case proceeded to trial, a lengthy, fact-intensive trial would be necessary to determine Plaintiffs' and class members' employment status.  Any judgment would likely be appealed, further extending the litigation.

---

[5]      The Second Amended Complaint asserts claims under the laws of Connecticut, Illinois, New Jersey, New York, and Rhode Island.  Plaintiffs subsequently learned that two Dental Consultants assigned to the Rhode Island panel worked out of their homes in Massachusetts and Maine.  Ex. E (Lieder Decl.) ¶ 10.

The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

The Court cannot analyze this factor until after notice is issued and class members have the opportunity to opt out or object.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require hundreds of additional hours of discovery for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537; *see DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *9 (S.D.N.Y. May 7, 2015) ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." (internal citation and quotation marks omitted)).

The status of discovery here meets this standard.  Class Counsel thoroughly investigated the merits of Plaintiffs' claims and defenses.  Ex. G (Lieder Decl.) ¶ 10.  They started the discovery process from a position of knowledge because the 13 Plaintiffs and former Plaintiffs constitute over 10% of the Dental Consultants, and, as the Court held in the context of an earlier discovery dispute, 10% was a sufficient sample that individualized information for other Dental Consultants was not needed.  Tr. 2-20-19 Hrg., at 9, ECF No. 78 (filed 3-22-19).  Plaintiffs worked in four of the five panels, with which about 96% of the Dental Consultants were associated.  Plaintiffs supplemented this knowledge through discovery.  The parties have already exchanged about 10,000 pages of documents, in addition to the wage and hour data and underlying invoices that MetLife provided to Plaintiffs' Counsel as part of the mediation process.

16

Ex. G (Lieder Decl.) ¶¶ 2, 4.  The thoroughness of both the formal and informal discovery performed here favors preliminary approval.

### 4. Plaintiffs Would Face Substantial Risks If the Case Proceeded (*Grinnell* Factors 4 and 5)

A settlement's purpose "is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  The court must "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.  A multi-factor test would determine whether Plaintiffs were employees or independent contractors. Plaintiffs are unaware of any decisions applying that test to medical professionals performing the services that Dental Consultants performed for MetLife.  Accordingly, application of the test to the facts of this case would be uncertain. *Compare, e.g., Ashkenazi v. S. Broward Hosp. Dist.,* 607 Fed. Appx. 958, 962-65 (11th Cir. 2015) (holding after analysis of facts and circumstances that doctor was an independent contractor instead of an employee) *with, e.g., Northland Ins. Co. v. Corr. Med. Servs*., No. CV-04-347-PHX-FJM, 2005 U.S. Dist. LEXIS 28237at *5-8 (D. Ariz. Nov. 15, 2005) (holding after analysis of facts and circumstances that doctors were employees instead of independent contractors).  Even if Plaintiffs established that they were common law employees, MetLife would have substantial defenses on the merits, particularly as to the ERISA claims.  MetLife made three arguments in their motion to dismiss, each of which posed substantial risks:  Plaintiffs had not exhausted their administrative remedies, the statute of limitations barred Plaintiffs' claims, and Plaintiffs were not covered by the language of the employee benefit plans even if they were common law employees.  Defs.' Memo. of Law in Support of Mot. for Partial Dismissal, ECF No. 54 (Aug. 24, 2018).  Plaintiffs would have to defeat each argument to survive the motion to dismiss the ERISA claims.

Plaintiffs also would face substantial uncertainty concerning the amount of damages, especially in Illinois, where about 2/3 of the Dental Consultants have performed services for MetLife.  Ex. G (Lieder Decl.) ¶ 10.  Until 2019 Illinois law provided only for interest, not liquidated damages, in addition to unpaid overtime.  For most Class Members the FLSA's liquidated damages remedy would have been more generous and hence there would have been no recovery beyond the FLSA for the overtime claims.  But in 2019, Illinois amended its wage and hour laws to provide substantially more generous remedies than under the FLSA. *See* 820 ILCS 105/12(a).  If the law applies retroactively, any Illinois Class Members who worked overtime since February 1, 2015 could recover more than under the FLSA.  Under the Settlement, Illinois Class Members who worked overtime since February 2015 receive awards over and above their FLSA recovery, albeit less than they might recover if the litigation continued and they prevailed on class, liability, and damages issues, to reflect the possibility that the law might apply retroactively. Ex. E (Allocation Formula).

