# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

CAROL McNEELY, SHILPA VLK,                            :
GEORGE K. BERNHARD, and DEBORAH                       :
JOYCE,                                                :
                                                      :
on behalf of themselves and all others                :
similarly situated,                                   :
                                                      :
and                                                   :
                                                      :
DAVID T. RUDZIEWICZ, FREDERICK                        :
DEMAIO, DONNA R. KOBIELSKI,                            :
DONNA MOLTA, NADINE JOY,                               :
SAMUEL PENTA, and ROLAND HOGG,                        :
                                                      :
                    Opt-In Plaintiffs,                :         **1:18-CV-00885-PAC**
                                                      :
                    -against-                         :         *Electronically Filed*
                                                      :
METROPOLITAN LIFE INSURANCE                           :
COMPANY, METROPOLITAN LIFE                            :
RETIREMENT PLAN FOR UNITED STATES                     :
EMPLOYEES, SAVINGS AND INVESTMENT                     :
PLAN FOR EMPLOYEES OF METROPOLITAN                    :
LIFE AND PARTICIPATING AFFILIATES,                    :
METLIFE OPTIONS & CHOICES PLAN, and                   :
WELFARE BENEFITS PLAN FOR EMPLOYEES                   :
OF METROPOLITAN LIFE AND                              :
PARTICIPATING AFFILIATES,                             :
                                                      :
                    Defendants.                       :
----------------------------------------------------------------x

**DECLARATION OF MICHAEL LIEDER IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND
SETTLEMENT COLLECTIVE FOR SETTLEMENT PURPOSES ONLY,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT**

I, Michael Lieder, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1.      I am a lawyer with the firm of Mehri in Skalet, PLLC ("M&S") with offices in Washington, DC.  Since M&S began investigating this case with Stacey Gray in late 2017, I have been the primary lawyer at the firm working on the case.  Cyrus Mehri has provided oversight and Lauren Nussbaum has worked closely with me on the case.  I make all of the statements below based on personal knowledge, in some instances after reviewing the firm's records to refresh my recollection as to specific dates.

2.      The parties in late 2018 commenced the discovery process on Plaintiffs' claims that were not subject to MetLife's motion to dismiss. Plaintiffs served initial disclosures on MetLife, and MetLife served their initial disclosures on Plaintiffs, on December 7, 2018. Preparation of Plaintiffs' written disclosures required a great deal of legal and factual research, primarily to estimate damages, including liquidated damages and interest, that each Plaintiff might recover.  This research proved to be of great importance when the parties later commenced settlement negotiations.  In addition, Plaintiffs produced about 8,800 pages of documents to MetLife as part of their initial disclosures and their responses to MetLife's subsequent document production requests.  Meanwhile, in response to Plaintiffs' document production requests, MetLife produced about 2,500 pages of documents.  The parties were in the midst of an extensive negotiation over ESI search terms and custodians when they were able to reach agreement in principle on settlement terms in July 2019, as discussed below.

3.      In March 2019, the parties agreed to engage in settlement discussions.  One of their first steps in the process was to agree on Hunter Hughes, Esq., to serve as the mediator. Mr. Hughes is a well-known and experienced mediator in complex labor and employment litigation.  He had successfully mediated complex cases involving Class Counsel and

Defendants' Counsel in the past, and as a result, each side had considerable confidence in his ability to help them reach agreement.

4.    As part of the mediation process, MetLife agreed to prepare a voluminous spreadsheet showing the number of hours of work for which each dental consultant invoiced MetLife each day for approximately 11 years through early November 2017 (except for seven dental consultants for whom MetLife could not locate some months of invoices) and the consultants' hourly rates of pay each year.  For most of the period the invoices were handwritten.  As a result, it took until June 6, 2019, for the company to complete and produce the promised spreadsheet.  The company supplemented this information on June 21, 2019 with underlying documentation for a sample of dental consultants that we selected.  The figures in the spreadsheet conformed with the information in the underlying documentation for the sample of dental consultants, giving us confidence that MetLife had prepared the spreadsheet accurately.  Later, MetLife provided information to us about overtime hours worked by dental consultants who did not start working for MetLife until after October 31, 2017.  That information covered the period from the start of their services through July 31, 2019.

