# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL McNEELY, *et al.*, | Civil No. 1:18-cv-00885-PAC |
| Plaintiffs, | |
| v. | **DECLARATION OF CAROL McNEELY IN SUPPORT OF PLAINTIFFS' MOTION FOR SERVICE AWARDS** |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

I, Carol McNeely, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I am the originally named plaintiff in the above referenced action which was filed on February 1, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All of the statements in this declaration are made based on my personal knowledge and I could testify about this declaration for my service award in the amount of $18,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") from 2002 through October 25 or 26, 2018 as a Dental Consultant in its Aurora, Illinois office. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

5. I first discovered that MetLife may have treated me and my fellow Dental Consultants unlawfully for the past 15 years when I read the company's New Contract which

would begin on November 1, 2017 ("New Contract"). For the first time MetLife identified Dental Consultants as independent contractors in the New Contract and removed some of the controls that it had imposed on us.

6. At least since I began working for MetLife in 2002, it has required a noncompete clause that prohibited us from "accept[ing] employment of any character hostile to the interests of MetLife or otherwise engag[ing] in activities adverse to the interests of MetLife." This clause limited our ability to generate more income during that time and ultimately in the future because other Dental Consultants and I were unable to develop other business relationships.

7. Initially, other Dental Consultants and I tried to gather as a group to seek legal counsel but the fears of retaliation from MetLife were too great for the majority of my fellow Dental Consultants. Therefore, I sought a legal counsel for myself. I contacted attorney Stacey Gray to review and compare MetLife's Old Contract with its New Contract because she is a highly regarded employment attorney who was referred to me by another respected attorney.

8. While the majority of Dental Consultants with whom I talked thought that they had valid claims against MetLife, I was the only one brave enough to file this class action. I chose to file a class action to benefit all Dental Consultants because we worked hard and together, and MetLife owed us money in exchange for our services. I made this decision even though I knew that my own recovery would be relatively modest because I did not work a large amount of overtime during the period from 2015 through 2017. Before filing this lawsuit, I informed the Dental Consultants of my intention to file a class action but all of them retreated because they believed that MetLife would fire them if they joined the lawsuit.

9. The precarious nature of our pay rate further justified their fear of retaliation. On November 1, 2017, MetLife reduced the hourly rates of all Dental Consultants by 10% even though we were to perform the same duties as we had under the Old Contract.

10. I debated whether to sign the New Contract, but in the end, I decided against it because MetLife could not be trusted to treat me or my fellow Dental Consultants fairly based on its imposition of the New Contract on us. I decided to retire from working for MetLife to avoid being retaliated against by them.

11. Serving as a named plaintiff has the potential to jeopardize future employment prospects if I decide to resume work. I understand that companies often are averse to hiring individuals who are involved in a lawsuit or who have sued their employer and a perfunctory internet search and/or background check would reveal that I am a named plaintiff in this action.

12. My work on the case began approximately two months before filing the lawsuit. I was the sole Dental Consultant who provided all of the information that was detailed in the 83-page complaint and exhibits to preserve the rights of and advance the claims for all Dental Consultants in Illinois, Rhode Island, New Jersey, New York and Texas. I also provided supporting documentation to challenge the predicted defense in Defendants' Rule 12(b)(6) dismissal motion that dentists were exempt from wage and hour claims because they were engaged in the practice of dentistry. I provided ample documentation that we were not engaged in the practice of dentistry when we reviewed insurance claims under the complete direction and control of MetLife.

13. Once my fellow Dental Consultants observed my willingness to be a publicly named plaintiff, many contacted me to learn more about the lawsuit and others considered joining. My efforts to pursue claims against MetLife for the benefit of all Dental Consultants

inspired others to join the lawsuit in Illinois and different states. My determination influenced approximately 10% of the entire class to join the lawsuit as named plaintiffs, and I set the standard for those plaintiffs to pursue the action on behalf of the entire class.

14. I provided Class Counsel with information to support the allegations that Dental Consultants in each panel performed similar job duties under similar levels of company control, and that, to the best of my knowledge, hygienists and dentists performed that same duties and were treated the same by MetLife. In addition, I provided the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), participated in group calls about the case arranged by the lawyers, communicated frequently with other plaintiffs about the case and reviewed and discussed all documents related to the settlement. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly as requested. My emails and documents concerned subjects such as my relationship with MetLife, MetLife's monitoring of our work, training, the equipment MetLife provided to us, the supplies available to us when we worked at MetLife's offices, MetLife's quality assurance reviews and quizzes, the timesheets I submitted, records of payments from MetLife, MetLife's dental consultant guidelines, and periodic meetings that MetLife arranged between management and consultants.

15. In all of this work, I kept in mind the need to advance the interests of other dental consultants, not just myself.

16. I realize that, unlike non-Plaintiff class members, the other Plaintiffs and I are required under the Settlement Agreement in order to accept our awards to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of

4

preliminary approval of the Settlement (October 17, 2019) rather than only the types of claims asserted in the Second Amended Complaint. Although I now am unaware of any such claims, that does not mean that there are none. MetLife and the related entities and individuals are vast. I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me. This is a risk I am being asked to take by the settlement.

17. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. Below is a conservative summary of my efforts and a chronological time log of my work because my records and memory are not complete.

18. Nov 2017: Reached out to attorney Stacey Gray ("SG") via email through another attorney about possible representation of a class of Dental Consultants; spoke with her to lay out the details of my complaint and she requested supporting documentation.

19. 12/1/17: Emailed SG copy of MetLife October 2017 dental consultant contract.

20. 12/3/17: Emailed SG four separate emails to show issues of micromanagement and majority of consultants requested additional time for attorney review of New Contract.

21. 12/4/17: Emailed SG outline of facts for complaint, including when I started at ML ("MetLife"), how I was hired, and where I worked.

22. 12/5/17: Read email from SG requesting clarifications on the 12/4/17 email I sent her about my work experience and history at ML.

23. 12/6/17: Replied to email SG, clarifying my ML computer access, title, position, difference in treatment between consultants and other employees, and identification of the locations of panels of consultants.

24. 12/6/17: Located and forwarded to SG email from ML supervisor Brian Fitzgibbons concerning criteria used to select work-at-home consultants.

5

25. 12/6-8/17: Located and forwarded email tax returns to SG for the tax years 2016, 2015, 2014, 2013, 2012, 2011 and 2010.

26. 12/7/17: Phone call with SG about topics covered in emails.

27. 12/8/17: Emailed SG detailed description for each year 2010 thru 2017 how I was paid, where I worked, whether I was required to come into office, if any expenses were reimbursed, etc. by year.

28. 12/8/17: Emailed SG providing permission to share my information with Mehri & Skalet law firm.

29. 12/8/17: Read SG email requesting employee benefit plans and ERISA.

30. 12/8/17: Replied to SG email saying ML never provided information to me on its employee benefit plans.

31. 12/9/17: Read SG email suggesting possible means of obtaining copies of benefit plans from ML.

32. 12/9/17: Replied to SG email about suggestion for access to employee benefit plans.

33. 12/9/17: Read SG email about another possible source of access to employee benefit plans.

34. 12/9/17: Replied SG email about attempt to try to obtain employee benefit plans.

35. 12/13/17: SG phone call.

36. 12/13/17: Located and emailed SG ML payment invoice Feb 2017.

37. 12/14/17: Read SG email, sent copy of resume and any licenses to her.

38. 12/22/17: Read SG email raising 28 questions about ML's practices toward Dental Consultants in preparation for phone call today.

39. 12/22/17: Emailed SG MetLife's office manual, consultant list and other ML correspondence.

40. 12/22/17: SG phone call in which I answered as many of the 28 questions as I could.

41. 12/26/17: Replied to SG email about research concerning outstanding questions.

42. 1/2/18: SG call to discuss questions that she had about other consultants.

43. 1/3/18: Emailed SG info on when payment received and identified 5 consultants with info.

44. 1/5/18: Responded to SG email about one change in practice from in ML Manual/Guidelines.

45. 1/10/18: Read SG email time regarding engagement agreement with SG and Mehri & Skalet.

46. 1/10/18: Read SG email outlining information to discuss in phone call on 1/11/17.

47. 1/10/18: Read and reviewed agreements.

48. 1/11/18: SG phone call about possible tax ramifications of class action.

49. 1/12/18: Read SG email regarding tax implications with links to IRS and congressional report websites.

50. 1/15/18: Signed, scanned and emailed to SG the agreements.

51. 1/22/18: SG phone call about three Dental Consultants potentially interested in joining case.

52. 1/23-27/18: Emailed and/or called three Dental Consultants about filing a class action against ML.

7

53. 1/25/18: Emailed SG to follow-up by email to Dental Consultant and summary of my conversation with that consultant.

54. 1/25/18: Read SG follow up email to Dental Consultant.

55. 1/25/18: Telephone call SG and attorney Michael Lieder to answer questions.

56. 1/26/18: Read SG email attaching and requesting review of draft of complaint.

57. 1/26/18: Replied to SG email about two potentially interested Dental Consultants.

58. 1/26/18: Replied SG email about three potentially interested Dental Consultants.

59. 1/27/18: SG phone call.

60. 1/27/18: Read SG email to Dental Consultant.

61. 1/29/18: Located, scanned and emailed to SG 2015 ML contract.

62. 1/29/18: Read email SG and reviewed updated draft of complaint.

63. 1/29/18: Read and replied to email from SG about edits to complaint.

64. 1/30/18: Read SG email, sign attached consent to join.

65. 1/31/18: Signed, scanned and emailed consent to join to SG.

66. 2/1/18: Read complaint filed this day.

67. 2/2/18: Prepared email explaining what I had been done, attached copy of complaint. Emailed complaint to 6 Dental Consultants.

68. 2/2/18: Read email SG re: additional consultants information conference call.

69. 2/15/18: Participated in conference call with lawyers and interested Dental Consultants.

