# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL McNEELY, *et al.*, ) | Civil No. 1:18-cv-00885-PAC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **DECLARATION OF** |
| ) | **DEBORAH JOYCE IN** |
| METROPOLITAN LIFE INSURANCE ) | **SUPPORT OF PLAINTIFFS'** |
| COMPANY, *et al.*, ) | **MOTION FOR SERVICE** |
| ) | **AWARDS** |
| Defendants. ) | |
| ) | |

I, Deborah Joyce, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I joined the above-captioned lawsuit as an Opt-In Plaintiff on March 15, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All of the statements in this declaration are made based on my personal knowledge and I could testify about this declaration for my service award in the amount of $15,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") since 2003 as a Dental Consultant in its Oriskany, New York office with three other hygienists and varying numbers of dentists. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

5. I initially was reluctant to become a named plaintiff after Carol McNeely filed the lawsuit on February 1, 2018 out of fear that MetLife would retaliate against me and I would be unable to find employment elsewhere.

6. I am 59 years-old and the main income earner in my household. The precarious nature of my income was emphasized to me when, on November 1, 2017, MetLife reduced the hourly rates of all Dental Consultants by 10% even though we perform the same duties under both the Old and New Contracts. I am fully aware that making only $28.80 an hour as a dental consultant at my age limits future employment and a higher income.

7. Since beginning work for MetLife in 2003, I have adhered to MetLife's noncompete clause, which under the Old Contract prohibited us from "accept[ing] employment of any character hostile to the interests of MetLife or otherwise engag[ing] in activities adverse to the interests of MetLife." This clause limited my ability to generate more income in the future because I only have worked from MetLife for the last 16 years.

8. Before I decided to join this lawsuit, I spoke with Plaintiffs' counsel, Stacey Gray, one weekend to share my fears. During the conversation I cried because I had worked over-time without being properly compensated almost every week since 2003. Because I worked evenings and weekends, I lost irreplaceable years with my two children who are now grown, and I am still trying to pay off the Parent Plus Loans that I took to help pay for their college education that I later consolidated under a home equity loan.

9. Notably, this settlement does not pay me for the nine years of overtime from 2003 to 2011 because of the statute of limitations.

10. In addition to my fears that MetLife might retaliate against me individually, my life became more stressful because some dental consultants assigned to the Oriskany office gossiped out of fear that they would lose their jobs because I joined the case.

11. Serving as a named plaintiff has the potential to jeopardize future employment prospects. I understand that companies often are averse to hiring individuals who are involved in a lawsuit or who have sued their employer. My fears and risks are reasonable because a perfunctory internet search and/or background check reveals that I am a named plaintiff in this action.

12. Despite these fears, I communicated by email and phone with Ms. Gray and Michael Lieder during February 2018. On February 28, I communicated with the three other hygienists about the possibility of joining the case (eventually all of them did). In early March I took over an hour to review the complaint. After that review, I decided to do the right thing for myself and other dental consultants and, on March 12, 2018, signed the retainer agreement and opt-in form and sent them to Ms. Gray.

13. My work on the case began almost immediately after submitting my retainer and consent to join form, and for the next 15 months, I garnered facts along with supporting documentation concerning the practices for dental hygienists and the Oriskany panel since the original plaintiff, Carol McNeely, is a licensed dentist who worked in the Illinois panel. I provided Class Counsel with information to support the allegations that hygienists and dentists performed that same duties and were treated the same by MetLife. In addition, I provided the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), participated in group calls about the case arranged by the lawyers, communicated frequently with other plaintiffs about

the case (especially the other three hygienists), and reviewed and discussed all documents related to the settlement. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly as requested. In all of this work, I kept in mind the need to advance the interests of other dental consultants, not just myself.

