# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL McNEELY, *et al.*, | Civil No. 1:18-cv-00885-PAC |
| Plaintiffs, | |
| v. | **DECLARATION OF DONNA MOLTA IN SUPPORT OF PLAINTIFFS' MOTION FOR SERVICE AWARDS** |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

I, Donna Molta, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I opted in to the above-captioned lawsuit on April 25, 2018 and was named as a Class Representative in the Amended Complaint filed on March 30, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All statements in this declaration are made based on my personal knowledge and I could testify about this declaration in support of my service award in the amount of $15,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") since 2001 as a Dental Consultant. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

5. Before November 2017, MetLife paid me at a rate of $32 per hour. On November 1, 2017, MetLife reduced the hourly rates of all Dental Consultants by 10%, even though we performed essentially the same duties under both the old and new Contracts. As a result, I am currently making $28.80 per hour. Despite the cut in compensation, most Dental Consultants, like

1

myself, have continued to work for MetLife. This shows the economic power that MetLife has over the Dental Consultants.

6. I was very concerned about joining this case as a Class Representative because I knew MetLife could terminate my contract at any time, without having to give any reason, and I was worried that MetLife would terminate my contract if I associated my name with this case. Even though I believed that MetLife was not treating us right, I feared what could happen to the Dental Consultants if we stood up for ourselves.

7. I am not in a financial position to lose my contract. My husband lost his job in October 2016, and has only been able to secure work at a minimum wage since June 2017. As a result, I was the only breadwinner in the family for over a year and am still the primary breadwinner. My husband and I are both 65 and it is much harder for us to get back into the workforce. In addition, we are responsible for the care of my elderly mother, and we were responsible for the care of my elderly mother-in law until she passed away in May 2019. In addition, we are currently paying a Parent Plus college loan for one of our children. Seeing my husband lose a job that he had held for decades has made me aware that I, as an independent contractor, have even less job security. Given our financial responsibilities, I constantly worry that MetLife will terminate my contract.

8. Further, the Dental Consultants recently received an e-mail that states that our current contracts terminate on November 30, 2019, and that we will be offered a new contract with an effective date of December 1, 2019. In fact, our 2019 contracts terminate on October 31, not November 30. This e-mail concerned me because it meant that my 2019 contract would lapse without a new one in its place. Moreover, when I read the first line, which states: "I am writing to notify each of you that your current independent Contract Agreement with MetLife will terminate

effective November 30, 2019," I was scared that MetLife was not renewing my contract until I realized that MetLife was offering a new contract. I am still concerned that the contract is taking longer to renew this year than it has in prior years.

9. After joining the case, I supplied the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), participated in group calls about the case arranged by the lawyers, communicated frequently with other plaintiffs about the case, and reviewed and discussed all documents related to the settlement. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly. In all of this work, I kept in mind the need to advance the interests of other Dental Consultants, not just myself.

10. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. I didn't keep a log that allows me to remember all the work I did on this case, but beyond what I have identified above, I participated in a conference call with Plaintiffs' counsel to learn about the lawsuit. I then reviewed the Complaint. I communicated with the lawyers in mid-March that I had decided to join, and they sent me documents that I reviewed, signed and returned. I reviewed old time sheets, invoices, notes from supervisors, duties as a dental consultant, different letters from MetLife over the years, personal notes, updated continuing legal education documentation, information about MetLife dinners at which MetLife gave updates, and old manual guidelines. I had saved all of my invoices and manuals going back to 2001, the vast majority of which were hard copies that took time and expense to review, organize, copy, and send to the attorney.

11. Based partly on this document review, I talked with one of the lawyers and provided information about my circumstances and the New York panel. I reviewed a draft of the Amended

Complaint and provided corrections. I then reviewed the final version of the Amended Complaint. I reviewed requests from the lawyers for documents, reviewed my paper and computer files, and sent the lawyers every document that I could find that was on their list. I also provided information from which they could estimate the amount of money to which I might be entitled for purposes of my initial disclosures. I then reviewed and approved a draft of the initial disclosures applicable to me. Later the lawyers drafted responses to interrogatories and document production requests that they sent to me. I reviewed those documents and provided any additional information that I could. The lawyers informed us that we should seek benefits through the employee benefit plan administrators. They sent us a letter requesting benefits and a second letter appealing the denial of the first benefit request. I reviewed, signed and returned both letters. The lawyers also drafted a motion for conditional certification of a FLSA collective action in 2018 and then a new version in 2019. I was asked to sign a declaration in support of each motion. Each time I reviewed the draft declarations prepared by the lawyers, discussed any corrections with them, and then signed and returned the declarations. The lawyers discussed the proposed settlement with us in multiple emails and phone conferences. I read all the emails and participated in all the telephone conferences. When the lawyers sent documents to review, I reviewed them. I concluded that the settlement was fair for me and the other Dental Consultants, and in a phone call and email authorized the lawyers to sign the Settlement Agreement on my behalf. The list above does not contain all the communications and requests for information from the lawyers. They regularly updated me and the other Plaintiffs on developments in the case and sometimes requested information from us. To the best of my knowledge I read every email, participated in every telephone conference, and provided information whenever requested.

12. I realize that, unlike non-Plaintiff class members, the other Plaintiffs and I are required under the Settlement Agreement, in order to accept our awards, to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of preliminary approval of the Settlement (October 17, 2019) rather, than only the types of claims asserted in the Second Amended Complaint. Although I now am unaware of any such claims, that does not mean that there are none. MetLife and the related entities and individuals are vast. I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me. This is a risk I am being asked to take by the settlement.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

 11-4-19
 Date

 *Donna Molta* (signature)
 Donna Molta

6