# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL McNEELY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Civil No. 1:18-cv-00885-PAC <br><br> DECLARATION OF NADINE JOY IN SUPPORT OF PLAINTIFFS' MOTION FOR SERVICE AWARDS |

I, Nadine Joy, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I joined the above-captioned lawsuit as an Opt-In Plaintiff on May 10, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All of the statements in this declaration are made based on my personal knowledge and I could testify about this declaration in support of my service award in the amount of $15,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") since 2003 as a Dental Consultant in its Oriskany, New York office with three other hygienists and varying numbers of dentists. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

Scanned by CamScanner

5. I initially was too nervous to become a named plaintiff after Carol McNeely filed the lawsuit on February 1, 2018 out of fear that MetLife would retaliate against me, and as a consequence, I would be unable to care for my family and pay my mortgage as examples.

6. My fears were justified because on November 1, 2017, MetLife reduced the hourly rates of all Dental Consultants by 10% even though we perform the same duties under both the Old and New Contracts. My reduced hourly rate is now $27.00.

7. I have three teenage sons, and every penny counts to successfully raise my 17-year-old son and twins who are 13. MetLife's failure to pay me the overtime I believe that I am owed over the years has caused me to rely on credit cards with high interest rates when I'm financially stretched. My son is applying to college now, and he and I should not be saddled with educational loan debt simply because MetLife chose not to pay for my services over the years.

8. I accept that I'm middle-aged without many business relationships and prospects for future employment elsewhere because I have adhered to MetLife's noncompete clause since 2003. I and other Dental Consultants were unable to provide services to a competitor based on the contractual language, such as the Old Contract's statement that I cannot "accept employment of any character hostile to the interests of MetLife or otherwise engage in activities adverse to the interests of MetLife." The noncompete clause has limited my ability to generate more income over the last 16 years and likely will have a lasting effect.

9. Also, companies often are averse to hiring individuals who are involved in a lawsuit or who have sued their employer. My fears are reasonable because a perfunctory internet search and/or background check reveals that I am a named plaintiff in this action.

10. On May 2, 2018, I spoke with plaintiff's counsel, Stacey Gray, about my fears associated with joining the case. Despite the anxiety that I felt throughout the three months since

2

Scanned by CamScanner

Ms. McNeely filed this lawsuit, I finally decided to help myself and other dental consultants by signing the retainer agreement and opt-in form because MetLife should pay us all what we are owed for our hard work that helped grow their business profits.

11. My work on the case began almost immediately after submitting my retainer and consent to join form, and for the next 15 months, I garnered facts along with supporting documentation concerning the practices for dental hygienists and the Oriskany panel.

12. I provided Class Counsel with information to support the allegations that hygienists and dentists performed that same duties and were treated the same by MetLife. In addition, I provided the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), participated in group calls about the case arranged by the lawyers, communicated frequently with other plaintiffs about the case (especially the other three hygienists), and reviewed and discussed all documents related to the settlement. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly as requested. In all of this work, I kept in mind the need to advance the interests of other dental consultants, not just myself.

13. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. I didn't keep a log that allows me to remember all the work I did on this case, but beyond what I have identified above, I remember the following:

    a. <u>Initial Period</u>. Although I didn't join the case until May 10, 2018, I participated in the February 15, 2018 conference call with Plaintiffs' counsel to learn about the lawsuit. I also reviewed the Complaint and Amended Complaint, and ensured that the Second Amended Complaint was accurate in advance of its May 7, 2018 filing. I

Scanned by CamScanner

formally joined the case three days later and then spent countless hours reviewing old time sheets, invoices, notes from supervisors, duties as a dental consultant, different letters from MetLife over the years, personal notes, updated continuing legal education documentation, information about MetLife dinners at which MetLife gave updates, and old manual guidelines. I spent countless hours reviewing documents because I have worked for MetLife for the last 16 years to provide factual information to prepare for our initial disclosures.

    b.    <u>Discovery.</u> I reviewed requests from the lawyers for documents, reviewed my paper and computer files, and sent the lawyers every document that I could find that was on their list. I also provided information from which they could estimate the amount of money to which I might be entitled for purposes of my initial disclosures. I then reviewed and approved a draft of the initial disclosures applicable to me. Later the lawyers drafted responses to interrogatories and document production requests that they sent to me. I reviewed those documents and provided any additional information that I could.

    c.    <u>ERISA Claims.</u> The lawyers informed us that we should seek benefits through the employee benefit plan administrators. They sent us a letter requesting benefits and a second letter appealing the denial of the first benefit request. I reviewed, signed and returned both letters.

    d.    <u>Motion for Conditional Certification.</u> The lawyers also drafted a motion for conditional certification of a FLSA collective action in 2018 and then a new version in 2019. I reviewed my draft declarations prepared by the lawyers, discussed any corrections with them, and then signed and returned my declaration to be filed.

4

Scanned by CamScanner

e. <u>Settlement.</u> The lawyers discussed the proposed settlement with us in multiple emails and phone conferences. I read all the emails and participated in all the telephone conferences. When the lawyers sent documents to review, I reviewed them. I concluded that the settlement was fair for me and the other Dental Consultants, and in a phone call and email authorized the lawyers to sign the Settlement Agreement on my behalf.

f. <u>Other communications.</u> The list above does not contain all the communications and requests for information from the lawyers. They regularly updated me and the other Plaintiffs on developments in the case and sometimes requested information from us. To the best of my knowledge I read every email, participated in every telephone conference, and provided information whenever requested.

14. I realize that, unlike non-Plaintiff class members, the other Plaintiffs and I are required under the Settlement Agreement in order to accept our awards to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of preliminary approval of the Settlement (October 17, 2019) rather than only the types of claims asserted in the Second Amended Complaint. Although I now am unaware of any such claims, that does not mean that there are none. MetLife and the related entities and individuals are vast. I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me. This is a risk I am being asked to take by the settlement.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Nov. 3, 2019
Date

Nadine Joy
Nadine Joy

5

Scanned by CamScanner