# EXHIBIT 9

| | | |
|---|---|---|
| CAROL McNEELY, *et al.*, | ) | Civil No. 1:18-cv-00885-PAC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF** |
| | ) | **DAVID RUDZIEWICZ IN** |
| METROPOLITAN LIFE INSURANCE | ) | **SUPPORT OF PLAINTIFFS'** |
| COMPANY, *et al.*, | ) | **MOTION FOR SERVICE** |
| | ) | **AWARDS** |
| Defendants. | ) | |
| | ) | |

I, David Rudziewicz, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I opted in to the above-captioned lawsuit on March 15, 2018 and was named as a Class Representative in the Amended Complaint filed on March 30, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All statements in this declaration are made based on my personal knowledge and I could testify about this declaration in support of my service award in the amount of $15,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") from 2006 as a Dental Consultant. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

5. MetLife initially paid me at a rate of $40 per hour. Over the years, my rate increased to $44 per hour until November 1, 2017, when MetLife reduced the hourly rates of all Dental Consultants by 10%, even though we performed essentially the same duties under both the old and new Contracts. As a result, I am currently making $39.60 per hour, which is less than

1

what I made when I first became a Dental Consultant for MetLife over a decade ago. Despite the cut in compensation, most Dental Consultants, like myself, have continued to work for MetLife. This shows the economic power that MetLife has over the Dental Consultants.

6. I was very concerned about joining this case as a Class Representative because I knew MetLife could terminate my contract at any time, without having to give any reason, and I was worried that MetLife would terminate my contract if I associated my name with this case. I spoke with other Dental Consultants on my panel who shared the same fear about our lack of employment security given our status as independent contractors. They chose not to join the lawsuit for this reason. Before I joined the lawsuit, they told me that they did not know why Carol McNeely, the original named plaintiff, was "trying to stir up trouble and cause problems for everyone." Their concerns made me question my decision to join the lawsuit. I did not want to be perceived as a "troublemaker" by other Dental Consultants or by MetLife because I worried that would make me a target for contract termination. Ultimately, I decided to join because I trusted Carol's judgment.

7. In addition to my duties at MetLife, I work for a company that services nursing homes. I perform my claims review work for MetLife on nights and weekends to supplement that income. However, I am completely reliant on the $30,000 to $40,000 in annual income that I receive from MetLife to supplement the income from my day job.

8. I have a back condition known as Sciatica. A year and a half ago, I had back surgery, which only allowed me to work limited hours over the course of a few months. I am currently going to physical therapy and may need to have another back surgery. Therefore, my income and my ability to support myself is of utmost importance now more than ever. I am 56

years old, and I worry about finding another job to replace my work for MetLife if it does terminate my contract.

9. My fears about retaliation recently increased for various reasons. First, a few months ago, when I placed a call to a dental office to explain why MetLife had refused a claim, the dentist said I was "stupid" and hung up on me. I sent an e-mail to my MetLife supervisor, Dr. Brian Fitzgibbons, letting him know what had occurred. Dr. Fitzgibbons never responded to me or even acknowledged my e-mail, which made me wonder if my serving as a Class Representative was the reason he did not acknowledge my email. Second, I experienced a lot of problems with my MetLife-issued laptop over the last few months, which resulted in me spending hours on the phone with MetLife's IT department. When IT decided the computer could not be fixed, I was unable to perform any work for MetLife for approximately three weeks, when MetLife finally sent me a new computer. Three weeks seemed like a long time to get me a new laptop, and during that time I was worried that the laptop was delayed because MetLife had decided it would not renew my contract.

10. MetLife has also recently hired a bunch of new Dental Consultants that are being paid $33/hour. It has brought on at least two new groups of Dental Consultants since the lawsuit was filed. Every time I learn that new Dental Consultants have been hired, I worry that MetLife has hired them to replace the Class Representatives. These concerns increased over the summer, when MetLife terminated the contracts for two Dental Consultants who had worked for MetLife for many years. Their termination made me worry that I was next in line for contract termination.

11. Further, the Dental Consultants recently received an e-mail that states that our current contracts terminate on November 30, 2019, and that we will be offered a new contract with an effective date of December 1, 2019. In fact, our 2019 contracts terminate on October 31, not

November 30. This e-mail concerned me because it meant that my 2019 contract would lapse without a new one in its place.

12. After joining the case, I supplied the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), participated in group calls about the case arranged by the lawyers, communicated frequently with other plaintiffs about the case, and reviewed and discussed all documents related to the settlement. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly. In all of this work, I kept in mind the need to advance the interests of other Dental Consultants, not just myself.

13. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. I didn't keep a log that allows me to remember all the work I did on this case, but beyond what I have identified above, I participated in a conference call with Plaintiffs' counsel to learn about the lawsuit. I then reviewed the Complaint. I communicated with the lawyers in mid-March that I had decided to join, and they sent me documents that I reviewed, signed and returned. I reviewed old time sheets, invoices, notes from supervisors, duties as a Dental Consultant, different letters from MetLife over the years, personal notes, updated continuing legal education documentation, information about MetLife dinners at which MetLife gave updates, and old manual guidelines.

14. Based partly on this document review, I talked with one of the lawyers and provided information about my circumstances. I reviewed a draft of the Amended Complaint and provided corrections. I then reviewed the final version of the Amended Complaint. I reviewed requests from the lawyers for documents, reviewed my paper and computer files, and sent the lawyers every document that I could find that was on their list. I also provided information from which they

could estimate the amount of money to which I might be entitled for purposes of my initial disclosures. I then reviewed and approved a draft of the initial disclosures applicable to me. Later the lawyers drafted responses to interrogatories and document production requests that they sent to me. I reviewed those documents and provided any additional information that I could. The lawyers informed us that we should seek benefits through the employee benefit plan administrators. They sent us a letter requesting benefits and a second letter appealing the denial of the first benefit request. I reviewed, signed and returned both letters. The lawyers also drafted a motion for conditional certification of a FLSA collective action in 2018 and then a new version in 2019. I was asked to sign a declaration in support of each motion. Each time I reviewed the draft declarations prepared by the lawyers, discussed any corrections with them, and then signed and returned the declarations. The lawyers discussed the proposed settlement with us in multiple emails and phone conferences. I read all the emails and participated in all the telephone conferences. When the lawyers sent documents to review, I reviewed them. I concluded that the settlement was fair for me and the other Dental Consultants, and in a phone call and email authorized the lawyers to sign the Settlement Agreement on my behalf. The list above does not contain all the communications and requests for information from the lawyers. They regularly updated me and the other Plaintiffs on developments in the case and sometimes requested information from us. To the best of my knowledge I read every email, participated in every telephone conference, and provided information whenever requested.

15. I realize that, unlike non-Plaintiff class members, the other Plaintiffs and I are required under the Settlement Agreement in order to accept our awards to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of preliminary approval of the Settlement (October 17, 2019) rather than only the types of claims

asserted in the Second Amended Complaint.  Although I now am unaware of any such claims, that does not mean that there are none.  MetLife and the related entities and individuals are vast.  I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me.  This is a risk I am being asked to take by the settlement.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

11/1/19
Date

_David Rudziewicz_