# EXHIBIT 11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL McNEELY, *et al.*, ) | Civil No. 1:18-cv-00885-PAC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **DECLARATION OF** |
| ) | **HARRY TUBER IN** |
| METROPOLITAN LIFE INSURANCE ) | **SUPPORT OF PLAINTIFFS'** |
| COMPANY, *et al.*, ) | **MOTION FOR SERVICE** |
| ) | **AWARDS** |
| Defendants. ) | |
| ) | |

I, Harry Tuber, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

1. I opted in to the above-captioned lawsuit on April 9, 2018 and was named as a Class Representative in the Second Amended Complaint filed on May 7, 2018.

2. I am competent to give this declaration, which I do in support of Plaintiffs' Motion for Service Awards.

3. All of the statements in this declaration are made based on my personal knowledge and I could testify about this declaration in support of my service award in the amount of $10,000.00.

4. I have worked for Metropolitan Life Insurance Co. ("MetLife") since 2003 as a Dental Consultant on the Bridgewater, New Jersey panel. By the term "Dental Consultant," I mean a dentist or hygienist engaged by MetLife primarily to review claims for dental benefits submitted by persons insured by MetLife in order to make recommendations concerning whether MetLife should pay benefits on the claims.

1

5. I internally debated whether to become a named plaintiff after Carol McNeely filed the lawsuit on February 1, 2018 primarily because my colleagues feared that MetLife would retaliate by not renewing our contracts.

6. While MetLife renewed all of our Dental Consultant contracts, it reduced all of our hourly rates by 10% on November 1, 2017 despite the fact that we perform the same duties under both the Old and New Contracts. MetLife decreased my hourly rate from $50.00 to $45.00. But most other Dental Consultants and I have continued working for MetLife even with the pay cut because we need the money. We are losing more than just 10% off our hourly rates because MetLife has stopped reimbursing us for continuing education courses and providing supplies to perform our duties. The decisions of so many Dental Consultants to continue with MetLife despite these compensation reductions show the economic power that MetLife has over us and why we were so afraid of retaliation.

7. MetLife has built its power over Dental Consultants by barring us from entering business relationships and prospects for future employment elsewhere because the company's noncompete clause since 2003 has prohibited us from providing services to a competitor. The Old Contract's language prevented me from "accepting employment of any character hostile to the interests of MetLife or otherwise engage in activities adverse to the interests of MetLife." The noncompete clause has limited my ability to generate more income over the last 16 years and likely will have a lasting effect.

8. Although MetLife no longer has a noncompete clause, the damage has already has been done. I am 84 years old and have continued working for MetLife because being hired elsewhere at my age is highly unlikely.

9. Also, I understand that companies often are averse to hiring individuals who are involved in a lawsuit or who have sued their employer. My fears and risks are reasonable because a perfunctory internet search and/or background check reveals that I am a named plaintiff in this action.

10. Despite these realities, I decided to stand up to MetLife for myself and others because we have been stripped of our abilities to sustain our livelihoods and this organization owes us money.

11. After joining the case, I supplied the lawyers with information about my own claims, assisted in the discovery process, reviewed any documents that the lawyers sent to me (and generally the other plaintiffs), and participated in group calls about the case arranged by the lawyers. On the numerous occasions in which the lawyers asked me for information or requested us to review or sign documents, I responded promptly. In all of this work, I kept in mind the need to advance the interests of other dental consultants, not just myself.

12. I tried to benefit class members in other ways as well. For example, I contacted all of the Dental Consultants assigned to the New Jersey panel but they did not want to join the lawsuit because they needed MetLife's income to sustain themselves and their families and they feared retaliation. Since I was the only participant in the case on the New Jersey panel, I was able to provide indispensable information about the practices for Dental Consultants in that panel, which benefitted me and my colleagues.

13. Although I withdrew from the case on December 4, 2018 upon learning that my potential recovery was minimal because I did not have overtime or limited overtime after the attorneys reviewed my invoices, I still was committed to helping the class. I along with George Bernhard pursued our retirement and pension benefits because he and I were the only named

plaintiffs who had reached MetLife's retirement age. I also worked with the attorneys to submit a declaration in support of conditional certification of an FLSA collective action at the end of June 2019 even though I had withdrawn from the case about six months before.

14. I worked closely with my attorneys to honor my fiduciary obligations that resulted in the successful resolution of this lawsuit. I did not log my work on this case but, in addition to the work I did that I have identified above, I also remember the following:

    a. <u>Initial Period</u>. I participated in a conference call with Plaintiffs' counsel to learn about the lawsuit and subsequently reviewed the drafts of the Second Amended Complaint and the final version to ensure accuracy. I spoke with my fellow Dental Consultants on the New Jersey panel about the case but they refused to join out of fear.

    b. <u>Discovery.</u> In anticipation of Initial Disclosures and discovery, I reviewed requests from the lawyers for documents, reviewed my paper and computer files, and sent the lawyers every document that I could find that was on their list. I also provided information from which they could estimate the amount of money to which I might be entitled for purposes of my initial disclosures.

    c. <u>ERISA Claims.</u> The lawyers informed us that we should seek benefits through the employee benefit plan administrators. They sent us a letter requesting benefits. I reviewed, signed, and returned the letter.

    d. <u>Other communications</u>. The list above does not contain all the communications and requests for information from the lawyers. They regularly updated me and the other Plaintiffs on developments in the case and sometimes requested

information from us. To the best of my knowledge I read every email, participated in every telephone conference, and provided information whenever requested.

15. I realize that, unlike class members who have not been Plaintiffs, the Plaintiffs and I are required under the Settlement Agreement in order to accept our awards to release virtually all of our claims against MetLife and related entities and individuals that arose prior to the date of preliminary approval of the Settlement (October 17, 2019) rather than only the types of claims asserted in the Second Amended Complaint. Although I now am unaware of any such claims, that does not mean that there are none. MetLife and the related entities and individuals are vast. I may be unaware of actions taken by one of the released entities or individuals prior to October 17 that have damaged me. This is a risk I am being asked to take by the settlement.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_11/1/19_
Date

_Harry Tuber_
Harry Tuber

5