Class Counsel understand that the resolution of class, collective, liability and damages issues, the outcome of motion practice and the trial, and the appeals process are inherently uncertain in terms of outcome and duration, particularly given the number of different state law claims asserted based on where different Dental Consultants actually worked.  *Id.* ¶¶ 10, 11, 13. The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of preliminary approval.

### 5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified a Rule 23 class or a FLSA collective action.  In opposing certification, MetLife would likely argue that differences among various MetLife panels and other individualized questions preclude class and collective action certification.  Although

18

Plaintiffs disagree with these arguments, other employers have prevailed on arguments like these. *See, e.g.*, *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 459 (S.D.N.Y. 2011) (granting motion to decertify collective action because "the record show[ed] an extremely wide variety of factual and employment settings among the individual plaintiffs, managers, and retail stores"). Moreover, in the absence of a settlement class, certification of the proposed state law class actions faced substantial numerosity concerns except possibly in Illinois. Risk, expense, and delay permeate such processes. Because settlement eliminates this risk, expense, and delay, this factor favors preliminary approval.

### 6. MetLife's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7)

MetLife undoubtedly could withstand a greater judgment. However, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Courts regularly have approved class settlements of cases against large, financially secure defendants, including MetLife. *See, e.g., Johnson v. MetLife, Inc.,* No. SACV 13-128-JLS (RNBx), 2014 U.S. Dist. LEXIS 200722 (C.D. Cal. Nov. 6, 2014) (preliminary approval); *In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297 (E.D.N.Y. 2010) (final approval).

### 7. The Settlement Fund Is Substantial in Light of the Best Possible Recovery and the Risk of Litigation (*Grinnell* Factors 8 and 9)

MetLife has agreed to settle this case for a substantial amount, $3,390,000. Class Counsel estimates that, except for anyone who opts out, Dental Consultants will recover amounts for their overtime claims more than sufficient to encompass ***every penny of allegedly unpaid overtime through the end of their Original Contracts***, and even most of their allegedly unpaid

overtime during the period that the Revised Contract has been in effect.  They also will be paid

about 1/3 of their potential recovery on their state law overtime and delay-in-payment claims.

Ex. G (Lieder Decl.) ¶ 11.  Plaintiffs and Class Members will receive only a small percentage of

their maximum potential recovery on their ERISA claims, but that is reasonable because of the

substantial defenses that MetLife and its employee benefit plans have to those claims.  *Id.*  And

unlike settlements involving a claims made process, all or virtually all of the amount designated

for Class Members will be distributed:  each Class Member who does not opt out will receive a

check along with two reminder notices, and it is very unlikely that any of them, and certainly not

more than a small percentage, will fail to negotiate that check.

 To recover more at trial, Plaintiffs would have to attain class and collective certification,

overcome motions to dismiss the ERISA claims and decertify any class or collective, prevail on

anticipated motions for summary judgment, succeed on all claims at trial including on

entitlement to liquidated damages and a three-year limitations period on the FLSA claims, and

survive an appeal.

 The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness

with respect to a settlement—a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'"  *Id.* (internal citation omitted).  The Settlement here easily falls within that range

of reasonableness both in terms of total amount and percentage of potential recovery.  Moreover,

"[t]he assistance of an experienced mediator, Hunter Hughes . . . , reinforces that the Settlement

Agreement is non-collusive."  *Diaz v. E. Locating Servs. Inc.*, No. 10 Civ. 4082, 2010 U.S. Dist.