5.    We engaged a labor economist, Dr. Alex Vekker, to assist with analyzing the data provided in the spreadsheet.  We had confidence in Dr. Vekker because he frequently has analyzed and testified about damages in employment cases.

6.    On July 11, 2019, we, on behalf of Plaintiffs and Class Members, sent MetLife a 14 page single-spaced letter in which we evaluated MetLife's exposure under each of the Plaintiffs' claims.  Accompanying the letter was a four-page table derived largely on the analyses performed by Dr. Vekker itemizing MetLife's exposure as to each dental consultant. Based on the legal analyses in the letter and the calculations reflected in the table, the letter also presented Plaintiffs' initial settlement demand on behalf of the Class.

3

7.      On July 16, Ms. Nussbaum, Ms. Gray and I participated in a conference call in which Defendants' Counsel asked questions of Dr. Vekker and, to a lesser extent, of us.  The purpose was to assist MetLife's lawyers in understanding how we had arrived at their figures in order to prepare for the next steps in the negotiation process.

8.      The lawyers met in person in New York City at MetLife's counsel's offices to discuss settlement on July 24, 2019.  The parties made substantial progress during those negotiations, making it seem possible that they could reach a resolution at a mediation session with Mr. Hughes in Atlanta, Georgia, that had been scheduled for July 31, 2019 pending the results of the July 24th session.

9.      After mediating for the full day on July 31, the parties were close to impasse.  However, we finally reached agreement on the settlement amount and several other key terms based on a mediator's proposal.  Shortly thereafter we described the tentative settlement to the Plaintiffs.  The parties executed a Memorandum of Understanding on August 29 and 30, 2019, as well as the full Settlement Agreement on October 4, 2019.  Throughout the negotiating and drafting process, the negotiations were conducted on an arm's-length basis.  The parties have had to resolve numerous disputes concerning the amount of the Settlement, the class period, the terms of the release, the language of the notice, and many other issues.

10.     Between late 2017 and today, we have conducted a thorough and extensive investigation into the merits of the Plaintiffs' claims and defenses.  Achieving this Settlement required, among other things, research and analysis of the statutory, regulatory and caselaw under ERISA, the FLSA, and the labor laws of the eight states in which the approximately one hundred twenty dental consultants worked during the liability period.  The Second Amended Complaint asserts claims under the laws of Connecticut, Illinois, New Jersey, New York, and Rhode Island.  Plaintiffs subsequently have learned that two dental consultants assigned to the

Rhode Island panel worked out of their homes in Massachusetts and Maine.  Only about 20 of the dental consultants worked in New York.  We also had to perform research to conclude that Texas did not have any state laws providing private rights of action to class members.  Even though about 2/3 of the dental consultants worked in Illinois and only one or several dental consultants worked for MetLife in many of the states, the laws of each state in which at least one dental consultant worked had to be researched in order to make settlement proposals and reach a settlement for all the dental consultants.

11.     We estimate that under the Settlement Agreement dental consultants (except for anyone who opts out) will recover amounts for their overtime claims more than sufficient to encompass every penny of allegedly unpaid overtime.  They also will be paid a substantial percentage of their potential recovery on their delay-in-payment claims.  Plaintiffs and class members will receive only a small percentage of their maximum potential recovery on their ERISA claims because of the substantial risks that Plaintiffs would lose that claim in the absence of a settlement.  To recover more at trial on the three types of claims, Plaintiffs would have to attain class and collective certification, overcome motions to dismiss the ERISA claims and decertify any class or collective, prevail on anticipated motions for summary judgment and on *Daubert* motions, succeed on liability and damages issues at trial including on entitlement to liquidated damages and a three-year limitations period on the FLSA claims, and survive an appeal.

12.     The allocation formula, which appears as Exhibit E to the Settlement Agreement, distinguishes between the period before November 1, 2017 and the subsequent period, both for dental consultants who performed services for MetLife before November 1, 2017 and those who commenced that work after October 31, 2017.  It makes these distinctions for two reasons.  First, during our investigations prior to filing the Complaint, we concluded

5

that the argument that the consultants were employees was considerably stronger for the period before November 1, 2017 than afterward because of the differences between the contract that MetLife offered dental consultants before and after that date and because of some differences in practices in the two periods.  Second, prior to the session on July 31 with the mediator, MetLife had provided us with information only for the dental consultants who worked before October 31, 2017, and as to them the information covered only the period through the week including October 31, 2017.  We used the information for the period prior to October 31, 2017 to project damages for the period after that date for the individuals covered by the data provided prior to the mediation and negotiated additional money to be paid by MetLife to compensate those individuals for the period between November 1, 2017 and July 31, 2019.  Subsequently MetLife provided information on persons who commenced work as dental consultants after October 31, 2017 and the parties negotiated additional moneys to be paid by MetLife in the Settlement to cover those individuals.