70. 2/23/18: Read Mike Lieder email, reviewed draft 78-page amended complaint and answered specific questions.

71. 3/24/18: Read emails from Mike Lieder and Stacey Gray about amended complaint.

72. 3/26/18: Read emails from George Bernhard and Stacey Gray.

73. 3/26/18: Read and replied to email from Mike Lieder regarding whether Exhibit B or Exhibit were correct.

74. 3/26/18: Read draft Amended Complaint, sent an email and read several emails regarding changes to be made.

75. 4/2/18: Read email from Mike Lieder and read the attached filed copy of Amended Complaint.

76. 4/218: Read email from Mike Lieder sent to all expressing interest in the case.

77. 4/5/18: Read email from Mike Lieder about case.

78. 4/19/18: Read email from Mike Lieder and replied.

79. 5/6/18: Read email from Mike Lieder regarding 2nd amended complaint draft.

80. 5/9/18: Read email from Mike Lieder about case filing.

81. 7/4/18: Read email from Mike Lieder and attachments regarding Defendants' Letter Motion for Conference and our Letter response to motion addressed to Judge Crotty.

82. 7/27/18: Read email from Mike Lieder regarding Initial conference with Judge Crotty.

83. 8/24/18: Read email from Mike Lieder regarding holding a conference call on 8/29/18.

84. 8/28/18: Read email from Mike Lieder regarding a motion to dismiss MetLife filed on 8/24/18.

85. 8/29/18: Participated in conference call.

86. 9/12/18: Read email from Stacey Gray and attachment to head of Human Resources at MetLife, printed, signed, scanned and emailed signature page to Stacey Gray.

87. 10/22/18: Read email and attachments from Stacey Gray regarding benefit plans. Printed, signed, scanned and emailed back.

88. 11/19/18: Located, scanned and emailed 1099s for 2012-2017 to counsel

89. 11/26/18: Participated in a conference call about discovery.

90. 11/27/18: Read and printed list of discovery items sent by Stacey Gray.

91. 11/27/18: Read email from Stacy Gray on how to submit documents.

92. 11/28/18: Calculated my approximate overtime and emailed to Mike Lieder who in return emailed my estimated damage amount.

93. 11/28/18: Read email from Stacey Gray about discovery.

94. 11/29/18: Read email from Stacey Gray about case.

95. 12/1/18: Sent SG email with estimated OT, rate of pay and total pay.

96. 12/1/18: Read email from Stacey Gray about next steps in case.

97. 12/19/18: Spoke with SG regarding MetLife Benefit Plans.

98. 12/18/18: Read email from Stacey Gray regarding info for initial disclosures, printed, signed, scanned and emailed back 4 letters to MetLife benefit plans.

99. 12/20/18: Scanned and emailed letter RE: Claim for 401K benefits from MetLife.

100. 12/20/18: Scanned and emailed letter RE: MetLife retirement plan.

101. 1/4/19: Read email and attachments from Mike Lieder regarding interrogatories.

102. 1/4/19: Completed interrogatories and emailed to counsel.

103. 1/9/19: Read completed interrogatory responses.

104. 1/10/19: Scanned and emailed letter RE: ERISA claims under MetLife Benefit Plan.

105. 1/11/19: Read email from Stacey Gray regarding document request. Read 53-page attachment.

106. 3/12/19: Read email regarding declaration for collective action. Read, made corrections and emailed back.

107. 3/22/19: Read email regarding updated declaration from Lauren Nussbaum.

108. 3/27/19: Read email and attachment from Mike Lieder regarding Judge Crotty's Opinion and Order regarding the motion to dismiss.

109. 4/2/19: Read and replied to email from Lauren Nussbaum regarding MetLife management and case.

110. 4/13/19: Scanned and emailed letter from MetLife Benefit Plan to counsel.

111. 4/17/19: Read email from Stacey Gray with ERISA appeal letter to print, sign, scan and email back.

112. 4/18/19: Scanned and emailed letter Re: ERISA appeal.

113. 6/13/19: Scanned and emailed Appeal of denial of ERISA benefits.

114. 6/24/19: Read email from Mike Lieder regarding MetLife's willingness to discuss settlement.

115. 6/26/19: Read email from Stacey Gray about upcoming tasks for case and status.

116. 7/1/19: Conference call with counsel about case.

117. 8/1/19: Read email regarding settlement conference from Stacey Gray.

118. 8/4/19: Conference call to discuss settlement conference outcome.

119. 8/15/19: Read email from Stacey Gray.

120. 9/9/19: Read and replied to email from Mike Lieder regarding progress toward settlement.

121. 10/3/19: Read email and 9 attachments form Mike Lieder regarding settlement to be filed with the court.

122. 10/4/19: Read Mike Lieder's email with my estimated settlement amount.

123. 10/6/19: Conference call about 10/17/19 conference with Judge Crotty.

124. 10/6/19: Emailed SG my approval of the settlement agreement.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Nov. 3, 2019
Date

Carol McNeely