14. My initial work on the case provides an example of my level of contributions. In March 2018, the lawyers were working on an amended complaint. Between March 14 and the end of the month, I responded to numerous emails from the lawyers and from other plaintiffs with information about the practices that I experienced. During March, I also reviewed two different drafts of the amended complaint and sent several emails to the lawyers suggesting proposed changes. My emails concerned subjects such as my relationship with MetLife, training, MetLife's quality assurance reviews and quizzes, the timesheets I submitted, records of payments from MetLife, MetLife's dental consultant guidelines, and periodic meetings that MetLife arranged between management and consultants. All this work took several hours of my time in March 2018 alone. Finally, on April 2 I received a copy of the filed amended complaint, which I promptly read. It contained changes from the original complaint that reflected information that I had provided.

15. I realize that, unlike non-Plaintiff class members, the other Plaintiffs and I are required under the Settlement Agreement in order to accept our awards to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of preliminary approval of the Settlement (October 17, 2019) rather than only the types of claims asserted in the Second Amended Complaint. Although I now am unaware of any such claims, that does not mean that there are none. MetLife and the related entities and individuals are vast.

I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me. This is a risk I am being asked to take by the settlement.

16. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. Below is a conservative summary of my efforts and a chronological time log of my work because my records and memory are not complete.

17. February 16, 2018, Spoke with attorney Stacey Gray regarding joining the case.

18. February 16, 2018, Emailed attorney Stacey Gray with a few questions about McNeely's litigation.

19. February 17, 2018, Read and replied to attorney Michael Lieder that an S Corp was not determinative as to whether one is an independent contractor.

20. February 28, 2018, Invited my fellow dental consultants who are hygienists to discuss joining the case.

21. March 8, 2018, Read Carol McNeely's complaint (51 pages plus 32 pages of exhibits).

22. March 12, 2018, Read and signed retainer agreement to join the case as a Non-Illinois Plaintiff and faxed back 16 pages to attorney Stacey Gray's office.

23. March 23, 2018, Read the draft amended complaint (78 pages) and replied by email with changes to be made based on my experience and knowledge as a dental consultant who is a hygienist.

24. March 26, 2018, Read emails from George Bernhard and attorney Michael Lieder's follow-up.

25. March 26, 2018, Read and replied to email from Michael Lieder regarding method of payment.

26. March 26, 2018, Re-read the Amended Complaint, sent an email identifying several inaccuracies in the draft, and read several emails regarding changes to be made to the Amended Complaint.

27. March 27, 2018, Replied to email from Stacey Gray regarding additional changes to Amended Complaint.

28. March 28, 2018, Read email from Carol McNeely indicating a discrepancy in the amended complaint.

29. April 2, 2018, Read email from Michael Lieder and read the attached filed copy of Amended Complaint after all changes have been made after consulting with newly added plaintiffs.

30. April 2, 2018, Read email from Michael Lieder sent to all dental consultants who expressed interest in the case.

31. April 5, 2018, Read email from Michael Lieder responding to query about part-time dental consultants.

32. May 6, 2018, Read email from Michael Lieder regarding 2nd Amended Complaint draft.

33. July 4, 2018, Read email from Michael Lieder and attachments regarding Letter Motion for Conference filed by defendants and letter response to motion addressed to Judge Crotty.

34. July 27, 2018, Read email from Michael Lieder regarding initial conference with Judge Crotty.

35. August 24, 2018, Read email from Michael Lieder regarding holding a conference call on 8/29/18 with Plaintiffs – settlement and ERISA claims.

36. August 28, 2018, Read email from Michael Lieder regarding a motion to dismiss that MetLife filed on 8/24/18.

37. August 30, 2018, Participated in conference call with attorneys and fellow dental consultants about motion practice and discovery.

38. September 12, 2018, Read draft email from Stacey Gray and attachment to head of Human Resources at MetLife regarding ERISA, printed, signed, scanned and emailed signature page to Stacey Gray.

39. October 1, 2018, Read an email from Michael Lieder with four declaration forms (1 for each state) asking judge to approve collective action to litigate overtime claims under FLSA. Printed, signed, scanned and emailed back the declaration for NY.

40. October 1, 2018, Sent email to Michael Lieder regarding 20% MetLife employee discount at Verizon. Scanned and emailed proof of discount demonstrating that Verizon treats me as an employee.