LEXIS 74333, at *3 (S.D.N.Y. July 22, 2010).

In summary, the *Grinnell* factors overwhelmingly weigh in favor of issuing preliminary approval of the settlement.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (citation omitted), the Court should grant preliminary approval.

## V.   PROVISIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

For settlement purposes, Plaintiffs seek to certify the Class, as defined in Section II.B *supra*, under Federal Rule of Civil Procedure 23(b)(3) and 23(e) for purposes of effectuating the settlement.  Again, Plaintiffs request that the Court certify a class of dental consultants who performed services for MetLife "(a) in Illinois at any time between February 1, 2008 and July 31, 2019 or (b) anywhere else in the United States at any time between February 1, 2012 and July 31, 2019."  Ex. A (Settlement Agreement) § 1.4.  As discussed in further detail below, the Class meets all the requirements for class certification for settlement purposes, and MetLife does not oppose provisional certification for settlement purposes only.  *Id.* § 2.3(A).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The settlement class meets each of these requirements.

### A.      Rule 23(a)(1): Numerosity

"[N]umerosity is presumed at a level of 40 members."  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  The settlement class easily satisfies this requirement because there are approximately 120 members, about 90% of whom are not located in this jurisdiction.  Ex. G (Lieder Decl. ¶ 10); see Duchene v. Michael L. Cetta, Inc., 244 F.R.D. 202, 203 (S.D.N.Y. 2007) (Crotty, J.) (holding that proposed class with "more than 180 members" satisfied numerosity partly because "a number of the proposed class members now live outside the New York metropolitan area").

### B.      Rule 23(a)(2): Commonality

Commonality requires that the claims in a case raise questions of law or fact common to the class but does not require that every issue of law or fact be identical with respect to each class member.  Instead, "[e]ven a single [common] question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal citation and quotation marks omitted).  The commonality requirement thus is satisfied where there is at least one substantial issue which, if resolved, affects all or a significant number of class members.

This case involves an overarching common issue: whether MetLife misclassified Dental Consultants as independent contractors rather than as employees for purposes of ERISA and the state labor laws in the states where Dental Consultants work.  Other common issues include, but are not limited to: (1) whether the Dental Consultants were eligible as common law employees to participate in MetLife's benefit plans; (2) whether the dentist Dental Consultants acted as dentists in reviewing claims for MetLife; (3) whether MetLife acted willfully or in reckless disregard of the state labor statutes in allegedly misclassifying Dental Consultants as independent

22

contractors.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, at \*8–9 (S.D.N.Y. Oct. 2, 2013) (commonality satisfied because "whether Defendants misclassified them as exempt employees [and] failed to pay them overtime wages in violation of state wage and hour laws" were common issues of fact and law);  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142–43 (S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions."). Hence, the commonality requirement is satisfied here.

### C.      Rule 23(a)(3): Typicality

"Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marshall v. Hyundai Motor Am.*, No. 12 Civ. 3072, 2019 U.S. Dist. LEXIS 103764, at \*36 (S.D.N.Y. June 14, 2019) (quoting *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 378–79 (S.D.N.Y. 2015)).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at \*15 (S.D.N.Y. Jan. 12, 2007).

The Plaintiffs' claims arise from the same factual and legal circumstances as do the class members' claims.  MetLife classified the Plaintiffs and other Dental Consultants as independent contractors, exempt from overtime and ERISA benefits, pursuant to the same alleged company policy and pattern or practice.  Plaintiffs shared the same job title, had the same or similar job duties, and signed the same contracts as the other Dental Consultants.  Plaintiffs also claim the same injuries as other Dental Consultants—that MetLife failed to properly pay them for overtime hours worked, pay them on the schedules required by law for employees, and provide them with employee benefits guaranteed by ERISA.  Accordingly, the typicality requirement is satisfied

here. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *9 (typicality satisfied "because Plaintiffs'

claims arose from the same factual and legal circumstances that form the bases of the class

members' claims") (citations omitted).