13.     The formula does not provide any relief for Class Members who worked for MetLife in Texas under the state law components (alleged violations of both state wage and hour laws and state frequency of payment laws) because our research did not reveal any private rights of action created under state law for employees who work more than 40 hours in a week or for employees who were paid less frequently than once every two weeks or twice a month.  The formula also does not provide relief for Class Members who worked for MetLife in Connecticut and New Jersey for alleged violations of state wage and hour laws because our research disclosed that the potential remedies under state law were less generous than under the FLSA.  The formula also does not provide any remedy for any Plaintiffs or Class Members under the unjust enrichment claims because the Court dismissed those claims and, if the Settlement becomes effective, there will be no appeal of that ruling.

6

14.     One of the components of the allocation formula is the exposure under the FLSA.  Calculating this exposure required identification of how far back in time each Plaintiff's and Class Member's claims reached.  This required consideration of two tolling periods to which Plaintiffs contend that the parties agreed.  The first was memorialized in the Civil Case Management Plan filed February 1, 2019 (ECF No. 72) at paragraph 12 and lasted 172 days by Plaintiffs' count.  The second was memorialized in a Tolling Agreement dated July 16, 2019 and lasted 61 days by Plaintiffs' count.

15.     Throughout the litigation, the Plaintiffs have vigorously pursued the class's claims.  They have participated in numerous calls and email exchanges with Ms. Gray and us by which we obtained much of our information about MetLife's practices.  Plaintiffs have provided us with documents to be produced to MetLife and signed declarations in support of the motion for conditional certification.  They participated in telephone calls with us concerning settlement strategy both before the negotiations in July and in early August after we tentatively had agreed on terms of a settlement.  The Settlement Agreement that they have supported benefits all class members.  Indeed, they tentatively agreed to an allocation formula under which only 3 of the 11 largest proposed awards will go to Plaintiffs.

16.     If this case is not settled, I anticipate that each side would conduct extensive discovery, including both conducting depositions and reviewing and producing ESI, over many months.  Plaintiffs almost certainly would engage experts to calculate and testify about damages.  Those experts would be deposed and, if MetLife employed one or more experts, we would depose them.

17.     Under the retainer agreements between Plaintiffs and Class Counsel, we have been litigating this case on a contingent basis and have been advancing all expenses, including the fees of Dr. Vekker and Mr. Hughes.  Our clients have not paid any retainer fees.  Thus,

7

M&S has not received any compensation from Plaintiffs or Class Members for their work on this case or any reimbursement for expenses they have incurred.  The retainer agreements provide that Class Counsel are entitled to a fee award of 35% of any award that the Plaintiffs receive.

18.     M&S has not yet completed its exercise of billing judgment to determine its lodestar fees and its reasonable expenses in the case.  Based on my first review of the fees and expenses, however, I anticipate that M&S's expenses will be approximately $50,000 and that its lodestar fees will be over $1,000,000.  These fees and expenses do not include the fees and expenses incurred by Ms. Gray.

19.     Since its founding more than twenty years ago, M&S has specialized in class action litigation on behalf of Plaintiffs.  Employment class actions, including wage and hour and ERISA cases, constitute the largest part of the firm's class action practice.  Mr. Mehri and I have each been engaged in plaintiffs' employment class action litigation for roughly thirty years and we have won numerous awards for our class action work that has resulted in recoveries of many hundreds of millions of dollars for class members and sweeping programmatic changes at many employers.  Ms. Nussbaum has plunged into the firm's employment class action work since associating with the firm last year with a distinguished academic record and two judicial clerkships.  More information about the firm, Mr. Mehri, Ms. Nussbaum, and me is found at Mehri & Skalet's website, www.findjustice.com.

20.     The Claims Administrator selected by the parties, Settlement Services, Inc., estimates that its fees and expenses in this matter will be between $14,000 and $15,000.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
            Date                                              Michael D. Lieder