41. October 12, 2018, Read and replied to email from Michael Lieder attaching the Form Declaration for Collective Action Motion (NY).

42. October 19, 2018, Read and replied to email from Michael Lieder regarding our ability to work from home and 8 other questions regarding our schedule and production.

43. October 22, 2018, Read email and attachments from Stacey Gray with letter regarding the 3 MetLife welfare and benefit plans for employees. Printed, signed, scanned and emailed back.

44. Nov 19, 2018, Sent email to Mile Lieder with names, titles and explanation of MetLife management.

45. Nov 19, 2018, located scanned and emailed 1099s for 2012-2017 to counsel.

46. Nov 19, 2018, emailed 2012, 2013, 2014, 2015, and 2017 tax returns to counsel.

47. Nov 19, 2018, sent Michael Lieder email with estimated overtime, rate of pay and total pay for the year.

48. Nov 20, 2018, read and replied to 3 emails from Michael Lieder regarding calculation of overtime and commenting on how many hours I work.

49. Nov 26, 2018, participated in a conference call about discovery. What type of documents are needed, how to send them, etc.

50. Nov 26, 2018, scanned and emailed 34 pages of periodontal surgery training documents to demonstrate that MetLife sets guidelines for us to follow and trains us on how to implement them.

51. Nov 27, 2018, read and replied to 4 emails from Michael Lieder regarding Consultant Manuals, list of persons with knowledge in support of claims, gathering of information for Initial Disclosures.

52. Nov 27, 2018, read and printed list of needed information for Initial Disclosures discovery items sent by Stacey Gray.

53. Nov 27, 2018, read email from Stacy Gray on how to submit documents.

54. Nov 27, 2018, Provided 2015 and 2016 consultant training manuals to legal counsel.

55. Nov 27, 2018, Located scanned and emailed 14 pages of navigating systems and images.

56. Nov 27, 2018, Located scanned and emailed 10 pages of the hygienist training manual.

57. Nov 28, 2018, Calculated my approximate overtime for 2012-2017 and emailed to Michael Lieder who in return emailed my estimated damage amount.

58. Nov 28, 2018, Read email from Stacey Gray instructing us to send documents by pdf and not photos of documents.

59. Nov 29, 2018, Read email from Stacey Gray regarding not destroying any documents we have.

60. Nov 29, 2018, Read email from Michael Lieder regarding sending damage calculation information and how to calculate the overtime.

61. Dec 1, 2018, Scanned and emailed Verizon discount, Dental Hygiene license and 2 emails regarding control to Stacey Gray.

62. Dec 1, 2018, Read email from Stacey Gray stating we are not including all the legal team in our emails.

63. Dec 18, 2018, Read email from Stacey Gray, printed, signed, scanned and emailed back 4 letters to MetLife benefit plans.

64. Dec 20, 2018, Scanned and emailed letter RE: Claim for 401K benefits from MetLife.

65. Dec 20, 2018, Scanned and emailed letter Re: MetLife retirement plan.

66. Jan 4, 2019, Read email and attachments from Michael Lieder regarding interrogatories.

67. Jan 4, 2019, Completed interrogatories and emailed to counsel.

68. Jan 9, 2019, Read completed interrogatory document.

69. Jan 10, 2019, Scanned and emailed letter RE: ERISA claims under MetLife Benefit Plan.

70. Jan 11, 2019, Read email from Stacey Gray confirming receipt of my final draft of interrogatories.

71. Jan 11, 2019, Read email from Stacey Gray regarding document request. Read 53-page attachment.

72. Jan 12, 2019, Emailed Michael Lieder with question about interrogatory question and read reply.

73. Jan 12, 2019, Located scanned and emailed letter about storm closing of MetLife buildings, requests for additional work instructions, dental hygiene license.

74. February 1, 2019, Scanned and emailed 8 S-Corp documents.

75. March 12, 2019, Read email regarding declaration for collective action, read, made corrections and emailed back.

76. March 22, 2019, Read email regarding changes to my declaration for the motion to conditionally certify the proposed collective action from Lauren Nussbaum.