  **D.**  **Rule 23(a)(4): Adequacy**

  Rule 23(a)(4) requires class representatives and their counsel to "fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives can meet this

requirement "if they (1) 'have an interest in vigorously pursuing the claims of the class' and (2)

'have no interests antagonistic to the interests of other class members.'" *Beach*, 2019 U.S. Dist.

LEXIS 97946, at *26–27 (citation omitted). Plaintiffs do not have interests antagonistic to other

class members' interests. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327, at 10 (finding adequacy

requirement satisfied "because there is no evidence that the Plaintiffs' and the class members'

interests are at odds"). They also have vigorously pursued the Class's claims. They have

produced documents and signed declarations in support of the motion for conditional

certification, participated in numerous conference calls with counsel for litigation updates and to

provide information and input, and entered into a settlement that protects the interests of class

members and includes an allocation formula under which only 3 of the 11 highest proposed

awards will go to Plaintiffs. Ex. G (Lieder Decl.) ¶ 15.

  Rule 23(a)(4) also requires that class counsel be "qualified, experienced, and generally

able to conduct the proposed litigation." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D.

261, 268 (S.D.N.Y. 2014). The lawyers here have substantial relevant experience, Mehri &

Skalet, PLLC in employment class actions and Stacey Gray in wage and hour law and labor and

employment matters more generally. Ex. G (Lieder Decl.) ¶ 19; Ex. H, (Gray Decl.) ¶ 17. The

quality of their filings throughout the litigation and their negotiation of the Settlement testify to

their competence and the zealousness of their representation in this case.

In sum, all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are satisfied here.

### E. Rule 23(b)(3): Predominance and Superiority

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the issue of whether MetLife misclassified the Dental Consultants as independent contractors, thereby depriving them of the protections and benefits of ERISA and the state labor laws, as well as the other common legal and factual issues, predominate over any individual factual or legal issues. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *11 ("Plaintiffs' common factual allegations and a common legal theory—that Defendants violated federal and state wage and hour laws by misclassifying Plaintiffs as exempt administrative employees and failing to pay them for premium overtime hours—predominate over any factual or legal variations among class members.").

"The Superiority Requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *Dodona I*, 296 F.R.D. at 271. Resolving the common issues stated above in a class settlement is far superior to individual proceedings, which could lead to inconsistent judgments regarding the same MetLife policies and practices. Plaintiffs are unaware of any individual actions filed by Dental Consultants, and the claims of most of them are sufficiently small (the median award will be about $6,200) that they would have no interest in doing so.

## VI.   CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE ACTION FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE

For settlement purposes, Plaintiffs seek to certify the collective action, as defined in Section II.B *supra*, under § 216(b) of the FLSA. The definition of the proposed collective is

25

similar to that of the class except that the time period is shorter.  The collective begins on

varying dates depending primarily on when members joined the case, but at the earliest, it begins

February 1, 2015 and ends July 31, 2019.  Ex. A (Settlement Agreement) § 1.6.  MetLife does

not oppose conditional certification for settlement purposes only.  *Id.* § 2.3(B).

### A.  Standard of Review

The FLSA authorizes employees to bring an action on behalf of "themselves and other

employees similarly situated".  29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad

remedial purpose," *Braunstein v. E. Photo Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), district

courts may "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their

opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir.

2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

In *Myers*, the Second Circuit approved of a two-step approach that district courts of this

Circuit had adopted to determine whether to facilitate notice to potential plaintiffs.  *See* 624 F.3d

537, 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015)

(describing *Myers* as "endors[ing]" the two-step method).  In the first step, the conditional

certification stage, the court makes "an initial determination to send notice to potential opt-in

plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA

violation has occurred."  *Myers*, 624 F.3d at 555 (citations omitted).  This requires only a

"'modest factual showing'" that they and potential opt-in plaintiffs "'together were victims of a

common policy or plan that violated the law.'"  *Id.* (citations omitted).  In an exemption case,

such as this one, "plaintiffs can accomplish this by making some showing that 'there are other

employees . . . who are similarly situated with respect to their job requirements and with regard

to their pay provisions,'" who are allegedly misclassified "pursuant to a common policy or

scheme." *Id.* (citations omitted).