77. March 25, 2019, Located scanned and emailed documents describing the work at home program and MetLife's expectations from us. (15 mins.)

78. March 25, 2019, Located and scanned 12 invoices from 2013 rate $30/hr.

79. March 25, 2019, Located and scanned 12 invoices from 2014 rate $31/hr.

80. March 25, 2019, Located and scanned 12 invoices from 2015 rate $32/hr.

81. March 25, 2019, Located and scanned 12 invoices from 2016 rate $32.

82. March 25, 2019, Located and scanned 12 invoices from 2017 rate $32 until 11/1/18 then $28.80.

83. March 27, 2019, Read email and attachment from Michael Lieder regarding Judge Crotty's Opinion and Order.

84. April 2, 2019, Read and replied to email from attorney Lauren Nussbaum regarding who was considered management and who was an administrator.

85. April 13, 2019, Scanned and emailed letter from MetLife Benefit Plan to counsel.

86. April 17, 2019, Read email from Stacey Gray with ERISA appeal letter to print, sign, scan and email back.

87. April 18, 2019, Scanned and emailed letter Re: ERISA appeal.

88. May 1, 2019, Located scanned and emailed 25 pages of work instructions for phone system and assignments.

89. June 13, 2019, Scanned and emailed appeal of ERISA benefits denial.

90. June 24, 2019, Read email from Michael Lieder regarding MetLife's interest to discuss settlement along with also continuing the litigation path.

91. June 26, 2019, Read email from Stacey Gray regarding privileged and confidential information.

92. July 1, 2019, Conference call with counsel to discuss tentative settlement demand.

93. July 8, 2019, Emailed with Michael Lieder about my damage amount.

94. July 9, 2019, Spoke with Michael Lieder about MetLife's failure to produce all my pay invoices.

95. July 12, 2019, Read email from Michael Lieder about settlement update read 2 attachments.

96. July 21, 2019, Emailed with Michael Lieder about calculating overtime without the missing invoices and payroll records from MetLife.

11

97. August 1, 2019, Read email regarding settlement conference from Stacey Gray and scheduling a conference call for August 2.

98. August 4, 2019, Conference call with counsel to discuss settlement conference and outcome.

99. August 7, 2019, Spoke with Stacey Gray regarding settlement questions after mediation with Hunter Hughes.

100. August 7, 2019, Emailed Stacey Gray follow up to the earlier call about settlement.

101. August 15, 2019, Read email from Stacey Gray regarding settlement payments.

102. August 15, 2019, Read email from Stacey Gray again stressing confidentiality.

103. August 20, 2019, Emailed with Michael Lieder regarding base overtime.

104. August 21, 2019, Emailed with Michael Lieder regarding signed Memorandum of Understanding.

105. August 28 and 29, 2019, Went through every invoice for 2012-2017 and totaled my overtime hours.

106. Sep 7, 2019, Emailed with Michael Lieder regarding MOU and 9/25/19 conference.

107. Sep 9, 2019, Read email from Michael Lieder regarding progress toward settlement.

108. October 3, 2019, Read email and 9 attachments form Michael Lieder regarding pre-approval settlement motion.

109. October 4, 2019, Emailed Michael Lieder to sign the settlement agreement for me.

110. October 4, 2019, Read Michael Lieder's email with my estimated settlement amount.

111. October 4, 2019, Emailed with Michael Lieder regarding my individual settlement award.

112. October 4, 2019, conference call about settlement and upcoming tasks if approved.

113. October 6, 2019, conference call about settlement and a timeline of possible tasks if settlement approved.

114. October 6, 2019, Private call with Michael Lieder about settlement.

115. October 11, 2019, Emailed Stacey Gray that the settlement agreement was announced online and also had a phone call with her.

116. October 18, 2019, read and replied to email from Stacey Gray about declarations for fee award.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

| 11/2/19 | *Deborah Joyce* |
|---|---|
| Date | Deborah Joyce |