This Court has applied this low bar, explaining that "[a]t the initial notice stage, plaintiffs satisfy their 'minimal burden' by demonstrating that other employees are similarly situated with regard to their positions, job requirements, compensation scheme, and whether they received overtime pay." *Trawinski v. KPMG LLP*, No. 11-2978(PAC), 2012 U.S. Dist. LEXIS 183366, at *7 (S.D.N.Y. Dec. 21, 2012 (Crotty, J.).  "Similarly situated" does not mean identical — "[c]ourts routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at different locations, perform somewhat different duties, and are managed by different supervisors." *Schaefer v. M&T Bank Corp.*, 122 F. Supp. 3d 189, 197 (S.D.N.Y. 2015) (quoting *Grant v. Warner Music Grp.*, No. 13 Civ. 4449 (PGG), 2014 U.S. Dist. LEXIS 65664, at *7 (S.D.N.Y. May 13, 2014) (collecting cases).

### B.    Dental Consultants Are Similarly Situated

Plaintiffs contend that they have more than satisfied their minimal burden to present evidence that that they and other Dental Consultants were, in *Myers'* words, "victims of a common policy or plan that violated the law." *Salomon*, 847 F. Supp. 2d at 563 (citations omitted); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145(NRB), 2010 U.S. Dist. LEXIS 114743, at *12–13 (S.D.N.Y. Oct. 27, 2010) (conditionally approving collective action for workers classified as independent contractors because the workers "all hold the same job title, have the same job responsibilities, work at the same location, and, by extension, are subject to the same ownership and management"); *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 706 (S.D.N.Y. 2018) (conditionally approving collective action based on evidence from three of five offices because all LTD Claims Specialists were similarly classified, "trained using the same materials[,] and provided the same checklists and scripts to use in processing claims").  The Dental Consultants signed substantially similar Contracts, were compensated on an hourly basis, and did not receive overtime.  Plaintiffs also allege that MetLife controlled their work in similar

27

ways, and contractually foreclosed their entrepreneurial opportunities in same manner.

Accordingly, the Court should conditionally certify this case as a collective action under §

216(b) for settlement purposes only.

## VII.   CONDITIONAL APPOINTMENT OF PLAINTIFFS' LAWYERS AS CLASS COUNSEL FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE

Federal Rule of Civil Procedure 23(g)(1) requires that whenever a court certifies a class it

must appoint class counsel.  If the Court conditionally certifies the Class for settlement purposes,

it should likewise conditionally appoint class counsel for settlement purposes.  *See, e.g.*, *Silver v.*

*31 Great Jones Rest.*, No. 11 CV 7442 (KMW) (DCF), 2013 U.S. Dist. LEXIS 7821, at *8-9

(S.D.N.Y. Jan. 3, 2013) (appointing class counsel at time of preliminary approval of settlement

and proposed class).

The lawyers of Mehri & Skalet PLLC and Stacey Gray PC satisfy all the factors that a

court must consider in appointing class counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The

lawyers have worked on this case since its initial inception including investigation of relevant

factual and legal issues.  Ex. G (Lieder Decl.) ¶¶ 2, 10; Ex. H (Gray Decl.) ¶¶ 1-3.  The lawyer

team has substantial experience in handling class actions and the types of employment law

claims asserted in this action.  Ex. G (Lieder Decl.) ¶ 19; Ex. H (Gray Decl.) ¶ 17.  They have

researched the relevant legal issues and their filings in this case reflect their knowledge of the

relevant law.  Ex. G (Lieder Decl.) ¶¶ 2, 10; Ex. H (Gray Decl.) ¶¶ 4-6.  Finally, they have

shown their willingness to commit resources to the litigation, including through their

employment of a labor economist to analyze damages and their joint engagement of a private

mediator.  Ex. G (Lieder Decl.) ¶¶ 3, 5, 6; Ex. H (Gray Decl.) ¶¶ 11, 13.  Cyrus Mehri, Michael

Lieder, Lauren Nussbaum, and Stacey Gray thus qualify as conditional Class Counsel.

## VIII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the Proposed Notices, which are attached as Exhibits B and C, fully complies with due process, Federal Rule of Civil Procedure 23, and the FLSA.  Pursuant to Rule 23(c)(2)(B), notice must "clearly and concisely state in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).  A notice of an FLSA collective action should include:

> the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries.

*Hernandez v. City of New York*, No. 16-CV-3445 (RA), 2017 U.S. Dist. LEXIS 102285, at *26-27 (S.D.N.Y. June 29, 2017) (citations omitted).

The Proposed Notices satisfy each of these requirements of Rule 23(c)(2)(B) and the FLSA.  *See* Ex. B (Original Notice); Ex. C (Reminder Notice).  In addition to the required provisions, the Original Notice also describes terms of the settlement not required by the Rule or the caselaw, such as the formula for calculating the settlement payments, the payment of attorneys' fees and the scope of the release.  Moreover, the Notice provides information regarding the date, time, and place of the final approval hearing.  Ex. B (Original Notice).

Pursuant to Rule 23(c)(2)(B), Plaintiffs must also provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be

29

identified through reasonable effort."  The Settlement Agreement provides that the Original

Notice will be sent by U.S. Mail to the names and addresses of each class and collective action

member.  Ex. A (Settlement Agreement) § 2.5(C).  MetLife will provide names and last known

contact information to the claims administrator within 10 business days after preliminary

approval.  *Id.* § 2.5(A).  The claims administrator will use reasonable skip tracing techniques to

update the mailing addresses of Class Members before mailing and make other update efforts

that are reasonable for any Class Member for whom mailed notice is returned as undeliverable.

*Id.* § 2.5(B), (D).  A copy of the Notice will also be available on a website dedicated to the

settlement to be created and maintained by the claims administrator.  *Id.* § 2.5(E).  The claims

administrator will use the personal email address (if available) to send a reminder email to any

individual who has not cashed a settlement check by the date 45 days after the settlement checks

are mailed.  *Id.* § 3.4(E).  Fourteen calendar days before the last date for negotiating settlement

checks (which shall be 90 days after the date of the checks), the claims administrator will send a

reminder post card and a reminder email (if available) to all persons to whom the original notice

was sent who have not negotiated a check by that date.  *Id.* § 3.4(F).  These notices and the

notice plan satisfy the requirements of Rule 23 and the FLSA as well as due process concerns.

## CONCLUSION

For the reasons set forth above, the Settlement easily satisfies all the requirements for

preliminary approval and notice to the class should be sent.  Plaintiffs respectfully request that

the Court grant their motion and enter the accompanying Proposed Order.

Dated: October 7, 2019

Respectfully submitted,

/s/ Stacey M. Gray
**STACEY GRAY PC**
Stacey Gray
60 East 42nd Street
46th Floor
New York, NY 10165
Tel: (212) 227-9163
Fax: (866) 224-6703
sgray@staceygray.com

/s/ Michael D. Lieder
**MEHRI & SKALET PLLC**
Cyrus Mehri (pro hac vice)
Michael D. Lieder (pro hac vice)
Lauren Nussbaum (pro hac vice)
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Tel: (202) 822-5100
Fax: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
lnussbaum@findjustice.com

## Certificate of Service

I, Michael D. Lieder, hereby certify that on October 7 2019, I caused the foregoing, along with Exhibits G and H, to be served via the Court's CM/ECF system upon all counsel of record.

 _/s/ Michael D. Lieder_
Michael D. Lieder
